1   JEREMY V. RICHARDS (CA SBN 102300)
    GAIL S. GREENWOOD (CA SBN 169939)
2   PACHULSKI STANG ZIEHL & JONES LLP
    10100 Santa Monica Blvd., 13th Floor
3   Los Angeles, CA  90067
    Telephone: 310/277-6910
4   Facsimile: 310/201-0760
    E-mail:   jrichards@pszjlaw.com
5              ggreenwood@pszjlaw.com

6   Attorneys for Official Committee of Unsecured Creditors
    of Liberty Asset Management Corporation

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                      LOS ANGELES DIVISION

11  In re:                                  Case No.:  2:16-bk-13575-TD

12  LIBERTY ASSET MANAGEMENT               Chapter 11
    CORPORATION, a California corporation,
13
                Debtor and
14              Debtor in Possession.

15

16  OFFICIAL UNSECURED CREDITORS            Adv. No. 2:16-ap-01374-TD
    COMMITTEE FOR LIBERTY ASSET
    MANAGEMENT CORPORATION,                 **EXHIBITS A-Q TO COMPLAINT FOR**
17                                          **BREACH OF FIDUCIARY DUTY;**
                Plaintiff                   **CONVERSION; AVOIDANCE AND**
18                                          **RECOVERY OF FRAUDULENT**
          vs.                               **TRANSFERS; MONEY HAD AND**
19                                          **RECEIVED; UNJUST ENRICHMENT;**
    TSAI LUAN HO, an individual, and        **AND ACCOUNTING**
20  BENJAMIN KIRK, an individual,

21              Defendants.

22

23

24

25

26

27

28

*Left margin vertical text:* PACHULSKI STANG ZIEHL & JONES LLP / ATTORNEYS AT LAW / LOS ANGELES, CALIFORNIA

# EXHIBIT A

File # **2 0 1 0 3 5 7 1 0 2 7 0**

| LLC-1 |



**State of California**
**Secretary of State**

**Limited Liability Company**
**Articles of Organization**

**ENDORSED - FILED**
in the office of the Secretary of State
of the State of California

DEC 2 3 2010

A $70.00 filing fee must accompany this form.

Important – Read instructions before completing this form.

This Space For Filing Use Only

**Entity Name** (End the name with the words "Limited Liability Company," or the abbreviations "LLC" or "L.L.C." The words "Limited" and "Company" may be abbreviated to "Ltd." and "Co.," respectively.)

1. NAME OF LIMITED LIABILITY COMPANY

SJ 10177 LLC

**Purpose** (The following statement is required by statute and should not be altered.)

2. THE PURPOSE OF THE LIMITED LIABILITY COMPANY IS TO ENGAGE IN ANY LAWFUL ACT OR ACTIVITY FOR WHICH A LIMITED LIABILITY COMPANY MAY BE ORGANIZED UNDER THE BEVERLY-KILLEA LIMITED LIABILITY COMPANY ACT.

**Initial Agent for Service of Process** (If the agent is an individual, the agent must reside in California and both Items 3 and 4 must be completed. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 3 must be completed (leave Item 4 blank).

3. NAME OF INITIAL AGENT FOR SERVICE OF PROCESS

Benny Ko

4. IF AN INDIVIDUAL, ADDRESS OF INITIAL AGENT FOR SERVICE OF PROCESS IN CALIFORNIA     CITY          STATE     ZIP CODE

5150 El Camino Real #B-23                                    Los Altos   CA    94022

**Management** (Check only one)

5. THE LIMITED LIABILITY COMPANY WILL BE MANAGED BY:

[✓] ONE MANAGER

[ ] MORE THAN ONE MANAGER

[ ] ALL LIMITED LIABILITY COMPANY MEMBER(S)

**Additional Information**

6. ADDITIONAL INFORMATION SET FORTH ON THE ATTACHED PAGES, IF ANY, IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART OF THIS CERTIFICATE.

**Execution**

7. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

12/3/2010
DATE

SIGNATURE OF ORGANIZER

Benny Ko
TYPE OR PRINT NAME OF ORGANIZER

LLC-1 (REV 04/2010)                                                    APPROVED BY SECRETARY OF STATE

# EXHIBIT B



## First American Title Company

800 El Camino, Suite 200 • Menlo Park, CA 94025

### Final Settlement Statement

| | |
|---|---|
| **Property:** 126 Atherton Avenue, Atherton, CA 94027 | **File No:** 4102-3563018 |
| | **Officer:** Jennifer Smith/cgd |
| | **New Loan No:** |
| | **Settlement Date:** 05/05/2011 |
| | **Disbursement Date:** 05/05/2011 |
| | **Print Date:** 05/05/2011, 11:26 PM |

**Buyer:** SJ10177 LLC
**Address:** c/o Benny Ko, 126 Atherton Avenue, Atherton, CA 94027
**Seller:** Alan D Nolet, Julianne F Nolet
**Address:** 3422 Oak Drive, Menlo Park, CA 94025

| Buyer Charge | Buyer Credit | Charge Description | Seller Charge | Seller Credit |
|---|---|---|---|---|
| | | **Consideration:** | | |
| 5,475,000.00 | | Total Consideration | | 5,475,000.00 |
| | | | | |
| | | **Deposits in Escrow:** | | |
| | 164,250.00 | Receipt No. 547114274 on 12/23/2010 by SJ10177 LLC | | |
| | 2,328,456.28 | Receipt No. 547115818 on 04/22/2011 by SJ10177 LLC | | |
| | 3,000,000.00 | Receipt No. 547115961 on 05/05/2011 by SJ10177 LLC | | |
| | | Receipt No. 547115969 on 05/05/2011 by Other | | 3,503.32 |
| | | | | |
| | | **Adjustments:** | | |
| | | Funds Released Prior To Close of Escrow | 219,000.00 | |
| | | Listing Broker Credit to Seller | | 25,000.00 |
| | | Selling Broker Credit to Seller | | 25,000.00 |
| | | | | |
| | | **Prorations:** | | |
| 8,172.09 | | County Tax 05/05/11 to 07/01/11 @$26165.04/semi | | 8,172.09 |
| | | | | |
| | | **Commission:** | | |
| | | Commission Paid at Settlement to Sotheby's International Realty | 191,625.00 | |
| | | Commission Paid at Settlement to Shelby Property | 136,875.00 | |
| | | | | |
| | | **Payoff Loan(s):** | | |
| | | Lender: Wells Fargo | | |
| | | Principal Balance - Wells Fargo | 941,531.61 | |
| | | Interest on Payoff Loan 03/01/11 to 05/07/11 @$158.000000/day - Wells Fargo | 10,586.00 | |
| | | Statement/Forwarding Fee - Wells Fargo | 30.00 | |
| | | Recording Fee - Wells Fargo | 15.00 | |
| | | | | |
| | | **Title/Escrow Charges to:** | | |
| 5,909.00 | | Eagle Owners Policy to First American Title Company | | |
| | | Notary Fee S to First American Title Company | 20.00 | |
| 1,600.00 | | Escrow Fee to First American Title Company | | |
| 18.00 | | Record Deed to First American Title Company | | |
| | | County Documentary Transfer Tax to First American Title Company | 6,022.50 | |
| | | | | |
| | | **Disbursements Paid:** | | |
| | | Portion of Proceeds / 11-501983 LK to Fidelity National Title Company | 2,408,333.19 | |
| | | Home Warranty to First American Home Buyers Protection | 935.00 | |
| | | | | |
| 2,007.19 | | **Cash ( From) (X To) Borrower** | | |
| | | **Cash (X To) ( From) Seller** | 1,621,702.11 | |
| | | | | |
| 5,492,706.28 | 5,492,706.28 | **Totals** | 5,536,675.41 | 5,536,675.41 |

# EXHIBIT  C

Account: 3005470000 - FIRST AMERICAN TITLE INSURANCE COMPANY
Report Date: 04/22/2011
Subject: 3005470000- FED WIRE TRANSFER CREDIT - $2,328,456.28

```
           $2,328,456.28

   ACCOUNT:  3005470000
      TYPE:  WIRE TRANSFER CREDIT
       REF:  20111120233100
      IMAD:  20110422QMGFT009001028
      OMAD:  20110422L1B78J1C00101804221305FT03

  SNDBKABA:  ████4870
 SNDBKNAME:  MEGA BK SAN GABRL
  RCVBKABA:  122241255
 RCVBKNAME:  FST AM TR CO SANA
     ORGID:  ████0582
       ORG:  SUNSHINE VALLEY LLC3218 E HOLT AVE SUITE
              205 WEST COVINA CA 91791
       OGB:  MEGA BANK245 W VALLEY BLVD SAN GABRIEL
              CA 91776
     BBKNM:  FIRST AMERICAN TRUST FSB5 FIRST AMERICAN
              WAY SANTA ANA CA 92707
       BNF:  3005470000FIRST AMERICAN TITLE COMPANY
800 EL CAMINO SUITE 200 MENLO PARK CA 94025 TEL:  650-323-7775
       OBI:  DEPOSIT - FILE NO. 4102-3563018(JS)
              126 ATHERTON AVE ATHERTON CA 94027
 RCVBKINFO:
   IBKINFO:
   BBKINFO:
   BNFINFO:
       BBI:
       RFB:
 PNRM TIME:  04/22/2011 10:06:46

Created: 2011-04-22 10:11:03
```

Account: 3005470000 - FIRST AMERICAN TITLE INSURANCE COMPANY
Report Date: 12/23/2010
Subject: 3005470000- FED WIRE TRANSFER CREDIT - $164,250.00

```
        $164,250.00

   ACCOUNT:  3005470000
      TYPE:  WIRE TRANSFER CREDIT
       REF:  20103570630500
      IMAD:  20101223QMGFT009002098
      OMAD:  20101223L1B78J1C00168012231443FT03

 SNDBKABA:  ████4870
SNDBKNAME:  MEGA BK SAN GABRL
 RCVBKABA:  122241255
RCVBKNAME:  FST AM TR CO SANA
    ORGID:  ██████0582
      ORG:  SUNSHINE VALLEY LLC3218 E HOLT AVE #205
            WEST COVINA CA 91791
      OGB:  MEGA BANK245 W VALLEY BLVD SAN GABRIEL
            CA 91776
    BBKNM:  FIRST AMERICAN TRUST FSB5 FIRST AMERICAN
            WAY SANTA ANA CA 92707
      BNF:  3005470000FIRST AMERICAN TITLE COMPANY
800 EL CAMINO SUITE 200 MENLO PARK CA 94025 TEL:  650-323-7775
      OBI:  DEPOSIT FILE NO. 4102-3563018(JS) 126
            ATHERTON AVE ATHERTON CA 94027
RCVBKINFO:
  IBKINFO:
  BBKINFO:
  BNFINFO:
      BBI:
      RFB:
PNRM TIME:  12/23/2010 11:53:52
```

Created: 2010-12-23 11:57:43

Wire Note

Wire Report Notes

**3005470000- FED WIRE TRANSFER CREDIT - $3,000,000.00**



Note

Submit Reset

## Report Detail

Subject: 3005470000- FED WIRE TRANSFER CREDIT - $3,000,000.00

```
          $3,000,000.00
   ACCOUNT:  3005470000
      TYPE:  WIRE TRANSFER CREDIT
       REF:  20111250222400
      IMAD:  20110505L2B7721C001001
      OMAD:  20110505L1B78J1C00074805051358FT03

 SNDBKABA:  ████0782
SNDBKNAME:  BK WEST WAL CRK
 RCVBKABA:  122241255
RCVBKNAME:  FST AM TR CO SANA
    ORGID:  ████8932
      ORG:  TSAI-LUAN HO250 SELBY LANE ATHERTON
            CA 940273931
      OGB:
      BNF:  3005470000FIRST AMERICAN TITLE COMPANY5
            FIRST AMERICAN WAY SANTA ANA, CA 92707
      OBI:  FILE NUMBER 4102-3563018 (JS) ATTN JENNIFER
            SMITH
RCVBKINFO:
  IBKINFO:
  BBKINFO:
  BNFINFO:
      BBI:
      RFB:
PNRM TIME:  05/05/2011 10:59:22
```

Created: 2011-05-05 11:01:02

## Wire Notes (most recent at top)

**this wire currently has no notes**

# EXHIBIT  D

/04/2011 11:39 FAX  6262829333         MEGA BANK         → mEGA ROWLAND HTS  ☑002/002

---

## FedPayments Manager℠ -- Funds

| | | | |
|---|---|---|---|
| Environment: | Prod | ABA: | 122244870 |
| Mode: | Prod | Service Unit: | 12224487 |
| Cycle Date: | 05/04/2011 | System Date/Time: | 05/04/2011 14:37:49 |

---

| | | | |
|---|---|---|---|
| Status: | Completed | Message Type: | Standard |
| Create Time: | 05/04/2011 14:30:07 | Test/Prod: | Prod |
| IMAD: | 20110504 QMGFT007 001808 05041436 | | |
| OMAD: | 20110504 L2B7721C 001221 05041436 | | |

---

BASIC INFORMATION
Sender ABA (3100):      122244870 MEGA BK SAN GABRL
Receiver ABA (3400):    121100782 Bank of the West
Amount (2000):          3,000,000.00
Type Code (1510):       1000 - Transfer of Funds
Business Function (3600): CTR - Customer Transfer
Reference Number (3320): 05041102
INSTITUTION INFORMATION
Originator (5000)
    ID Code:            D - DDA Account Number
    Identifier:         ▉▉▉▉301
    Name:               Liberty Asset Management
    Address:            3218 E Holt Ave Suite 200
                        West Covina CA 91791
Beneficiary (4200)
    ID Code:            D - DDA Account Number
    Identifier:         ▉▉▉▉932
    Name:               Tsai Luan Ho
    Address:            250 Selby Lane
                        Atherton CA 94027
                        Tel: 650-559-8811
Originator Financial Institution (5100)
    ID Code:            F - Fed Routing Number
    Identifier:         ▉▉▉▉870
    Name:               Mega Bank
    Address:            245 W Valley Blvd
                        San Gabriel CA 91776
Beneficiary Financial Institution (4100)
    Name:               Bank of the West
    Address:            900 Santa Cruz Ave
                        Menlo Park CA 94025
Originator to Beneficiary (6000)
    Text:               Refund
                        126 Atherton Ave
                        Atherton CA 94027

# EXHIBIT  E

**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL DOCUMENT TO:**

Great Vista Real Estate Investment Corp
126 Atherton Avenue
Atherton CA 94027



**2013-142863**
9:16 am 10/08/13 DE Fee: 18.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 1 7 5 0 4 5 4 \*

Space Above This Line for Recorder's Use Only

A.P.N.: 070-080-220

File No.: 4102-4501038 (AF)

*Grantor Grantee are
same, interest remains
same before and after
transfer*

## GRANT DEED

The Undersigned Grantor(s) Declare(s): DOCUMENTARY TRANSFER TAX **$None**; CITY TRANSFER TAX $;
SURVEY MONUMENT FEE $

| [ | ] | computed on the consideration or full value of property conveyed, OR |
| [ | ] | computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale, |
| [ | ] | unincorporated area;  [ X ] City of **Atherton**, and |
| [ | X | ] | Exempt from transfer tax; Reason: **Changes in the method of holding title R&T Code 11925(d)** |

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**SJ 10177 LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**

hereby GRANT(s) to  **Great Vista Real Estate Investment Corporation a California Corporation**

the following described property in the City of **Atherton**, County of **San Mateo**, State of **California**:

**PARCEL 1, AS SHOWN ON THAT CERTAIN MAP ENTITLED "PARCEL MAP BEING A
SUBDIVISION OF PORTIONS OF LOTS E AND M, MAP OF THE PARTITION OF THE SELBY
TRACT, BOOK 10 OF MAPS, PAGES 29 & 30, SAN MATEO COUNTY RECORDS, TOWN OF
ATHERTON, SAN MATEO COUNTY, CALIFORNIA", FILED IN THE OFFICE OF THE COUNTY
RECORDER OF SAN MATEO COUNTY, STATE OF CALIFORNIA ON JULY 28, 1971 IN VOLUME
13 OF MAPS AT PAGE 17.**

**JPN: 070-008-080-22A**

Mail Tax Statements To:  **SAME AS ABOVE**

Grant Deed - continued

Date: **10/04/2013**

A.P.N.: 070-080-220                                         File No.: 4102-4501038 (AF)

Dated: __10/04/2013_____

**SJ 10177 LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**

_____          _____

**Tsai-Luan Ho, Managing Member**

STATE OF _California_____ )SS
COUNTY OF _San Mateo___ )

On _10/4/13____, before me, _Loren Frediani_____, Notary
Public, personally appeared _Tsai-Luan Ho_____, who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature

My Commission Expires: _____

LOREN FREDIANI
Commission # 1924087
Notary Public - California
San Mateo County
My Comm. Expires Mar 1, 2015

*This area for official notarial seal*

Notary Name:_____       Notary Phone:_____
Notary Registration Number:_____       County of Principal Place of Business:_____

# EXHIBIT  F

## OLD REPUBLIC TITLE COMPANY

167 S. San Antonio Road, Suite 5 · Los Altos CA · 94022 · (650) 941-5700 · FAX (650) 403-4009

554 San Antonio Road, Suite 200.
Mountain View, CA 94040

Property:   26390 Anacapa Drive. Los Altos Hills, CA 94022

Date: February 18, 2011
Escrow No.: 0623008051-JEC
Escrow Officer: Joann Cuneo-Daw
Closing Date: 2/23/2011

### Buyer's Estimated Statement

| Item | Debits | Credits |
|---|---|---|
| Sales Price | 1,995,000.00 | |
| Deposit to Escrow | | 60,000.00 |
| Deposit by Benny Kirk | 60,000.00 | |
| Hazard Insurance to Steven Lee Insurance Services, Inc. | 1,195.07 | |
| Real Estate Taxes (175-44-038) | 1,660.38 | |
| 2nd Half 2010-2011 | 1,660.38 | |
| Prorata R.E. Taxes, 01/01/11 to 02/23/11, 52 days @ $9.2243 | | 479.66 |
| (est.) | | |
| Title Charges | | |
| Recording Fees | 41.00 | |
| Deed | 41.00 | |
| Due from Buyer (est.) | | 1,937,416.79 |
| | | |
| Total | 1,997,896.45 | 1,997,896.45 |

Sunshine Los Altos Hills LLC. a California limited liability
company

By: _____
Benny Kirk, Managing Member

JEC/iec

# EXHIBIT  G

FSBC-7014 0018-7

RECORDED BY REQUEST OF
FIDELITY NATIONAL TITLE

**Recording Requested By**

**When Recorded Mail To**
Northern California Mortgage Fund VII, LLC
101 Lucas Valley Road, Suite 150
San Rafael, CA 94903

DOCUMENT: 22828191

| | |
|---|---|
| Pages: | 16 |
| Fees. | 120 00 |
| Taxes. | |
| Copies. | |
| AMT PAID | 120.00 |

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Fidelity National Title Ins.

RDE # 025
1/15/2015
8:00 AM

Space above this line for recorder's use

# DEED OF TRUST
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

APN: 175-44-038
Loan Number: NCMVII-107
Escrow Number: FSNX-7011401231

    This Deed of Trust, made this 5th day of **January 2015**, among the Trustor, **Washe, LLC, a California Limited Liability Company** (herein "Borrower"), **Northern California Mortgage Fund VII, LLC, a Delaware Limited Liability Company**(herein "Trustee"), and the Beneficiary, **Northern California Mortgage Fund VII, LLC, a Delaware Limited Liability Company, as to an undivided 100.00% interest** (herein "Lender").

### GRANT IN TRUST WITH POWER OF SALE

    BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in Santa Clara County, State of California: which has the address of 26390 Anacapa Drive Los Altos Hills CA 94022("Property Address"), described as follows: THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ALTOS HILLS, COUNTY OF SANTA CLARA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS: ALL OF LOT 16, IN BLOCK J, AS SHOWN UPON THAT CERTAIN MAP ENTITLED "TRACT NO. 2062 FREMONT HILLS UNIT NO. 5", WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON JULY 8, 1959 IN BOOK 108 OF MAPS, AT PAGES 27, 28 AND 29. For APN/Parcel ID(s): 175-44-038

    TOGETHER with all buildings, improvements and tenements now or hereafter erected on the property, and all heretofore or hereafter vacated alleys and streets abutting the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water and water rights, and water stock appurtenant to the property, and all fixtures now or hereinafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Instrument; all contract rights pursuant to any purchase and sale agreements or any other agreement, development and use rights, governmental permits and licenses, applications, architectural and engineering plans, specifications and drawings, as built drawings, chattel paper, instruments, documents, notes, drafts and letters of credit (other than letters of credit in favor of Lender), which arise from or relate to construction on the property or to any business now or later to be conducted on it, or to the real property generally; together with and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

### THIS DEED OF TRUST IS MADE TO SECURE TO LENDER

(a) the repayment of the indebtedness evidenced by Borrower's note dated 1/5/2015 (herein "Note") in the principal sum of U.S. $2,100,000.00, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender when evidenced by promissory notes stating that said notes are secured hereby (herein "Future Advances"); (c) performance of each and every agreement, obligation, covenant and condition made by or imposed upon Borrower under this Deed of Trust(including, without limitation, those contained in any document incorporated by reference herein), and all supplements, amendments, modifications, extensions and renewals thereof; and in addition (d) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions (including but not

limited to renewal fees for each extension granted), modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**UNIFORM COVENANTS.**

Borrower and Lender covenant and agree as follows:

**1. PAYMENT OF PRINCIPAL AND INTEREST.** Borrower shall promptly pay when due the principal and/or interest on the indebtedness evidenced by the Note, any prepayment and late charges provided in the Note, and the principal of and/or interest on any Future Advances secured by this Deed of Trust..

**2. FUNDS FOR TAXES, INSURANCE AND OTHER CHARGES—Not Applicable.**

[Alternative: Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or Deed of Trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require, [OPTIONAL, IF HOLDBACK AGREEMENT IS USED] or Lender may, in its sole discretion, apply any amounts held by Lender in the Holdback Account (as defined in the Construction Holdback Agreement) to payment of taxes, assessments, insurance premiums and ground rents as they fall due.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.]

**3. APPLICATION OF PAYMENTS.** Unless applicable law provides otherwise, all payments received by Lender from Borrower under the Note and paragraphs 1 and 2 hereof shall be applied by Lender in the following order of priority: (i) any late charges (ii) amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable; (iii) interest payable on the Note; (iv) principal of the Note; (v) interest payable on advances made pursuant to paragraph 8 hereof; (vi) principal of advances made pursuant to paragraph 8 hereof; (vii) interest payable on any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the amounts of interest payable on the Future Advances in such order as Lender, in Lender's sole discretion, may determine; (viii) principal of any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the principal balances of the Future Advances in such order as Lender, in Lender's sole discretion, may determine; and (ix) any other sums secured by this Deed of Trust in such order as Lender, at Lender's

option, may determine; provided, however, that Lender may, at Lender's option, apply any sums payable pursuant to paragraph 8 hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority or application specified in this paragraph 3.

**4. CHARGES; LIENS.** Borrower shall perform all of Borrower's obligations under any mortgage, Deed of Trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due Borrower shall promptly discharge any lien which has, or may have, priority over or equality with, the lien of this Instrument, and Borrower shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Property. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any. Without Lender's prior written permission, Borrower shall not allow any lien inferior to this Deed of Trust to be perfected against the Property.

**5. HAZARD INSURANCE.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured by carriers at all times satisfactory to Lender against loss by fire, hazards included within the term "extended coverage", rent loss and such other hazards, casualties, liabilities and contingencies as Lender (and, if this Deed of Trust is on a leasehold, the ground lease) shall require and in such amounts and for such periods as Lender shall require.

All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender. Lender shall have the right to hold the policies, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. At least thirty days prior to the expiration date of a policy, Borrower shall deliver to Lender a renewal policy in form satisfactory to Lender.

In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender. Borrower hereby authorizes and empowers Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Lender's expenses incurred in the collection of such proceeds; provided however, that nothing contained in this paragraph 5 shall require Lender to incur any expense or take any action hereunder. Borrower further authorizes Lender, at Lender's option, (i) to hold the balance of such proceeds to be used to reimburse Borrower for the cost of reconstruction or repair of the Property if, in its sole discretion, Lender determines that its security will not be materially impaired, or (ii) to apply the balance of such proceeds to the payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof (subject, however, to the rights of the lessor under the ground lease if this Deed of Trust is on a leasehold).

If the insurance proceeds are held by Lender to reimburse Borrower for the cost of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition or such other condition as Lender may approve in writing. Lender may, at Lender's option, condition disbursement of said proceeds on Lender's approval of plans and specifications of an architect satisfactory to Lender, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and material men and such other evidence of costs, percentage completion of construction, application of payments, and satisfaction of liens as Lender may reasonably require. If the insurance proceeds are applied to the payment of the sums secured by this Instrument, any such application of proceeds to principal shall not extend or postpone the due dates of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amounts of such installments. If the Property is sold pursuant to paragraph 27 hereof or if Lender acquires title to the Property, Lender shall have all of the right, title and interest of Borrower in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

If Borrower obtains earthquake, flood, or any other hazard insurance or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. PRESERVATION AND MAINTENANCE OF PROPERTY; LEASEHOLDS.** Borrower (i) shall not commit waste or permit impairment or deterioration of the Property, (ii) shall not abandon the Property, (iii) shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, (iv) shall keep the Property, including improvements, fixtures, equipment, machinery and appliances thereon, in good repair and shall replace fixtures, equipment, machinery and appliances on the Property when necessary to keep such items in good repair, (v) shall comply with all laws, ordinances, regulations and requirements of any governmental body which are applicable to the Property, (vi) shall provide, if it is a multifamily dwelling, for professional management of the Property by a residential rental property manager satisfactory to Lender pursuant to a contract approved by Lender in writing, unless such requirement shall be waived by Lender in writing, (vii) shall generally operate and maintain the Property in a

manner to ensure maximum rentals, if it is a multifamily dwelling, and (viii) shall give notice in writing to Lender of and, unless otherwise directed in writing by Lender, appear in and defend any action or proceeding purporting to affect the Property, the security of this Deed of Trust or the rights or powers of Lender. Neither Borrower nor any tenant or other person shall remove, demolish or alter any improvement now existing or hereafter erected on the Property or any fixture, equipment, machinery or appliance in or on the Property except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind.

If this Deed of Trust is on a leasehold, Borrower (i) shall comply with the provisions of the ground lease, (ii) shall give immediate written notice to Lender of any default by lessor under the ground lease or of any notice received by Borrower from such lessor of any default under the ground lease by Borrower, (iii) shall exercise any option to renew or extend the ground lease and give written confirmation thereof to Lender within thirty days after such option becomes exercisable, (iv) shall give immediate written notice to Lender of the commencement of any remedial proceedings under the ground lease by any party thereto and, if required by Lender, shall permit Lender as Borrower's attorney-in-fact to control and act for Borrower in any such remedial proceedings and (v) shall within thirty days after request by Lender obtain from the lessor under the ground lease and deliver to Lender the lessor's estoppel certificate required thereunder, if any. Borrower hereby expressly transfers and assigns to Lender the benefit of all covenants contained in the ground lease, whether or not such covenants run with the land, but Lender shall have no liability with respect to such covenants nor with respect to any other covenants contained in the ground lease.

Borrower shall not surrender the leasehold estate and interests herein conveyed nor terminate or cancel the ground lease creating said estate and interests, and Borrower shall not, without the express written consent of Lender, alter or amend said ground lease. Borrower covenants and agrees that there shall not be a merger of the ground lease, or of the leasehold estate created thereby, with the fee estate covered by the ground lease by reason of said leasehold estate or said fee estate, or any part of either, coming into common ownership, unless Lender shall consent in writing to such merger; if Borrower shall acquire such fee estate, then this Deed of Trust shall simultaneously and without further action be spread so as to become a lien on such fee estate.

7. USE OF PROPERTY. Unless required by applicable law or unless Lender has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Deed of Trust was executed. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Property without Lender's prior written consent.

8. PROTECTION OF LENDER'S SECURITY. If Borrower fails to perform any of the covenants and agreements contained in this Instrument, or if any action or proceeding is commenced which affects Lender's interest in the Property or title hereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of attorney's fees, (ii) entry upon the Property to make repairs, (iii) procurement of satisfactory insurance as provided in paragraph 5 hereof, and (iv) if this Deed of Trust is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default of Borrower in the terms and conditions of the ground lease.

Any amounts disbursed by Lender pursuant to this paragraph 8, with interest thereon, shall become additional indebtedness of Borrower secured by this Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 8 shall require Lender to incur any expense or take any action hereunder.

9. INSPECTION. Lender may make or cause to be made reasonable entries upon and inspections of the Property. In addition to any rights Lender may have under California Civil Code §2929.5, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as

10. BOOKS AND RECORDS. Borrower shall keep and maintain at all times at Borrower's address stated below, or at such other place as Lender may approve in writing, complete and accurate books of account and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases and other instruments which affect the Property. Such books, records, contracts, leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender. Upon Lender's request, Borrower shall furnish to Lender, within one hundred twenty days after the end of each fiscal year of Borrower, a balance sheet, a statement of income and expenses of the Property and a statement of changes in financial position, each in reasonable detail and certified by Borrower and, if Lender shall require, by an independent certified public accountant. Borrower shall furnish, together with the foregoing financial statements and at any other time upon Lender's request, a rent schedule for the

Property, certified by Borrower, showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date, the rent payable and the rent paid.

**11. CONDEMNATION.** Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Borrower authorizes Lender, at Lender's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender subject, if this Deed of Trust is on a leasehold, to the rights of lessor under the ground lease.

Borrower authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof, with the balance, if any, to Borrower. Unless Borrower and Lender otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

**12. BORROWER AND LIEN NOT RELEASED.** From time to time, Lender may, at Lender's option, without giving notice to or obtaining the consent of Borrower, Borrower's successors or assigns or of any junior lienholder or guarantors, without liability on Lender's part and notwithstanding Borrower's breach of any covenant or agreement of Borrower in this Instrument, extend the time for payment of said indebtedness or any part thereof, reduce the payments thereon, release anyone liable on any of said indebtedness, accept a renewal note or notes therefor, modify the terms and time of payment of said indebtedness, release from the lien of this Deed of Trust any part of the Property, take or release other or additional security, reconvey any part of the Property, consent to any map or plan of the Property, consent to the granting of any easement, join in any extension or subordination agreement, and agree in writing with Borrower to modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable thereunder. Any actions taken by Lender pursuant to the terms of this paragraph 12 shall not affect the obligation of Borrower or Borrower's successors or assigns to pay the sums secured by this Deed of Trust and to observe the covenants of Borrower contained herein, shall not affect the guaranty of any person, corporation, partnership or other entity for payment of the indebtedness secured hereby, and shall not affect the lien or priority of lien hereof on the Property. Borrower shall pay Lender a reasonable service charge, together with such title insurance premiums and attorney's fees as may be incurred at Lender's option, for any such action if taken at Borrower's request.

**13. FORBEARANCE BY LENDER NOT A WAIVER.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of any sum secured by this Deed of Trust after the due date of such payment shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Instrument, nor shall Lender's receipt of any awards, proceeds or damages under paragraphs 5 and 11 hereof operate to cure or waive Borrower's default in payment of sums secured by this Instrument.

**14. ESTOPPEL CERTIFICATE.** Borrower shall within ten days of a written request from Lender furnish Lender with a written statement, duly acknowledged, setting forth the sums secured by this Deed of Trust and any right of set-off, counterclaim or other defense which exists against such sums and the obligations of this Instrument.

**15. UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.** This Deed of Trust is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Deed of Trustor of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Deed of Trust in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing

statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto.

Upon Borrower's breach of any covenant or agreement of Borrower contained in this Instrument, including the covenants to pay when due all sums secured by this Instrument, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in paragraph 27 of this Deed of Trust as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in paragraph 27 of this Instrument.

**16. LEASES OF THE PROPERTY.** As used in this paragraph 16, the word "lease" shall mean "sublease" if this Deed of Trust is on a leasehold. Borrower shall comply with and observe Borrower's obligations as landlord under all leases of the Property or any part thereof. Borrower will not lease any portion of the Property for non-residential use except with the prior written approval of Lender. Borrower, at Lender's request, shall furnish Lender with executed copies of all leases now existing or hereafter made of all or any part of the Property, and all leases now or hereafter entered into will be in form and substance subject to the approval of Lender. All leases of the Property shall specifically provide that such leases are subordinate to this Instrument; that the tenant attorns to Lender, such attornment to be effective upon Lender's acquisition of title to the Property; that the tenant agrees to execute such further evidences of attornment as Lender may from time to time request; that the attornment of the tenant shall not be terminated by foreclosure; and that Lender may, at Lender's option, accept or reject such attornments. Borrower shall not, without Lender's written consent, execute, modify, surrender or terminate, either orally or in writing, any lease now existing or hereafter made of all or any part of the Property providing for a term of three years or more, permit an assignment or sublease of such a lease without Lender's written consent, or request or consent to the subordination of any lease of all or any part of the Property to any lien subordinate to this Instrument. If Borrower becomes aware that any tenant proposes to do, or is doing, any act or thing which may give rise to any right of set-off against rent, Borrower shall (i) take such steps as shall be reasonably calculated to prevent the accrual of any right to a set-off against rent, (ii) notify Lender thereof and of the amount of said set-off, and (iii) within ten days after such accrual, reimburse the tenant who shall have acquired such right to set-off or take such other steps as shall effectively discharge such set-off and as shall assure that rents thereafter due shall continue to be payable without set-off or deduction.

Upon Lender's request, Borrower shall assign to Lender, by written Deed of Trust satisfactory to Lender, all leases now existing or hereafter made of all or any part of the Property and all security deposits made by tenants in connection with such leases of the Property. Upon assignment by Borrower to Lender of any leases of the Property, Lender shall have all of the rights and powers possessed by Borrower prior to such assignment and Lender shall have the right to modify, extend or terminate such existing lease and to execute new leases, in Lender's sole discretion.

**17. REMEDIES CUMULATIVE.** Each remedy provided in this Deed of Trust is distinct and cumulative to all other rights or remedies under this Deed of Trustor afforded by law or equity, and may be exercised concurrently, independently, or successively, in any order whatsoever.

**18. ACCELERATION IN CASE OF BORROWER'S INSOLVENCY.** If Borrower shall voluntarily file a petition under the Federal Bankruptcy Act, as such Act may from time to time be amended, or under any similar or successor Federal statute relating to bankruptcy, insolvency, arrangements or reorganizations, or under any state bankruptcy or insolvency act, or file an answer in an involuntary proceeding admitting insolvency or inability to pay debts, or if Borrower shall fail to obtain a vacation or stay of involuntary proceedings brought for the reorganization, dissolution or liquidation of Borrower, or if Borrower shall be adjudged a bankrupt, or if a trustee or receiver shall be appointed for Borrower or Borrower's property, or if the Property shall become subject to the jurisdiction of a Federal bankruptcy court or similar state court, or if Borrower shall make an assignment for the benefit of Borrower's creditors, or if there is an attachment, execution or other judicial seizure of any portion of Borrower's assets and such seizure is not discharged within ten days, then Lender may, at Lender's option, declare all of the sums secured by this Deed of Trust to be immediately due and payable without prior notice to Borrower, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. Any attorney's fees and other expenses incurred by Lender in connection with Borrower's bankruptcy or any of the other aforesaid events shall be additional indebtedness of Borrower secured by this Deed of Trust pursuant to paragraph 8 hereof.

**19. TRANSFERS OF THE PROPERTY OR INTERESTS IN BORROWER; ASSUMPTION; FURTHER ENCUMBRANCES.** In the event that the Property, or any part thereof or interest therein, shall be sold (including any installment sales agreement), transferred, conveyed, disposed of, alienated, hypothecated, leased (except to tenants of space in the Improvements in accordance with the provisions of paragraph 16 hereof), assigned, pledged, mortgaged, further encumbered or otherwise transferred or any ownership or beneficial interest in Borrower or any guarantor (directly or indirectly through constituent parties) shall be sold, transferred, conveyed, disposed of, alienated, hypothecated, assigned, pledged, or encumbered without the prior written consent of Lender being first obtained, which consent may be withheld in Lender's sole discretion, then the same shall constitute an Event of

Default hereunder and Lender may, at Lender's option, declare all of the sums secured by this Deed of Trust to be immediately due and payable, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. Notwithstanding the foregoing, Lender's prior written consent shall not be required in the event of the following:

(a) transfers by devise or descent or by operation of law upon the death of a joint tenant or a partner;

(b) sales or transfers when the transferee's creditworthiness and management ability are satisfactory to Lender and the transferee has executed, prior to the sale or transfer, a written assumption agreement containing such terms as Lender may require, including, if required by Lender, an increase in the rate of interest payable under the Note or an assumption fee to be determined by Lender;

(c) the grant of a leasehold interest in a part of the Property of three years or less (or such longer lease term as Lender may permit by prior written approval) not containing an option to purchase (except any interest in the ground lease, if this Deed of Trust is on a leasehold);

(d) sales or transfers of beneficial interests in Borrower, provided that such sales or transfers, together with any prior sales or transfers of beneficial interests in Borrower, but excluding sales or transfers under paragraphs (a) and (b) above, do not result in more than 49% of the beneficial interests in Borrower having been sold or transferred since commencement of interest payments under the Note; and

(e) sales or transfers of fixtures or any personal property pursuant to the first paragraph of paragraph 6 hereof.

**20. NOTICE.** Except for any notice required under applicable law to be given in another manner, any notice to Borrower provided for in this Deed of Trustor in the Note shall be given by mailing such notice by certified mail addressed to Borrower at Borrower's address stated above or at such other address as Borrower may designate by notice to Lender as provided herein, and any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trustor in the Note shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**21. SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITIES; AGENTS; CAPTIONS.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 19 hereof. All covenants and agreements of Borrower shall be joint and several. In exercising any rights hereunder or taking any actions provided for herein, Lender may act through its employees, agents or independent contractors, as authorized by Lender. The captions and headings of the paragraphs of this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof.

**22. DEED OF TRUST; GOVERNING LAW; SEVERABILITY.** This form of Deed of Trust combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security Deed of Trust covering real property and related fixtures and personal property. This Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision of this Deed of Trustor the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trustor the Note which can be given effect without the conflicting provisions, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. In the event that any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in this Deed of Trustor in the Note, whether considered separately or together with other charges levied in connection with this Deed of Trust and the Note, violates such law, and Borrower is entitled to the benefit of such law, such charge is hereby reduced to the extent necessary to eliminate such violation. The amounts, if any, previously paid to Lender in excess of the amounts payable to Lender pursuant to such charges as reduced shall be applied by Lender to reduce the principal of the indebtedness evidenced by the Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all indebtedness which is secured by this Deed of Trustor evidenced by the Note and which constitutes interest, as well as all other charges levied in connection with such indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest computed thereby is uniform throughout the stated term of the Note.

**23. WAIVER OF STATUTE OF LIMITATIONS.** Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Deed of Trust or to any action brought to enforce the Note or any other obligation secured by this Instrument.

**24. ORDER OF REMEDIES AND SATISFACTION OF INDEBTEDNESS; WAIVER OF MARSHALING.** Notwithstanding the existence of any other security interests in the Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Borrower, any party who consents to this Instrument, and any party who

now or hereafter acquires a security interest in the Property and who has actual or constructive notice hereof hereby waive any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

**25. CONSTRUCTION LOAN PROVISIONS.** Borrower agrees to comply with the covenants and conditions of the Construction Loan Agreement, if any, which is hereby incorporated by reference in and made a part of this Instrument. All advances made by the Lender pursuant to the Construction Loan Agreement shall be indebtedness of Borrower secured by this Instrument, and such advance may be obligatory as provided in the Construction Loan Agreement. All sums disbursed by Lender prior to completion of the improvements to protect the security of this Deed of Trust up to the principal amount of the Note shall be treated as such disbursements pursuant to the Construction Loan Agreement. All such sums shall bear interest from the date of disbursement at the rate stated in the Note, unless collection from Borrower of interest at such rate would be contrary to applicable law in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law and shall be payable upon notice from Lender to Borrower requesting payment therefor.

From time to time as Lender deems necessary to protect Lender's interests, Borrower shall, upon request of Lender, execute and deliver to Lender, in such form as Lender shall direct, assignments of any and all rights or claims which relate to the construction of the Property and which Borrower may have against any party supplying or who has supplied labor, materials or services in connection with construction of the Property. In case of breach by Borrower of the covenants and conditions of the Construction Loan Agreement, Lender, at Lender's option, with or without entry upon the Property, (i) may invoke any of the rights or remedies provided in the Construction Loan Agreement, (ii) may accelerate the sums secured by this Deed of Trust and invoke those remedies provided in paragraph 27 hereof, or (iii) may do both. If, after the commencement of interest payments due under the Note, the Note and this Deed of Trust are sold by Lender, from and after such sale the Construction Loan Agreement shall cease to be a part of this Deed of Trust and Borrower shall not assign any right of set-off, counterclaim or other claim or defense arising out of or in connection with the Construction Loan Agreement against the obligations of the Note and this Instrument.

**26. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property, regardless of to whom the rents and revenues of the Property are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby agrees to direct each tenant of the Property to pay such rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower, to apply the rents and revenues so collected to the sums secured by this Deed of Trust in the order provided in paragraph 3 hereof with the balance, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by a court appointed receiver, Lender shall immediately be entitled to possession of all rents and revenues of the Property as specified in this paragraph 26 as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement that Lender exercises its rights to such rents. Borrower agrees that commencing upon delivery of such written notice of Borrower's breach by Lender to Borrower, each tenant of the Property shall make such rents payable to and pay such rents to Lender or Lender's agents on Borrower's or Lender's written demand to each tenant therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of said tenant to inquire further as to the existence of a default by Borrower.

Borrower hereby covenants that Borrower has not executed any prior assignment of said rents, that Borrower has not performed, and will not perform, any act or has not executed, and will not execute, any Deed of Trust which would prevent Lender from exercising its rights under this paragraph 26, and that at the time of execution of this Deed of Trust there has been no anticipation or prepayment of any of the rents of the Property for more than two months prior to the due dates of such rents. Borrower covenants that Borrower will not hereafter collect or accept payment of any rents of the Property more than two months prior to the due dates of such rents. Borrower further covenants that Borrower will execute and deliver to Lender such further assignments of rents and revenues of the Property as Lender may from time to time request.

Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Lender may in person, by agent or by a court appointed receiver, regardless of the adequacy of Lender's security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof including, but not limited to, the execution, cancellation or modification of leases, the collection of all rents and revenues of the Property, the making of repairs to

the Property and the execution or termination of contracts providing for the management or maintenance of the Property, all on such terms as are deemed best to protect the security of this Instrument. In the event Lender elects to seek the appointment of a receiver for the Property upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Borrower hereby expressly consents to the appointment of such receiver. Lender or the receiver shall be entitled to receive a reasonable fee for so managing the Property.

All rents and revenues collected subsequent to delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Deed of Trust shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the rents, including, but not limited to, attorneys' fees, receivers' fees, premiums on receivers' bonds, costs of repairs to the Property, premiums on insurance policies, taxes, assessments and other charges on the Property, and the costs of discharging any obligation or liability of Borrower as lessor or landlord of the Property, and then to the sums secured by this Instrument. Lender or the receiver shall have access to the books and records used in the operation and maintenance of the Property and shall be liable to account only for those rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Property, by reason of anything done or left undone by Lender under this paragraph 26.

If the rents of the Property are not sufficient to meet the costs, if any, of taking control of and managing the Property and collecting the rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by this Deed of Trust pursuant to paragraph 8 hereof. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law.

Any entering upon and taking and maintaining of control of the Property by Lender or the receiver and any application of rents as provided herein shall not cure or waive any default hereunder or invalidate any other right or remedy of Lender under applicable law or provided herein. This assignment of rents of the Property shall terminate at such time as this Deed of Trust ceases to secure indebtedness held by Lender.

27.    **LENDER'S RIGHT TO REQUIRE THE LOAN TO BE PAID OFF IMMEDIATELY.** If without Lender's prior written consent the Property encumbered by this Deed of Trustor any portion thereof or any interest therein is sold, conveyed, mortgaged, transferred, encumbered (including, but not limited to, land sale leaseback, installment sale contract, lease-option leaseback, contract for deed or conditional sales contract financing), hypothecated, assigned, leased in its entirety for a term of greater than two (2) years or transferred, if the borrower shall be voluntarily or involuntarily divested of title to the Property, or any portion thereof or any interest therein, in any manner, or if more than 25% of the stock, limited partnership interests, managing or non-managing membership interests or any other direct or indirect legal or beneficial ownership interests (as the case may be) of Borrower or any partner, member, shareholder or any other direct or indirect legal or beneficial owner of Borrower shall be sold, conveyed, mortgaged, transferred, hypothecated, assigned or encumbered (each of such foregoing events shall be referred to herein as a "Transfer"), the whole sum of outstanding principal and all accrued and unpaid interest under the Note secured hereby shall, at the option of Lender and without notice, become immediately due and payable. Lender's option hereunder may be exercised at any time after any such Transfer event, and the acceptance by Lender of one or more installments of principal or interest under the Note from any person thereafter shall not constitute a waiver of Lender's option. Consent to one such Transfer shall not be deemed to be waiver of the right to require such consent to future successive Transfers. Notwithstanding the foregoing, if this Deed of Trust is a lien on residential property containing one to four units, then, the term "Transfer" shall not include a further encumbrance of the Property by a lien that is junior to this Deed of Trust upon the death of a joint tenant.

NON-UNIFORM COVENANTS.

Borrower and Lender further covenant and agree as follows:

27. DEFAULT; RIGHTS AND REMEDIES; TRUSTEE

A. **DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Deed of Trust:

(1) **Default on Indebtedness.** Failure of Trustor to make any payment when due on the indebtedness secured by this Deed of Trust ("Indebtedness").

(2) **Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**(3) Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Instrument, the Note or in any of the other agreements between Trustor and Lender relating to this Deed of Trust and the indebtedness secured hereunder, including without limitation, any applicable Construction Loan Agreement ("Related Documents").

**(4) Breaches.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Trustor under this Instrument, the Note or the Related Documents is, or at the time made or furnished was, false in any material respect.

**(5) Insolvency.** The insolvency of Trustor, appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor, or the dissolution or termination of Trustor's existence as a going business (if Trustor is a business). Except to the extent prohibited by federal law or California law, the death of Trustor (if Trustor is an individual) also shall constitute an Event of Default under this Instrument.

**(6) Foreclosure, Forfeiture, etc.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any of the Property. However, this subsection shall not apply in the event of a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the foreclosure or forfeiture proceeding, provided that Trustor gives Lender written notice of such claim and furnishes reserves or a surety bond for the claim satisfactory to Lender.

**(7) Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**(8) Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor dies or becomes incompetent or any Guarantor revokes any guaranty of the Indebtedness.

**B. RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**(1) Foreclosure by Sale.** Upon an Event of Default under this Instrument, Beneficiary (Lender) may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Deed of Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all unpaid sums secured by this Deed of Trus tin such order as Beneficiary, in Beneficiary's sole discretion, directs, with accrued interest at the amount established under the Note or, if less, such amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**(2) Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclosure by judicial foreclosure in accordance with and to the full extent provided by California Law.

**(3) Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the demand of the Lender.

**(4) Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

**(5) Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Instrument, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender which in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records obtaining title reports (including foreclosure reports), surveyors' reports, appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**(6) Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**C. POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust.

**(1) Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trustor the interest of Lender under this Deed of Trust.

**(2) Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**(3) Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**28. RECONVEYANCE.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed of Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance..

**29. SUBSTITUTE TRUSTEE.** Lender, at Lender's option, may from time to time, by an Deed of Trust in writing, appoint a successor trustee to any Trustee appointed hereunder, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. Said Deed of Trust shall contain the name of the original Lender, Trustee and Borrower hereunder, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee. If notice of default has been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee have been paid to such Trustee who shall endorse receipt thereof upon such Deed of Trust of substitution. The procedure herein provided for substitution of trustee shall govern to the exclusion of all other provisions for substitution, statutory or otherwise.

**30. REQUEST FOR NOTICES.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower at Borrower's address stated above..

**31. STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California

**32. SPOUSE'S SEPARATE PROPERTY.** Any Borrower who is a married person expressly agrees that recourse may be had against his or her separate property.

**Borrower and Lender further covenant and agree as follows:**

**33. RIDERS TO THIS SECURITY INSTRUMENT.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Deed of Trust as if the rider(s) were a part of this Security Instrument.

**34. MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**A. Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**B. Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**C. Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**D. Applicable Law.** This Deed of Trust has been delivered to Lender and accepted by Lender in the State of California. This Deed of Trust shall be governed by and construed in accordance with the laws of the State of California.

**E. Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Instrument.

**F. Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**G. Multiple Parties; Corporate Authority.** All obligations of Trust or under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each of the persons signing below is responsible for all obligations in this Deed of Trust.

**H. Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of the Deed of Trust in all other respects shall remain valid and enforceable.

**I. Successors and Assigns.** Subject to the limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the indebtedness by way of forbearance or extension without releasing Trustor from the obligations of the Deed of Trust or liability under the indebtedness.

**J. Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**K. Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Deed of Trust (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or any of Trustor's obligations as to any future transactions. Whenever consent by Lender is required in this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants by contained in this Security Deed of Trust and in any rider(s) executed by Borrower and recorded with it.**

**IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST**

Washe, LLC, a California Limited Liability Company

_____  1/6/15        _____
Borrower    Tsai-Luan Ho, Managing Member    Date        Borrower                    Date

State of California
County of    San Mateo

On  1 6 15    before me,    Sharon Renee Gallagher
personally appeared    Tsai-Luan Ho

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

SHARON RENEE GALLAGHER
COMM. # 2004721
NOTARY PUBLIC - CALIFORNIA
SAN MATEO COUNTY
COMM. EXPIRES JAN. 20, 2017

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CA

County of San Mateo

On 01/06/2015 before me, Sharon Renee Gallagher, Notary Public,

personally appeared Tsai-Luan Ho, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Sharon Renee Gallagher_ (Seal)

Signature    NOTARY

SHARON RENEE GALLAGHER
COMM. # 2004721
NOTARY PUBLIC - CALIFORNIA
SAN MATEO COUNTY
COMM. EXPIRES JAN. 20, 2017

# EXHIBIT  H



**Fidelity National Title Company**

905 Jefferson Street, Napa, CA 94559
Phone: (707)255-5800 | FAX: (707)256-4416

# FINAL REFINANCE STATEMENT

| | |
|---|---|
| **Settlement Date:** January 15, 2015 | **Escrow Number:** FSON-1701-FSNX-7011401231 |
| **Disbursement Date:** January 15, 2015 | **Escrow Officer:** Luis Olivares |
| **Borrower:** Washe, LLC | |

**Property:** 26390 Anacapa Drive
Los Altos Hills, CA 94022
Parcel ID(s): 175-44-038

**Lender:** Northern California Mortgage Fund VII, LLC
101 Lucas Valley Road, Suite 150
San Rafael, CA 94903
**Loan Number:** NCMVII-107

| | | | $ DEBIT | $ CREDIT |
|---|---|---|---:|---:|
| **FINANCIAL CONSIDERATION** | | | | |
| Principal amount of new loan(s) | Northern California Mortgage Fund VII, LLC | | | 2,100,000.00 |
| **NEW LOAN CHARGES - Northern California Mortgage Fund VII, LLC** | | | | |
| **Total Loan Charges: $83,314.16** | | | | |
| Loan Origination Fee | Northern California Mortgage Fund VII, LLC | | 21,000.00 | |
| Broker Fee | FJM Capitol | | 47,250.00 | |
| Doc & Processing Fee | FJM Management, LLC | | 1,995.00 | |
| Interest from 01/14/15 to 02/01/15 @ $575.34000/day | Northern California Mortgage Fund VII, LLC | | 10,356.16 | |
| Homeowner's insurance | 1.0 year | State Farm General Insurance Cc | 2,713.00 | |
| **TITLE & ESCROW CHARGES** | | | | |
| Overnight | Fidelity National Title Company | | 15.89 | |
| Additional Work Charge RE: Doc Handling Fee | Fidelity National Title Company | | 25.00 | |
| Escrow Fee | Fidelity National Title Company | | 850.00 | |
| Lender's title insurance (Lenders Coverage) | Fidelity National Title Company | | 2,236.00 | |
| ALTA 8.1-06 - Environmental Protection Lien (CLTA 110.9-06) | Fidelity National Title Company | | 25.00 | |
| Policies to be issued: | | | | |
| Loan Policy | | | | |
| Coverage: $2,625,000.00   Premium: $2,236.00 Version: ALTA Loan Policy 2006 | | | | |
| **RECORDING CHARGES** | | | | |
| Government recording charges | Fidelity National Title Company | | 120.00 | |
| **PAYOFFS** | | | | |
| Refi Payoff 1 ($1,407,295.02) | Lone Oak Fund, LLC | | | |
| Total Payoff | | | 1,407,295.02 | |
| **MISCELLANEOUS CHARGES** | | | | |
| Property Taxes RE: Delinquent 1st Inst. 2014/2015 County Taxes | Santa Clara County Tax Collector | | 14,814.56 | |
| Subtotals | | | 1,508,695.63 | 2,100,000.00 |
| **Balance Due TO Borrower** | | | **591,304.37** | |
| **TOTALS** | | | 2,100,000.00 | 2,100,000.00 |

# EXHIBIT I



### First American Title Company

6683 Owens Drive • Pleasanton, CA 94588

### Buyer's Final Settlement Statement

**Property:** 467-64-003 through 010, San Jose, CA

**File No:** 0131-618052ala
**Officer:** Diane Burton/DB
**New Loan No:** Account #118293
**Settlement Date:** 07/26/2011
**Disbursement Date:** 07/26/2011
**Print Date:** 07/26/2011, 1:04 PM

**Buyer:** NC Project Management LLC
**Address:** 3218 E. Holt Avenue, West Covina, CA 91791
**Seller:** Block 3 Development Partners LLC
**Address:** Four Embarcadero Center, Suite 3330, Atten: Seth Bland, San Francisco, CA 94111

| Charge Description | Buyer Charge | Buyer Credit |
|---|---|---|
| **Consideration:** | | |
| Total Consideration | 11,000,000.00 | |
| | | |
| **Deposits in Escrow:** | | |
| Receipt No. 2474104855 on 04/22/2011 by Liberty Asset Management fbo Gold View Horizon, LLC | | 5,000.00 |
| Receipt No. 2474104856 on 04/22/2011 by Liberty Asset Management fbo Gold View Horizon, LLC | | 312,000.00 |
| Receipt No. 2474105025 on 06/07/2011 by Liberty Assest Management Corp. fbo Gold View Horizon, LLC | | 188,000.00 |
| Receipt No. 2474105130 on 07/01/2011 by Liberty Asset Mgmt fbo Gold View Horizon, LLC | | 500,000.00 |
| Receipt No. 2474105159 on 07/08/2011 by Liberty Asst Mgmt fbo Gold View Horizon, LLC | | 500,000.00 |
| Receipt No. 2474105191 on 07/15/2011 by Liberty Asset Mgmtu fbo Gold View Horizon, LLC | | 500,000.00 |
| Receipt No. 2474105200 on 07/21/2011 by Liberty Asset Mgmt fbo NC Project Management LLC | | 2,103,403.79 |
| Receipt No. 2474105203 on 07/22/2011 by Liberty Asset Mgmt fbo NC Project Management LLC | | 1,100,000.00 |
| Receipt No. 2474105206 on 07/25/2011 by Epic Deed Service Inc. fbo NC Project Management LLC | | 450,000.00 |
| Receipt No. 2474105207 on 07/25/2011 by Liberty Asset Management fbo NC Project Management LLC | | 555,825.93 |
| | | |
| **Adjustments:** | | |
| Independent Consideration (not applicable) | 5,000.00 | |
| Interest Earned on IBA#4600014762 | | 146.84 |
| | | |
| **Prorations:** | | |
| County Tax for All Retail Condos 07/01/11 to 07/26/11 @$76210.67/semi | | 10,439.82 |
| Master Association Retail Garage Lobby Cont. 07/01/11 to 07/26/11 @$150.00/mo | | 120.97 |
| Safeway Condo Unit Rent 07/26/11 to 08/01/11 @$4202.50/mo | | 10,490.81 |
| Safeway Condo Unit CAM 07/26/11 to 08/01/11 @$10241.48/mo | | 1,982.22 |
| Sales Center Retail Condo Rent 07/26/11 to 08/01/11 @$6161.83/mo | | 1,192.61 |
| Master Association Retail Cost Share 07/01/11 to 07/26/11 @$10748.33/mo | | 8,668.01 |
| Residential Assn. Retail Refuse Cost 07/01/11 to 07/26/11 @$1611.13/mo | | 1,299.30 |
| | | |
| **Commission:** | | |
| Commission Paid at Settlement to Grubb & Ellis Company | 95,000.00 | |
| | | |
| **New Loan(s):** | | |
| Lender: Preferred Bank | | |
| New Loan to File - Preferred Bank | | 5,000,000.00 |
| Appraisal fee - Preferred Bank | 5,000.00 | |
| Tax service - Preferred Bank | 400.00 | |
| Appraisal Review Fee - Preferred Bank | 350.00 | |
| Flood certification - Preferred Bank | 16.00 | |
| UCC-1 Fixture Filing - Preferred Bank | 60.00 | |
| Legal Fees (est.) - Preferred Bank | 13,000.00 | |
| Loan Fee - Preferred Bank | 100,000.00 | |
| Prepaid Loan Fee - Preferred Bank | | 15,000.00 |
| Loan Processing Fee - Preferred Bank | 1,500.00 | |
| | | |
| **Title/Escrow Charges to:** | | |
| Upgrade to ALTA Extended Owner's Policy to First American Title Company | 770.00 | |
| Escrow Fee - One Half to First American Title Company | 2,875.00 | |
| ALTA Ext Loan Policy 1056.06 (6-17-06) - I to First American Title Company | 125.00 | |
| Endorsement Package (Owner's Policy) to First American Title Company | 1,430.00 | |
| Endorsement Package (Lender's Policy) to First American Title Company | 1,430.00 | |
| Recording Fees | 315.00 | |
| City Documentary Transfer Tax to First American Title Company | 18,150.00 | |

Initials: _____   _____

## *Buyer's Final Settlement Statement*

| | |
|---|---|
| **Settlement Date:** 07/26/2011 | **File No:** 0131-618052ala |
| **Print Date:** 07/26/2011 | **Officer:** Diane Burton/DB |

| Charge Description | Buyer Charge | Buyer Credit |
|---|---|---|
| **Disbursements Paid:** | | |
| July Retail Cost Share Contribution to The 88 Master Association | 10,748.33 | |
| July Retail Garage Lobby Contribution to The 88 Master Association | 150.00 | |
| July Retail Refuse Cost Share to The 88 Residential Association | 1,611.13 | |
| Insurance Premium to Powers & Company Insurance Agents | 5,308.00 | |
| | | |
| **Cash ( From) (X To) Borrower** | 331.84 | |
| | | |
| **Totals** | 11,263,570.30 | 11,263,570.30 |
| | | |

# EXHIBIT J

Account: 3024740000 - FIRST AMERICAN TITLE INSURANCE COMPANY
Report Date: 04/22/2011
Subject: 3024740000- FED WIRE TRANSFER CREDIT - $5,000.00

```
          $5,000.00

   ACCOUNT:   3024740000
      TYPE:   WIRE TRANSFER CREDIT
       REF:   20111120244100
      IMAD:   20110422QMGFT002001125
      OMAD:   20110422L1B78J1C00103904221313FT03

  SNDBKABA:   ████4870
 SNDBKNAME:   MEGA BK SAN GABRL
  RCVBKABA:   █████255
 RCVBKNAME:   FST AM TR CO SANA
     ORGID:   ████0301
       ORG:   LIBERTY ASSET MANAGEMENT3218 E HOLT
               AVE #205 WEST COVINA CA 91791
       OGB:   MEGA BANK245 W VALLEY BLVD SAN GABRIEL
               CA 91776
     BBKNM:   FIRST AMERICAN TRUST FSB5 FIRST AMERICAN
               WAY SANTA ANA CA 92707
       BNF:   3024740000FIRST AMERICAN TITLE COMPANY6683
               OWENS DRIVE PLEASANTON CA 94588
       OBI:   PURCHASE (INDEPENDENT CONSIDERATION
               88 EAST SAN FERNANDO ST SAN JOSE CA
               95113 ATTN: DIANE BURTON
 RCVBKINFO:
   IBKINFO:
   BBKINFO:
   BNFINFO:
       BBI:   FILE#0131-618052ALA(DB) CUSTOMER NAME:
               GOLD VIEW HORIZON LLC
       RFB:
 PNRM TIME:   04/22/2011 10:14:47


Created: 2011-04-22 10:15:59
```

Account: 3024740000 - FIRST AMERICAN TITLE INSURANCE COMPANY
Report Date: 04/22/2011
Subject: 3024740000- FED WIRE TRANSFER CREDIT - $312,000.00

```
          $312,000.00

   ACCOUNT:   3024740000
      TYPE:   WIRE TRANSFER CREDIT
       REF:   20111120236100
      IMAD:   20110422QMGFT001001143
      OMAD:   20110422L1B78J1C00102804221308FT03

  SNDBKABA:   ██████4870
 SNDBKNAME:   MEGA BK SAN GABRL
  RCVBKABA:   ████1255
 RCVBKNAME:   FST AM TR CO SANA
     ORGID:   ████0301
       ORG:   LIBERTY ASSET MANAGEMENT3218 E HOLT
               AVE #205 WEST COVINA CA 91791
       OGB:   MEGA BANK245 W VALLEY BLVD SAN GABRIEL
               CA 91776
     BBKNM:   FIRST AMERICAN TRUST FSB5 FIRST AMERICAN
               WAY SANTA ANA CA 92707
       BNF:   3024740000FIRST AMERICAN TITLE COMPANY6683
               OWENS DRIVE PLEASANTON CA 94588
       OBI:   PURCHASE ESCROW DEPOSIT 88 EAST SAN
               FERNANDO ST SAN JOSE CA 95113 ATTN:
               DIANE BURTON
 RCVBKINFO:
   IBKINFO:
   BBKINFO:
   BNFINFO:
       BBI:   FILE #0131-618052ALA(DB) CUSTOMER NAME:
               GOLD VIEW HORIZON LLC
       RFB:
 PNRM TIME:   04/22/2011 10:09:56
```

Created: 2011-04-22 10:15:59

Account: 3024740000 - FIRST AMERICAN TITLE INSURANCE COMPANY
Report Date: 06/07/2011
Subject: 3024740000- FED WIRE TRANSFER CREDIT - $188,000.00

```
        $188,000.00

    ACCOUNT:   3024740000
       TYPE:   WIRE TRANSFER CREDIT
        REF:   20111580290000
       IMAD:   20110607B1QGC03C004104
       OMAD:   20110607L1B78J1C00099706071428FT03

   SNDBKABA:   ████████0021
  SNDBKNAME:   JPMCHASE
   RCVBKABA:   ██████1255
  RCVBKNAME:   FST AM TR CO SANA
      ORGID:   ██████5922
        ORG:   LIBERTY ASSET MANAGEMENTCORPORATION
               3218 E HOLT AVE STE 212 WEST COVINA,
               CA 917912364
        OGB:
        BNF:   3024740000FIRST AMERICAN TITLE COMPANY
        OBI:   PURCHASE - THE 88 (SAFEWAY) FILE # 0131-618052ALA
               (DB) GOLDVIEW HORIZON LLC
 RCVBKINFO:
   IBKINFO:
   BBKINFO:
   BNFINFO:
        BBI:
        RFB:   DCD OF 11/06/07
  PNRM TIME:   06/07/2011 11:28:54
```

Created: 2011-06-07 11:32:32

Account: 3024740000 - FIRST AMERICAN TITLE INSURANCE COMPANY
Report Date: 07/01/2011
Subject: 3024740000- FED WIRE TRANSFER CREDIT - $500,000.00

```
        $500,000.00

   ACCOUNT:  3024740000
      TYPE:  WIRE TRANSFER CREDIT
       REF:  20111820718700
      IMAD:  20110701QMGFT011003381
      OMAD:  20110701L1B78J1C00155807011549FT03

  SNDBKABA:  ████4870
SNDBKNAME:  MEGA BK SAN GABRL
  RCVBKABA:  ████1255
RCVBKNAME:  FST AM TR CO SANA
     ORGID:  ████0764
       ORG:  LIBERTY ASSET MGMT3218 E HOLT AVE #205
             WEST COVINA CA 91791
       OGB:  MEGA BANK245 W VALLEY BLVD SAN GABRIEL
             CA 91776
     BBKNM:  FIRST AMERICAN TRUST FSB5 FIRST AMERICAN
             WAY SANTA ANA CA 92707
       BNF:  3024740000FIRST AMERICAN TITLE COMPANY
6683 OWENS DRIVE PLEASANTON CA 94588 TEL:  925-738-4050
       OBI:  PURCHASE - THE 88 (SAFEWAY) SAN JOSE
             CA GOLDENVIEW HORIZON LLC FILE NO. 0131-618052ALA
             (DB)
RCVBKINFO:
   IBKINFO:
   BBKINFO:
   BNFINFO:
       BBI:  DIANE BURTON
       RFB:
 PNRM TIME:  07/01/2011 12:52:18
```

Created: 2011-07-01 12:54:04

Account: 3024740000 - FIRST AMERICAN TITLE INSURANCE COMPANY
Report Date: 07/08/2011
Subject: 3024740000- FED WIRE TRANSFER CREDIT - $500,000.00

```
        $500,000.00

   ACCOUNT:   3024740000
      TYPE:   WIRE TRANSFER CREDIT
       REF:   20111890306700
      IMAD:   20110708QMGFT011001650
      OMAD:   20110708L1B78J1C00094107081403FT03

  SNDBKABA:   ████74870
SNDBKNAME:     MEGA BK SAN GABRL
  RCVBKABA:   ████1255
RCVBKNAME:     FST AM TR CO SANA
     ORGID:   ████0764
       ORG:   LIBERTY ASST MGMT3218 E HOLT AVE #205
              WEST COVINA CA 91791
       OGB:   MEGA BANK245 W VALLEY BLVD SAN GABRIEL
              CA 91776
     BBKNM:   FIRST AMERICAN TRUST FSB5 FIRST AMERICAN
              WAY SANTA ANA CA 92707
       BNF:   3024740000FIRST AMERICAN TITLE COMPANY
6683 OWENS DRIVE PLEASANTON CA 94588 TEL:  925-738-4050
       OBI:   PURCHASE - THE 88 (SAFEWAY) SAN JOSE
              CALIFORNIA GOLD VIEW HORIZON LLC #0131-618052ALA
              (DB)
RCVBKINFO:
   IBKINFO:
   BBKINFO:
   BNFINFO:
       BBI:   ATTN: DIANA BURTON
       RFB:
 PNRM TIME:   07/08/2011 11:05:11
```

Created: 2011-07-08 11:08:57

Account: 3024740000 - FIRST AMERICAN TITLE INSURANCE COMPANY
Report Date: 07/15/2011
Subject: 3024740000- FED WIRE TRANSFER CREDIT - $500,000.00

```
           $500,000.00

     ACCOUNT:  3024740000
        TYPE:  WIRE TRANSFER CREDIT
         REF:  20111960552700
        IMAD:  20110715QMGFT014002755
        OMAD:  20110715L1B78J1C00200407151528FT03

    SNDBKABA:  ██████4870
   SNDBKNAME:  MEGA BK SAN GABRL
    RCVBKABA:  ██████1255
   RCVBKNAME:  FST AM TR CO SANA
       ORGID:  ██████0764
         ORG:  LIBERTY ASSET MGMT3218 E HOLT AVE #205
               WEST COVINA CA 91791
         OGB:  MEGA BANK245 W VALLEY BLVD SAN GABRIEL
               CA 91776
       BBKNM:  FIRST AMERICAN TRUST FSB5 FIRST AMERICAN
               WAY SANTA ANA CA 92707
         BNF:  3024740000FIRST AMERICAN TITLE COMPANY6683
               OWENS DRIVE PLEASANTON CA 94588 TEL;
               925-738-4050
         OBI:  PURCHASE - THE 88 (SAFEWAY) 100 2ND
               AVE SAN JOSE NC PROJECT MANAGEMENT LLC
               0131-618052ALA (DB)
   RCVBKINFO:
     IBKINFO:
     BBKINFO:
     BNFINFO:
         BBI:
         RFB:
   PNRM TIME:  07/15/2011 12:30:40
```

Created: 2011-07-15 12:34:56

Account: 3024740000 - FIRST AMERICAN TITLE INSURANCE COMPANY
Report Date: 07/21/2011
Subject: 3024740000- FED WIRE TRANSFER CREDIT - $2,103,403.79

```
        $2,103,403.79

   ACCOUNT:  3024740000
      TYPE:  WIRE TRANSFER CREDIT
       REF:  20112020499500
      IMAD:  20110721QMGFT012002416
      OMAD:  20110721L1B78J1C00163007211623FT03

  SNDBKABA:  ████4870
 SNDBKNAME:  MEGA BK SAN GABRL
  RCVBKABA:  ████1255
 RCVBKNAME:  FST AM TR CO SANA
     ORGID:  ████0764
       ORG:  LIBERTY ASSET MGMT3218 E HOLT AVE #205
             WEST COVINA CA 91791
       OGB:  MEGA BANK245 W VALLEY BLVD SAN GABRIEL
             CA 91776
     BBKNM:  FIRST AMERICAN TRUST FSB5 FIRST AMERICAN
             WAY SANTA ANA CA 92707
       BNF:  3024740000FIRST AMERICAN TITLE COMPANY
6683 OWENS DR PLEASANTON CA 94588 TEL:  925-738-4050
       OBI:  PURCHASE - THE 88 (SAFEWAY) SAN JOSE
             CA NC PROJECT MGMT LLC 0131-618052ALA
             (DB) ATTN: DIANE BURTON
 RCVBKINFO:
   IBKINFO:
   BBKINFO:
   BNFINFO:
       BBI:
       RFB:
 PNRM TIME:  07/21/2011 13:24:16
```

Created: 2011-07-21 13:30:06

Account: 3024740000 - FIRST AMERICAN TITLE INSURANCE COMPANY
Report Date: 07/22/2011
Subject: 3024740000- FED WIRE TRANSFER CREDIT - $1,100,000.00

```
        $1,100,000.00

  ACCOUNT:   3024740000
     TYPE:   WIRE TRANSFER CREDIT
      REF:   20112030583900
     IMAD:   20110722QMGFT004002807
     OMAD:   20110722L1B78J1C00208307221629FT03

 SNDBKABA:   ████4870
SNDBKNAME:   MEGA BK SAN GABRL
 RCVBKABA:   ████1255
RCVBKNAME:   FST AM TR CO SANA
    ORGID:   ████0764
      ORG:   LIBERTY ASSET MGMT3218 E HOLT AVE #205
             WEST COVINA CA 91791
      OGB:   MEGA BANK245 W VALLEY BLVD SAN GABRIEL
             CA 91776
    BBKNM:   FIRST AMERICAN TRUST FSB5 FIRST AMERICAN
             WAY SANTA ANA CA 92707
      BNF:   3024740000FIRST AMERICAN TITLE COMPANY
6683 OWENS DR PLEASANTON CA 94588 TEL:  925-738-4050
      OBI:   PURCHASE THE 88 (SAFEWAY) SAN JOSE CA
             NC PROJECT MGMT LLC 0131-618052ALA(DB)
RCVBKINFO:
  IBKINFO:
  BBKINFO:
  BNFINFO:
      BBI:   ATTN: DIANE BURTON
      RFB:
PNRM TIME:   07/22/2011 13:31:01
```

Created: 2011-07-22 13:35:23

Account: 3024740000 - FIRST AMERICAN TITLE INSURANCE COMPANY
Report Date: 07/25/2011
Subject: 3024740000- FED WIRE TRANSFER CREDIT - $450,000.00

```
        $450,000.00

    ACCOUNT:   3024740000
       TYPE:   WIRE TRANSFER CREDIT
        REF:   20112060520300
       IMAD:   20110725L2B77Q1C000710
       OMAD:   20110725L1B78J1C00217807251546FT03

   SNDBKABA:   3█████0381
 SNDBKNAME:   EW BK SMRINO
  RCVBKABA:   1█████255
 RCVBKNAME:   FST AM TR CO SANA
      ORGID:   █████774
        ORG:   EPIC DEED SERVICE INC315 S SAN GABRIEL
               BLVD STE C SAN GABRIEL,CA 91776-
        OGB:   EAST WEST BANK
        BNF:   3024740000FIRST AMERICAN TITLE COMPANY
        OBI:   REF 0131 618052ALA DB NC PROJECT MG
               MT LLC
 RCVBKINFO:
   IBKINFO:
   BBKINFO:
  BNFINFO:
        BBI:
        RFB:   ESC 3391M
 PNRM TIME:   07/25/2011 12:46:56
```

Created: 2011-07-25 12:50:21

Account: 3024740000 - FIRST AMERICAN TITLE INSURANCE COMPANY
Report Date: 07/25/2011
Subject: 3024740000- FED WIRE TRANSFER CREDIT - $555,825.93

```
         $555,825.93

  ACCOUNT:  3024740000
     TYPE:  WIRE TRANSFER CREDIT
      REF:  20112060540600
     IMAD:  20110725QMGFT006002508
     OMAD:  20110725L1B78J1C00223507251556FT03

 SNDBKABA:  ●●●●74870
SNDBKNAME:  MEGA BK SAN GABRL
 RCVBKABA:  ●●●●1255
RCVBKNAME:  FST AM TR CO SANA
    ORGID:  ●●●●0764
      ORG:  LIBERTY ASSET MGMT3218 E HOLT AVE #205
            WEST COVINA CA 91791
      OGB:  MEGA BANK245 W VALLEY BLVD SAN GABRIEL
            CA 91776
    BBKNM:  FIRST AMERICAN TRUST FSB5 FIRST AMERICAN
            WAY SANTA ANA CA 92707
      BNF:  3024740000FIRST AMERICAN TITLE COMPANY
6683 OWENS DR PLEASANTON CA 94588 TEL:  925-738-4050
      OBI:  PURCHASE - THE 88 0131-618052ALA (DB)
            NC PROJECT MGMT LLC
RCVBKINFO:
  IBKINFO:
  BBKINFO:
  BNFINFO:
      BBI:
      RFB:
PNRM TIME:  07/25/2011 12:57:54
```

Created: 2011-07-25 13:00:27

# EXHIBIT  K

RECORDING REQUESTED BY
FIRST AMERICAN TITLE

0131- 618590a1a

**RECORDATION REQUESTED BY:**
Bank SinoPac Los Angeles Branch
355 South Grand Avenue, Suite 4168
Los Angeles, CA 90071

**WHEN RECORDED MAIL TO:**
Bank SinoPac Los Angeles Branch
355 South Grand Avenue, Suite 4168
Los Angeles, CA 90071

**SEND TAX NOTICES TO:**
88 San Fernando LLC
1906 El Camino Real
Menlo Park, CA 94026

DOCUMENT:   21722442

Pages:   11

| Fees | 63 00 |
|---|---|
| Taxes | |
| Copies | |
| AMT PAID | 63 00 |

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
First American Title Company

RDE #  011
6/26/2012
8:00 AM

FOR RECORDER'S USE ONLY

## DEED OF TRUST

**THIS DEED OF TRUST** is dated June 11, 2012, among 88 San Fernando LLC, A California Limited Liability Company, whose address is 1906 El Camino Real, Menlo Park, CA 94026 ("Trustor"); Bank SinoPac Los Angeles Branch, whose address is 355 South Grand Avenue, Suite 4168, Los Angeles, CA 90071 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Bank SinoPac Los Angeles Branch, whose address is 355 S. Grand Avene, Suite 4168, Los Angeles, CA 90071 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Santa Clara County, State of California:

See Exhibit "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 100 South 2nd Street, San Jose, CA 95113. The Assessor's Parcel Number for the Real Property is APN#467-64-003, 467-64-004, 467-64-005, 467-64-006 and 467-64-010.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property

## DEED OF TRUST
### (Continued)

with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $10,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency

# DEED OF TRUST
## (Continued)

Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed

## DEED OF TRUST
### (Continued)

of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust.

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

# DEED OF TRUST
## (Continued)

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Trustor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Trustor's existence as a going business or the death of any member, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after Lender sends written notice to Trustor demanding cure of such default: (1)  cures the default within ten (10) days; or  (2)  if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

RIGHTS AND REMEDIES ON DEFAULT.  If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from

# DEED OF TRUST
## (Continued)

the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness  The receiver may serve without bond if permitted by law.  Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount.  Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.**  If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.**  Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.**  Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made.  Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.  Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.**  To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled.  In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales.  Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.**  If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal.  Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid.  Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law.  Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.**  Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.**  The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.**  In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor:  (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public;  (b) join in granting any easement or creating any restriction on the Real Property; and  (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.**  Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.**  Trustee shall meet all qualifications required for Trustee under applicable law.  In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.**  Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Santa Clara County, State of California.  The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest.  The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law.  This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.**  Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.**  Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust.  Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust.  All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust.  Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address.  Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.**  Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the

## DEED OF TRUST
### (Continued)

statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury. To the extent permitted by applicable law, all parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Bank SinoPac Los Angeles Branch, and its successors and assigns.

**Borrower.** The word "Borrower" means 88 San Fernando LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

# DEED OF TRUST
## (Continued)

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Bank SinoPac Los Angeles Branch, its successors and assigns.

**Note.** The word "Note" means the promissory note dated June 11, 2012, **in the original principal amount of $6,000,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Bank SinoPac Los Angeles Branch, whose address is 355 S. Grand Avene, Suite 4168, Los Angeles, CA 90071 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means 88 San Fernando LLC.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

88 SAN FERNANDO LLC

By: _____
Tsai-Luan Ho, Member of 88 San Fernando LLC

## DEED OF TRUST
### (Continued)

Page 9

### CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _____ California _____     )
                                      ) SS
COUNTY OF _____ Santa Clara _____   )

On _____ June 11 _____, 20 12 _ before me, _____ Sonia Chiou, Notary Public _____.
                                              (here insert name and title of the officer)

personally appeared Tsai-Luan Ho, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

```
SONIA M J CHIOU
COMM. # 1855996
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires June 28, 2013
```
(Seal)

---

### (DO NOT RECORD)
### REQUEST FOR FULL RECONVEYANCE
#### (To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____.

Date: _____        Beneficiary: _____

                                              By: _____

                                              Its: _____

---

LASER PRO Lending, Ver. 5.60.00.005   Copr. Harland Financial Solutions, Inc. 1997, 2012.   All Rights Reserved.   - CA
Q:\Laserpro\CFI\LPL\G01.FC  TR-922  PR-3

# EXHIBIT 'A'

File No.:      **0131-618590ala (DB)**

Property:      **100 S. 2nd Street, San Jose, CA**

**PARCEL NO. 1:**

**UNITS C-69, C-78, C-79, C-82 AND C-100 AS SHOWN AND DESCRIBED IN THE 88 COMMERCIAL CONDOMINIUM PLAN (TOGETHER WITH ANY AMENDMENTS THERETO (THE "PLAN"), WHICH PLAN WAS RECORDED ON DECEMBER 26, 2008, AS INSTRUMENT NO. 20077488, IN OFFICIAL RECORDS OF SANTA CLARA COUNTY AND DESCRIBED AND DEFINED IN THE DECLARATION OF MASTER DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR THE 88, A MIXED-USE COMMUNITY RECORDED DECEMBER 31, 2008 AS INSTRUMENT NO. 20081183 ("THE MASTER DECLARATION") AND THE NEIGHBORHOOD DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR THE 88 (COMMERCIAL) RECORDED DECEMBER 31, 2008 AS INSTRUMENT NO. 20081185 ("THE NEIGHBORHOOD DECLARATION") TOGETHER WITH ANY AMENDMENTS AND/OR ANNEXATIONS THERETO, BEING A PORTION OF LOT 1 OF TRACT NO. 9796, AS SHOWN ON A SUBDIVISION MAP (THE "MAP"), FILED ON NOVEMBER 28, 2006 IN BOOK 809 AT PAGES 16 AND 17, OF MAPS, IN THE OFFICE OF THE SANTA CLARA COUNTY RECORDER AND A PORTION OF THE RIGHT OF WAY VACATED BY SAN JOSE CITY COUNCIL RESOLUTION NO. 74395 RECORDED JUNE 9, 2008 AS INSTRUMENT NO. 19879367 IN THE OFFICE OF THE SANTA CLARA COUNTY RECORDER.**

**RESERVING THEREFROM, EASEMENTS AS MAY SHOWN ON THE PLAN AND THE MAP, AND AS DESCRIBED IN THE MASTER DECLARATION AND THE NEIGHBORHOOD DECLARATION, TOGETHER WITH ANY AMENDMENTS THERETO.**

**PARCEL NO. 2:**

**AN UNDIVIDED 5/8TH INTEREST IN THE COMMERCIAL COMMON AREA SHOWN ON THE PLAN AND SET FORTH IN THE MASTER DECLARATION AND NEIGHBORHOOD DECLARATION.**

**PARCEL NO. 3:**

**EASEMENTS APPURTENANT TO PARCEL 1 ABOVE, AS DESCRIBED OR DEPICTED IN THE MASTER DECLARATION, THE NEIGHBORHOOD DECLARATION, THE PLAN AND THE MAP.**

**PARCEL NO. 4:**

**NON-EXCLUSIVE EASEMENTS APPURTENANT TO PARCEL 1 ABOVE, AS DESCRIBED IN ARTICLE 7 OF THE AMENDED AND RESTATED DECLARATION OF COVENANTS AND RESTRICTIONS AFFECTING REAL PROPERTY AND RECIPROCAL EASEMENT AGREEMENT (BLOCK 3 PHASE 1) RECORDED DECEMBER 31, 2008 AS INSTRUMENT NO. 20081186, OFFICIAL RECORDS OF SANTA CLARA COUNTY, STATE OF CALIFORNIA.**

**PARCEL NO. 5:**

**First American Title Company**

File No.: **0131-618590ala (DB)**

Date: **June 25, 2012**

A PERPETUAL NON-EXCLUSIVE EASEMENT ("NORTH ACCESS EASEMENT") AND A
PERPETUAL SUBSURFACE EASEMENT ("THE TIE BACK EASEMENT") DESCRIBED AS
ARTICLES 1.2 AND 1.4 OF THE CENTRAL PLACE EASEMENT AGREEMENT RECORDED
SEPTEMBER 29, 2005 AS DOCUMENT NO. 18600687, OFFICIAL RECORDS OF SANTA
CLARA COUNTY, STATE OF CALIFORNIA.

467-64-003 AFFECTS UNIT 69
467-64-004 AFFECTS UNIT 78
467-64-005 AFFECTS UNIT 79
467-64-006 AFFECTS UNIT 82
467-64-010 AFFECTS UNIT 100

A.P.N. 467-64-003 and 467-64-004 and 467-64-005 and 467-64-006 and 467-64-010

# EXHIBIT  L

## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("MOU") is made effective and entered on this 1st day of
July 2015 ("Effective Date"), by and between Lucy Gao ("Gao"), Benny Kirk ("Kirk"), and
Shelby Ho ("Ho") for the purpose of achieving aims and objective relating to the ownership
transfer of NC Project Management LLC ("NC") as it relates to the sale of 88 E. San Fernando
Street, Units 89 and 99, San Jose, CA 95113 ("Property").:

1. Gao and Kirk agree to transfer 100% membership interest of NC Project Management
   LLC to Ho to facilitate the sale of 88 E. San Fernando Street, Units 89 and 99, San
   Jose, CA 95113 ("Property").
2. The Property consists of two vacant condo units.  88 E. San Fernando Street, Unit 99
   will be granted to Ho.  88 E. San Fernando Street, Unit 89 will be granted to YCJS
   2012 LLC c/o Yuchi Wang to satisfy Liberty Asset Management Corporation
   ("Liberty") debt obligations.
3. NC will be responsible to grant 88 E. San Fernando Street, Unit 89 to YCJS 2012
   LLC on or before September 30, 2015.
4. Once membership interest is transferred from Gao and Kirk to Ho then all
   responsibilities and/or obligations are that of NC and no longer of Liberty.

The undersigned parties hereby agree to the terms and conditions as set forth above as of the
Effective Date.

Agreed and Acknowledged:

_____     7/2/15
Lucy Gao                            Date

_____     _____
Benny Kirk                          Date

_____     7/1/15
Tsai-Luan Ho                        Date

# EXHIBIT  M

RECORDING REQUESTED BY
GEORGE P. ESHOO

AND WHEN RECORDED MAIL THIS DEED AND,
UNLESS OTHERWISE SHOWN BELOW, MAIL TAX
STATEMENT TO:
    Name: BIG MAX, LLC
    Address: 702 Marshall St., #500
    City & State: Redwood City, CA
    Zip: 94063
Title Order No.    Escrow No.

| DOCUMENT: 23046867 | Pages: 3 |
|---|---|
| | Fees.. 46.00 + |
| | Taxes.. 2772 00 |
| | Copies.. _____ |
| | AMT PAID 2818.00 |

REGINA ALCOMENDRAS    RDE # 024
SANTA CLARA COUNTY RECORDER    8/07/2015
Recorded at the request of    3:09 PM
Grantor

*SPACE ABOVE THIS LINE FOR RECORDER'S USE*

## QUITCLAIM DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
DOCUMENTARY TRANSFER TAX IS $
☐    unincorporated area    ☐ City of
Parcel No. ☐ A.P.N. 467-64-007 & 467-64-009
☐ computed on full value of property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale, and
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

NC PROJECT MANAGEMENT, LLC

hereby REMISE, RELEASE AND FOREVER QUITCLAIM to
BIG MAX, LLC

the following described real property in the city of  San Jose
county of  Santa Clara  , state of California:
See Attached Exhibit "A"

Dated August 5, 2015

_____
_____
TSAI-LUAN HO, Manager NC Project Management, LLC

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed
the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California            )
County of  San Mateo         )
On August 5, 2015         before me,
SHARON RENEE GALLAGHER
(HERE INSERT NAME AND TITLE OF THE OFFICER)
personally appeared TSAI-LUAN HO

who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed
the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

_____
SIGNATURE                              (SEAL)

SHARON RENEE GALLAGHER
COMM. # 2004721
NOTARY PUBLIC - CALIFORNIA
SAN MATEO COUNTY
COMM. EXPIRES JAN. 20, 2017

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

| NAME | STREET ADDRESS | CITY & STATE |
|---|---|---|

NONJC-012 Rev. 07/01/2015    *Martin Dean's*             QUITCLAIM DEED
**ESSENTIAL FORMS**™

EXHIBIT "A"

LEGAL DESSRIPTION

A.P.N. NO.467-64-007 – UNIT 89

A.P.N. NO. 467-64-009 – UNIT 99

Real property in the City of San Jose, County of Santa Clara, State of California described as follows:

PARCEL NO. 1:

UNITS C-89 AND C-99 AS SHOWN AND DESCRIBED IN THE 88 COMMERCIAL CONDOMINIUM PLAN (TOGETHER WITH ANY AMENDMENTS THERETO (THE "PLAN", WHICH PLAN WAS RECORDED ON DECEMBER 26, 2008, AS INSTRUMENT NO. 20077488, IN OFFICIAL RECORDS OF SANTA CLARA COUNTY AND DESCRIBED AND DEFINED IN THE DECLARATION OF MASTER DECLARATION OF COVENANTS, CONDITIONS, RESTRICITONS AND RESERVATION OF EASEMENT FOR THE 88, A MIXED-USE COMMUNITY RECORDED DECEMBER 31, 2008 AS INSTRUMENT NO. 20081183 ("THE MASTER DECLARATION") AND THE NEIGHBORHOOD DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR THE 88 (COMMERCIAL) RECORDED DECEMBER 31, 2008 AS INSTRUMETN NO. 20081185 ("THE NEIGHBORHOOD DECLARATION") TOGETHER WITH ANY AMENDEMNTS AND/OR ANNEXATIONS THERETO, BEING A PORTION OF LOT 1 OF TRACT NO. 9796, AS SHOWN ON A SUBDIVISON MAP (THE "MAP"), FILED ON NOVEMBER 26, 2006 IN BOOK 809 AT PAGES 16 AND 17, OF MAPS, IN THE OFFICE OF THE SANTA CLARA COUNTY RECORDER AND A PORTION OF THE RIGHT OF WAY VACATED BY SAN JOSE CITY COUNCIL RESOLUTION NO. 74395 RECORDED JUNE 9, 2008 AS INSTRUMETN NO. 19879367 IN THE OFFICE OF THE SANTA CLARA COUNTY RECORDER.

RESERVING THEREFROM, EASEMENTS AS MAY SHOWN ON THE PLAN AND THE MAP, AND AS DESCRIBED IN THE MASTER DECLARATION AND THE NEIGHBORHOOD DECLARATION, TOGETHER WITH ANY AMENDMENTS THERETO.

PARCEL NO. 2:

THE COMMERCIAL COMMON AREA SHOWN ON THE PLAN AND SET FORTH IN THE MASTER DECLARATION AND NEIGHBORHOOD DECLARAITON.

PARCEL NO. 3:

EASEMENTSS APPURTENANT TO PARCEL 1 ABOVE, AS DESCRIBED OR DEPICT ED IN THE MATER DECLARATION, THE NEIGHBORHOOD DECLARATION, THE PLAN AND THE MAP.

**PARCEL NO. 4**

**NON-EXCLUSIVE EASEMENTS APPURTENANT TO PARCEL 1 ABOVE, AS DESRIBED IN ARTICLE 7 OF THE AMENDED AND RESTATED DECALRATION OF COVENANTS AND RESTRICTIONS AFFECTING REAL PROPERTY AND RECIPROCAL EASEMENT AGREEMENT (BLOCK 3 PHASE 1) RECORDED DECEMBER 31, 2008 AS INSTRUMENT NO 20081186, OFFICIAL RECORDS OF SANTA CLARA COUNTY, STATE OF CALIFORNIA.**

**PARCEL NO 5:**

**A PERPETUAL NON-EXCLUSIVE EASEMENT ("NORTH ACCESS EASEMENT") AND PERPETUAL SUBSURFACE EASEMENT ("THE TIE BACK EASEMENT") DESCRIBED AS ARTICLES 1.2 AND 1.4 OF THE CENTRAL PALCE EASEMENT AGREEMENT RECORDED SEPTEMBER 29, 2005 AS DOCUMENT NO. 18600687, OFFICIAL REORDS OF Santa Clara COUNTY, STATE OF CALIFORNIA.**

**467-64-007 AFFECTS UNIT 89**

**467-64-009 AFFECTS UNIT 99**

# EXHIBIT  N

A0009
01003

1    Guy E. Jamison, State Bar Number 183777
2    **THE JAMISON LAW, PC**
     **A PROFESSIONAL LAW CORPORATION**
3    301 E. Colorado Blvd., Suite 501
     Pasadena, California  91101
     TELE (626) 356-7902 - FAX (626) 798-3638
4

**FILED**
Superior Court of California
County of Los Angeles

5    **Attorneys for Plaintiff North America Capital, LLC**

MAY 10 2016

6    D24 Robert Hess

Sherri R. Carter, Executive Officer/Clerk
By _____, Deput
Chambers

7    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8    **COUNTY OF LOS ANGELES - CENTRAL**

9    NORTH AMERICA CAPITAL, LLC, a           )    **CASE NO: BC 6 2 0 1 3 3**
     California Limited Liability Company;   )
10                                           )
          Plaintiffs,                        )
11                                           )    **[UNLIMITED OVER $25,000.00]**
                                             )
12        vs.                                )    **VERIFIED COMPLAINT FOR:**
                                             )
13   CHUNBO ZHANG, an individual a/k/a       )    **1.  BREACH OF CONTRACT**
     GEORGE ZHANG, CHUN BO ZHANG,            )    **2.  BREACH OF FIDUCIARY DUTY**
14   GEORGE BO ZHANG, CHUN ZHANG, BO         )    **3.  ACCOUNTING**
     ZHANG; CHENHAN WU, an individual a/k/a  )    **4.  FRAUD AND DECEIT**
15   HUGO WU, CHEN HAN WU, CHEN WU,          )    **5.  CONSPIRACY**
     HAN WU, HUGO CHEN HAN WU;               )    **6.  ALTER EGO**
16   MAXWELL REAL ESTATE INVESTMENT          )
     LLC, a California Limited Liability Company; )
17   GOLDEN STONE INVESTMENT LLC, a          )
     Delaware Limited Liability Company;     )
18   CUPERTINO 2011 LLC , a California Limited )
     Liability Company; and DOES 1 through 20 )
19   inclusive,                              )
                                             )
20        Defendants.                        )
                                             )
21                                           )

22

23                                              CIT/CASE: BC620133
                                                LEA/DEF#:
24
                                                RECEIPT #: CCH539179098
25                                              DATE PAID: 05/10/16   04:22 PM
                                                PAYMENT: $435.00
26                                              RECEIVED:                    310
                                                  CHECK:            $435.00
27                                                CASH:             $0.00
                                                  CHANGE:           $0.00
28                                                CARD:             $0.00

COMPLAINT

1   Plaintiffs alleges as follows:

2   **IDENTIFICATION OF PARTIES**

3      1.    At all relevant times Plaintiff NORTH AMERICA CAPITAL, LLC ("Plaintiff" or

4   "North America") was, and at all times mention herein was, a Limited Liability Company

5   organized under the laws of the State of California.

6      2.    At all relevant times Defendant CHUNBO ZHANG was, and at all times

7   mentioned herein is, an individual a/k/a GEORGE ZHANG, CHUN BO ZHANG, GEORGE BO

8   ZHANG, CHUN ZHANG, BO ZHANG and on information and belief resides in Los Altos

9   California.

10      3.    At all relevant times Defendant CHENHAN WU was, and at all times mentioned

11   herein is, an individual a/k/a HUGO WU, CHEN HAN WU, CHEN WU, HAN WU, HUGO

12   CHEN HAN WU and on information and belief resides in San Jose California.

13      4.    At all relevant times Defendant MAXWELL REAL ESTATE INVESTMENT LLC

14   was, and at all times mentioned herein is, a California Limited Liability Company with its

15   principal place of business in San Jose View California.

16      5.    At all relevant times Defendant GOLDEN STONE INVESTMENT LLC was, and

17   at all times mentioned herein is, a Delaware Limited Liability Company with its principal place of

18   business in Mountain View Los Altos California.

19      6.    Plaintiff further alleges that each of the defendants herein identified as DOES 1

20   through 20, inclusive, is and at all times relevant to this action was, the agent, employee,

21   representative, manager, and/or supervisor of the remaining defendants and was acting within the

22   course and scope of said relationship. Plaintiffs further allege that each of the defendants herein

23   identified are responsible and liable to Plaintiffs in some manner for the acts and occurrences

24   herein complained.  Plaintiffs will amend this Complaint to allege their true names and capacities

25   when ascertained.

26      7.    Plaintiff further alleges that each of the defendants herein identified as DOES 1

27   through 20 inclusive, gave consent to, ratified, and authorized the acts alleged herein below of

28   each of the remaining defendants.

8.      Plaintiff further alleges that each of defendants herein is and at all times relevant to this action was the agent, employee, representative, manager, and/or supervisor of the remaining defendants and was acting within the course and scope of said relationship.

9.      Plaintiff is informed and believe and on that basis allege that at all times mentioned herein each of Defendants was the agent and/or alter ego of each of the other defendants and, in doing the acts alleged in this complaint, were acting within the course and scope of such agency.

## FACTS COMMON TO ALL CAUSES OF ACTION

10.      In August 2012, the parties hereto cause to be organized a California Limited Liability Company called American REO Solutions, LLC (American REO). The designated fund manager of American REO was a California Limited Liability Company called Washington Capital Management, LLC ("Washington Capital"). The members of Washington Capital and their percentage of ownership are as follows: (1) Defendant Maxwell Real Estate Investment, LLC ("Maxwell RE") owns a 50% interest and is controlled by its members Defendants Chunbo Zhang and Chenhan Wu; (2) Plaintiff North America owns a 50% interest and is controlled by its members Tsai-Luan and Benjamin Kirk.

11.      American REO was created to purchase distressed real estate assets, and more particularly distressed properties purchased by Benjamin Kirk by and through one or more of his designated entities but more specifically Pacific Northern Capital, LLC ("PNC"). The managing member of North America, Benjamin Kirk, agreed to use his real estate acquisition skills to purchase distressed real properties in California through ("PNC"). The properties acquired by PNC would then be purchased by American REO or its designated affiliate. Thereafter, Defendant Maxwell RE, through its members, agreed to use their construction background to renovate, repair and sell each property. Once sold, it was agreed that the net profits were to be split 50-50 between Maxwell RE and North America, the members of Washington Capital.

12.      In reliance on this agreement, PNC did in fact purchase the properties listed in Exhibit "A." Although these distressed properties were to be purchased by American REO or its affiliate from PNC, not all of the transactions were handled in that manner. In the years 2012 through 2014 American REO, Maxwell RE and Defendant Golden Stone Investment, LLC

("Golden"), another entity controlled by Defendant Chenhan Wu, purchased distressed properties from PNC with the understanding and agreement that the properties, once improved, would be subsequently sold and the profits split 50-50 between Maxwell RE and North America.

13.    Between 2012 and September 2014, PNC sold approximately 22 properties to Defendant Maxwell RE and Golden, which are included in the list attached hereto as Exhibit "A." These were properties that North America and PNC, by and through its member/shareholder Benjamin Kirk, had identified and acquired through his expertise as part of the joint venture with the Defendants.

14.    The twenty-two (22) properties were thereafter improved by Defendant Maxwell RE and its members and subsequently sold, with the exception of approximately 6 properties that have not been sold at this time. North America, by and through its members requested all of the final closing statements to determine the net profits to be distributed. However, Defendants Chunbo Zhang and Chenhan Wu, on behalf of themselves and on behalf of Maxwell RE and Golden have refused to account and have fraudulently represented that the "trust money, after construction cost, there is no money left." These Defendants have claimed that there was no profit from the sale of any all these properties and/or have represented that the profit was used to repair American REO's corporate office located in Mountain View California. These representations are false.

15.    Plaintiff is informed and believes that the profits were used to secretly improve the personal residences of both Defendants Chunbo Wu and Chenhan Wu, which properties are located at 641 Teresi Lane, Los Altos, California, 94024 and 1439 Maxwell Way, San Jose, California 95131.

16.    Plaintiff is also informed and believes that Defendants have secretly absconded with and converted the profits due to North America all to Plaintiff's damage.

# FIRST CAUSE OF ACTION

## Breach of Contract

### (Against all Defendants and Does 1 through 20)

17.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 to 16, inclusive, as if set forth in full.

18.    Plaintiff and Defendants entered into an Agreement to create American Reo for purposes of acquiring distressed properties in California. It was agreed that the manager for American Reo would be Washington Capital, and that after improving the properties, they would be sold and the net profits split 50/50 between Maxwell RE, Golden Stone Investment LLC and the Plaintiff.

19.    Plaintiff fully performed under the agreement by identifying and acquiring distressed properties for the joint venture with the Defendants.

20.    Defendants breached the agreement by, *inter alia* selling the properties' after improved and failing to split the profits as agreed.

21.    Defendants have further breached the contract by failing to account for the costs and expenses used to improve each property and the sale proceeds after each property was sold.

22.    Defendants have further refused to provide Plaintiff with operating agreements, resolutions and other pertinent legal documents associated with American Reo and Washington Capital Management, LLC.

23.    Defendants have further breached the agreement by secretly utilizing the profits due to Plaintiff to improve the personal residences of both Defendants Chunbo Wu and Chenhan Wu, which properties are located at 641 Teresi Lane, Los Altos, California, 94024 and 1439 Maxwell Way, San Jose, California 95131.

24.    By reason of the above-enumerated breaches and as a direct and proximate result thereof, Plaintiff has incurred and will incur costs and expenses and have suffered and will suffer direct, indirect, consequential, general and special damages in an amount which is in excess of $6,000,000, but in exact amount to be proven at trial.

COMPLAINT

## SECOND CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

### (Against all Defendants and Does 1 through 20)

25.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 to 24, inclusive, as if set forth in full.

26.    By virtue of their relative positions as set forth in the above referenced paragraphs, Defendants were acting in a fiduciary capacity towards Plaintiff, which obligated Defendants to act at all times with the upmost care, honesty, undivided loyalty and fidelity in the business dealings with cross complaints.

27.    Beginning at the beginning of 2012 and continuing until approximately the end of 2014, Defendants breached their fiduciary duty by the acts of malfeasance and misfeasance described herein, including but not limited to those acts of self-dealing that were designed to deprive Plaintiff of the benefits entitled to it under the agreement.

28.    As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered injury. Specifically Plaintiff has lost profits in excess of $3,000,000.00, and although the exact number is unknown at this time, it will be proven at trial.

29.    The wrongful conduct of Defendants was intentional, and done with malice aforethought to specifically deprive Plaintiff of property rights thereby entitling Plaintiff to punitive and exemplary damages.

## THIRD CAUSE OF ACTION

## ACCOUNTING

### (Against All Defendants and Does 1 through 20)

30.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 to 29, inclusive, as if set forth in full.

31.    By virtue of the aforementioned wrongful conduct of Defendants, -Defendants have retained monies that rightfully belong to Plaintiff. Plaintiff is entitled to an accounting of all such funds. Although requests have been made, no such accounting has been provided.

32.    The amount of money due from Defendants to Plaintiff is unknown and cannot be ascertained without an accounting. Plaintiff is informed and believe and thereon allege that the amount due to it exceeds $3,000,000.

33.    Plaintiff demands an accounting from Defendants and requests an order from this court for such a relief.

## FORTH CAUSE OF ACTION

## FRAUD

### (Against All Defendants and Does 1 through 20)

34.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 to 33, inclusive, as if set forth in full.

35.    On or about August of 2012 American REO was created to purchase distressed real estate assets, and more particularly distressed properties purchased by Benjamin Kirk by and through one or more of his designated entities but more specifically Pacific Northern Capital, LLC ("PNC"). The managing member of North America, Benjamin Kirk, agreed to use his real estate acquisition skills to purchase distressed real properties in California through ("PNC"). The properties acquired by PNC would then be purchased by American REO or its designated affiliate. Thereafter, Defendant Maxwell RE, through its members, agreed to use their construction background to renovate, repair and sell each property. Once sold, it was agreed that the net profits were to be split 50-50 between Maxwell RE and North America, the members of Washington Capital.

36.    Defendants, and in particular, defendants Chunbo Zhang and Chenhan Wu never had any intention of honoring their agreement to split the net profits 50-50 between North America and Maxwell RE. Further, both defendants Chunbo and Cenhan have represented that with respect to the properties that have sold, that there were no net proceeds to split because of the costs of improve these properties.  To further their schemes, both defendants Chunbo and Cenhan have refused to provide North American and its members evidence of the construction costs accounting for the real numbers.

37.     Defendants have engaged in a systematic scheme and ongoing fraud to misrepresent the costs of their construction services with the intent to wrongfully abscond with Plaintiff's rightful share in the profits.

38.     The representations made by Defendants were material.  Their representation that they would split the profits were false. Their representations concerning the costs of the construction and improvements made to the properties were false. Their representations that there were no net profits to split were false.

39.     The false representations made Defendants were made with knowledge of their falsity or knowledge of the concealment of a material fact.

40.     Defendants made the false statements with the intention to induce Plaintiff to alter their position to their risk or injury.

41.     Plaintiff actually and justifiably relied upon the misrepresentations made by Defendants and undertook the tedious work of identifying distressed properties, purchasing those properties, and transferring those properties to the joint venture for no further consideration other than miscellaneous inconsequential fees.

42.     As a direct and proximate cause of the misrepresentations made by Defendants, Plaintiff has been damaged and continues to be damaged. The aforementioned acts of Defendants were intentional misrepresentations, deceit, or concealment of material facts with the intention on the part of the Defendants to deprive Plaintiff of property or legal rights, or otherwise causing Plaintiff to have to incur additional an unnecessary expense to Plaintiff's benefit, and was despicable conduct that subjected Plaintiff and its members to cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

//// //// //// ////

COMPLAINT

# FIFTH CAUSE OF ACTION

## CONSPIRACY

### (Against All Defendants and Does 1 through 20)

43.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 to 42, inclusive, as if set forth in full.

44.    Plaintiff is informed and believes in there on alleges that at all times material hereto each of the Defendants was a civil co-conspirator with the other Defendants who were engaged in a conspiracy as alleged herein such that each of the Defendants is liable for the damages caused by it and its co-conspirators.

45.    Defendants agreed to form and in fact formed a conspiracy for the purpose of inducing Plaintiff into identifying distressed properties and utilizing its money for the purchase of such properties and thereafter transferring such properties to the joint venture for Defendants own personal gain and to the detriment of Plaintiff.

46.    Each of the Defendants was aware that the other Defendants conspired to induce Plaintiff into investing its money and identifying distressed properties that would be transferred to the joint venture for their own personal gain, agreed to conspire with the other Defendants, and intended to induce Plaintiff to waste its time and money towards the joint venture.

47.    Defendants worked together to induce and a fraud plaintiff out of its investment.

48.    Defendants formed multiple shell businesses in furtherance of the conspiracy and, in particular, Maxwell RE, Golden Stone and Cupertino 2011.

49.    As a result of Defendants civil conspiracy, Plaintiff has been injured in an amount to be proven in trial but in no event less than $3,000,000.00.

//// //// //// ////

# SIXTH CAUSE OF ACTION

## ALTER EGO

### (Against All Defendants and Does 1 through 20)

50.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 to 49, inclusive, as if set forth in full.

51.     Plaintiff is informed and believes and thereon alleges that Defendants Maxwell RE, Golden Stone Investment, LLC and Cupertino 2011, LLC are, for purposes of this action, one in the same and that at all times alleged herein there existed a unity of interest, control, management, and ownership between these entities' Defendant members such that any individuality and separateness between them ceased and the entities operated as one and the same entity. Plaintiff is further informed and believes and thereon alleges that adherence to the fiction of the separate existence of the LLC entities would, under the circumstances that exist, sanction fraud or promote in justice, create and in equitable result, so that the acts of one are the acts of the other and that each should be liable for the acts of the other. As such, Defendant LLCs are liable for the acts of the Defendant members and vice versa.

WHEREFORE Plaintiff prays for judgment as follows:

ON THE FIRST CAUSE OF ACTION:

1.     For judgment in favor of Plaintiffs in an amount according to proof at trial;

2.     General and special damages according to proof but which are alleged to be in excess of $3,000,000;

3.     For prejudgment interest as allowed by law;

4.     For incidental damages according to proof; and

5.     For such other and further relief as the court may deem just and proper.

ON THE SECOND CAUSE OF ACTION:

1.     For judgment in favor of Plaintiffs in an amount according to proof at trial;

2.     General and special damages according to proof but which are alleged to be in excess of $3,000,000;

3.     For prejudgment interest as allowed by law;

9

COMPLAINT

1    4.     For punitive and exemplary damages pursuant to Civil Code 3294 according to

2    proof at trial;

3    5.     For incidental damages according to proof; and

4    6.     For such other and further relief as the court may deem just and proper.

5    ON THE THIRD CAUSE OF ACTION:

6    1.     For an accounting between Defendants and Plaintiff;

7    2.     For the amount found to be due from Defendants to Plaintiff as a result of the

8    accounting and interest on that amount as allowed by law;

9    3.     For attorney fees and court costs; and

10   4.      For such other and further relief as the Court may deem just and proper.

11   ON THE FORTH, FIFTH AND SIXTH CAUSES OF ACTION:

12   1.     For judgment in favor of Plaintiffs in an amount according to proof at trial;

13   2.     General and special damages according to proof but which are alleged to be in

14   excess of $3,000,000;

15   3.     For prejudgment interest as allowed by law;

16   4.     For punitive and exemplary damages pursuant to Civil Code 3294 according to

17   proof at trial;

18   5.     For incidental damages according to proof; and

19   6.     For such other and further relief as the court may deem just and proper.

20

21

22   Dated: May 6, 2016                          JAMISON LAW FIRM, PC

23

24

25                                               Guy E. Jamison, Esq.
                                                 Attorneys for Plaintiff
26

27

28

COMPLAINT

# EXHIBIT A

| No | Property Address | City | Sold Date to Investor | Sold Price to Investor | Seller Liberty/Affiliate | Investor Name | Sold Date to Retail | Sold Retail Price/ Value | Gross Profit | Gross Profit % |
|----|------------------|------|----------------------|------------------------|--------------------------|---------------|---------------------|--------------------------|--------------|----------------|
| 1 | 200 S Bushnell Ave | Alhambra | 11/7/2012 | $500,000 | Jj Living Trust | Maxwell RE Inv LLC | 3/14/2013 | $670,000 | $170,000 | 34.00% |
| 2 | 45 S Garfield | Alhambra | 9/27/2013 | $650,000 | Liberty Capital Mgt Corp | Maxwell RE Inv LLC | | Not Sold Yet | | |
| 3 | 212 E Foothill Bl | Azusa | 9/26/2013 | $1,500,000 | Azusa Foothill Project LLC | Maxwell RE Inv LLC | 7/21/2014 | | | |
| 3 | 632 N Alameda | Azusa | 9/27/2013 | | Azusa Foothill Project LLC | Maxwell RE Inv LLC | 7/22/2014 | | | |
| 3 | 640 N Alameda | Azusa | 9/28/2013 | | Azusa Foothill Project LLC | Maxwell RE Inv LLC | 7/23/2014 | | | |
| 4 | 1058 Almond Ave | Arbuckle | 2/10/2012 | $117,000 | Amber Valley LLC | Maxwell RE Inv LLC | 5/10/2012 | $163,000 | $46,000 | 39.32% |
| 5 | 17634 Bellflower Bl | Bellflower | 9/24/2014 | $500,000 | JSK 23 LLC | Maxwell RE Inv LLC | | Not Sold Yet | | |
| 6 | 10185 Miranda Ave | Buena Park | 11/7/2011 | $245,000 | Ht2010 REO Mgt LLC | Maxwell RE Inv LLC | 11/14/2011 | $305,000 | $60,000 | 24.49% |
| 7 | 789 Kenneth Ave | Campbell | 2/10/2012 | $468,500 | Amber Valley LLC | Maxwell RE Inv LLC | 4/20/2012 | $680,000 | $211,500 | 45.14% |
| 8 | 2831 Bentley Way | Diamond Bar | 9/27/2013 | $857,174 | Td Reconveyance Svc | Maxwell RE Inv LLC | | Not Sold Yet | | |
| 9 | 2520 Durfee Ave | El Monte | 9/27/2013 | $300,000 | Liberty CMC Corp | Maxwell RE Inv LLC | 12/20/2013 | $357,500 | $57,500 | 19.17% |
| 10 | 10469 48th Street | Mira Loma | 9/4/2012 | $196,000 | Golden Vista Mgt LLC | Maxwell RE Inv LLC | 3/9/2013 | $290,000 | $94,000 | 47.96% |
| 11 | 1600 Ventura Drive | Morgan Hill | 2/10/2012 | $929,500 | Amber Valley LLC | Maxwell RE Inv LLC | 5/9/2012 | $1,160,000 | $230,500 | 24.80% |
| 12 | 710 E 22nd St #307 | Oakland | 2/10/2012 | $161,000 | Amber Valley LLC | Maxwell RE Inv LLC | 7/20/2012 | $145,000 | -$16,000 | -9.94% |
| 13 | 9045 Gallatin Rd | Pico Rivera | 3/24/2014 | $519,000 | Nationstar Mtg LLC | Maxwell RE Inv LLC | | Not Sold Yet | | |
| 14 | 3719 Vine Street | Pleasanton | 2/10/2012 | $406,000 | Amber Valley LLC | Maxwell RE Inv LLC | 4/10/2012 | $600,000 | $194,000 | 47.78% |
| 15 | 1638 36th Ave | San Francisco | 2/10/2012 | $534,500 | Amber Valley LLC | Maxwell RE Inv LLC | 8/15/2012 | $768,000 | $233,500 | 43.69% |
| 16 | 957-961 Oak St | San Francisco | 1/10/2012 | $700,000 | Frontline Acquisitions LLC | Maxwell RE Inv LLC | 9/17/2013 | $2,250,000 | $1,550,000 | 221.43% |
| 17 | 502 W Bonita Ave | San Dimas | 11/5/2013 | $1,050,000 | Sunshine Fields LLC | Maxwell RE Inv LLC | | Not Sold Yet | | |
| 18 | 69 Appian Way #A | San Francisco | 2/10/2012 | $243,670 | Amber Valley LLC | Maxwell RE Inv LLC | 6/21/2012 | $335,000 | $91,330 | 37.48% |
| 19 | 1003 Second St | San Juan Bautista | 2/10/2012 | $157,780 | Amber Valley LLC | Maxwell RE Inv LLC | 12/14/2012 | $245,000 | $87,220 | 55.28% |
| 20 | 21 Claremont St #1 | San Mateo | 9/12/2013 | $500,000 | United Asset Mgt LLC | Maxwell RE Inv LLC | 4/8/2014 | $645,000 | $145,000 | 29.00% |
| 21 | 1122 10th Street | Santa Monica | 11/12/2014 | $4,500,000 | 10thSt Santa Monica Proj LLC | Maxwell RE Inv LLC | 12/11/2014 | $6,000,000 | $1,500,000 | 33.33% |
| 22 | 1741 Geary Road | Walnut Creek | 9/12/2014 | $541,000 | Nationstar Mtg LLC | Maxwell RE Inv LLC | 12/19/2014 | $600,000 | $59,000 | 10.91% |
| 23 | 1566 Glazier Dr | Concord | 8/3/2012 | $262,000 | Home Savings of America | Golden Stone Inv LLC | 1/7/2013 | $438,000 | $176,000 | 67.18% |
| 24 | 321 N Rimhurst Ave | Covina | 1/7/2013 | $368,500 | Liberty Asset Mgt Corp | Golden Stone Inv LLC | 7/1/2013 | $531,000 | $162,500 | 44.10% |
| 25 | 1375 Aldersgate Dr | La Verne | 7/13/2012 | $440,000 | Home Savings of America | Golden Stone Inv LLC | 12/18/2012 | $511,000 | $71,000 | 16.14% |
| 26 | 634 Gillette St | Los Angeles | 7/3/2013 | $259,000 | Green Tree Cap Mgt LLC | Golden Stone Inv LLC | 9/10/2013 | $305,000 | $46,000 | 17.76% |
| 27 | 748-750 E 54th St | Los Angeles | 8/23/2012 | $128,000 | Liberty Asset Mgt Corp | Golden Stone Inv LLC | 1/15/2013 | $185,000 | $57,000 | 44.53% |
| 28 | 493 Weldon Ave | Oakland | 7/20/2012 | $533,000 | Home Savings of America | Golden Stone Inv LLC | 3/13/2014 | $752,500 | $219,500 | 41.18% |
| 29 | 37516 Royal Ct | Palmdale | 1/25/2013 | $130,000 | Liberty Asset Mgt Corp | Golden Stone Inv LLC | 1/1/2014 | $232,500 | $102,500 | 78.85% |
| 30 | 18680 Lurin Ave | Riverside | 8/1/2012 | $312,000 | Epic Deed Service | Golden Stone Inv LLC | 7/8/2013 | $475,000 | $163,000 | 52.24% |
| 31 | 662 Campbell Ave | San Francisco | 2/14/2013 | $543,000 | Liberty Asset Mgt Corp | Golden Stone Inv LLC | | Not Sold Yet | | |
| 32 | 2332 N Riverside Dr | Santa Ana | 9/4/2012 | $435,000 | Walnut Creek Mgt LLC | Golden Stone Inv LLC | 9/12/2013 | $520,000 | $85,000 | 19.54% |
| 33 | 2382 Heywood St | Simi Valley | 10/23/2012 | $330,000 | HT 2010 REO Mgmt LLC | Golden Stone Inv LLC | 11/1/2012 | $420,000 | $90,000 | 27.27% |
| 34 | 47507 Fortner St | Fremont | 9/29/2011 | $418,000 | Blackwood Mgt LLC | Cupertino 2011 LLC | 1/25/2012 | $510,000 | $92,000 | 22.01% |
| 35 | 148 College St | Mountain View | 10/13/2011 | $450,000 | Liberty Asset Mgt Corp | Cupertino 2011 LLC | 12/7/2011 | $610,000 | $160,000 | 35.56% |
| 36 | 37745 Cedar Bl | Newark | 9/28/2011 | $248,000 | Blackwood Mgt LLC | Cupertino 2011 LLC | 5/16/2012 | $326,500 | $78,500 | 31.65% |
| 37 | 36 Tingley St | San Francisco | 8/26/2011 | $380,000 | Pacific Sunshine Inv LLC | Cupertino 2011 LLC | 7/27/2012 | $430,000 | $50,000 | 13.16% |




## VERIFICATION

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I have read the foregoing  COMPLAINT
_____  and know its contents.

### [ x ] CHECK APPLICABLE PARAGRAPHS

[ ]    I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to
those matters which are stated on information and belief, and as to those matters I believe them to be true.

[ x ]   I am [ ] an Officer [ ] a partner _____ [ x ] a Member _____ of North America
Captital, LLC _____ ,
a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that
reason.  [ x ]  I am informed and believe and on that ground allege that the matters stated in the foregoing document are
true.  [ ]  The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are
stated on information and belief, and as to those matters I believe them to be true.

[ ]    I am one of the attorneys for _____
a party to this action.  Such party is absent from the county of aforesaid where such attorneys have their offices, and I make
this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that
the matters stated in the foregoing document are true.

Executed on  May 5, 2016 _____ , at  Pasadena _____ , California.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Benjamin Kirk _____
Type or Print Name                              Signature

### PROOF OF SERVICE
1013a (3) CCP Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF _____

I am employed in the county of _____ , State of California.
I am over the age of 18 and not a party to the within action; my business address is: _____
_____

On, _____ I served the foregoing document described as _____
_____
_____ on _____ in this action

[ ] by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:
[ ] by placing [ ] the original [ ] a true copy thereof enclosed in sealed envelopes addressed as follows:




[ ] BY MAIL

   [ ] *I deposited such envelope in the mail at _____ , California.
   The envelope was mailed with postage thereon fully prepaid.
   [ ] As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.
   Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at
   _____ California in the ordinary course of business.  I am aware that on motion of the
   party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of
   deposit for mailing in affidavit.
   Executed on _____ , at _____ , California.
   [ ]    **(BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the addressee.
   Executed on _____ , at _____ , California.
[ ] (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.
[ ] (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was
            made.

_____          _____
   Type or Print Name                                      Signature
                                          *(BY MAIL SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN
                                                    MAIL SLOT, BOX, OR BAG)
                                          **(FOR PERSONAL SERVICE SIGNATURE MUST BE THAT OF MESSENGER)
                                                    Legal
                                                    Solutions            Rev. 7/99
                                                    Plus

# EXHIBIT O

02/11/2011 12:40 FAX  6262828555          MEGA BANK                      → MEGA ROWLAND HTS  ☒002/002

# FedPayments Manager℠ -- Funds

| | | | |
|---|---|---|---|
| Environment: | Prod | ABA: | 122244870 |
| Mode: | Prod | Service Unit: | 12224487 |
| Cycle Date: | 02/11/2011 | System Date/Time: | 02/11/2011 15:45:46 |

| | | | |
|---|---|---|---|
| Status: | Completed | Message Type: | Standard |
| Create Time: | 02/11/2011 15:43:11 | Test/Prod: | Prod |
| IMAD: | 20110211 QMGFT007 002739 02111545 | | |
| OMAD: | 20110211 L2B7721C 001562 02111545 | | |

BASIC INFORMATION

| | |
|---|---|
| Sender ABA {3100}: | ●●●●●4870 MEGA BK SAN GABRL |
| Receiver ABA {3400}: | ●●●●●0782 Bank of the West |
| Amount {2000}: | 300,000.00 |
| Type Code {1510}: | 1000 - Transfer of Funds |
| Business Function {3600}: | CTR - Customer Transfer |
| Reference Number {3320}: | 02111102 |

INSTITUTION INFORMATION

Originator {5000}

| | |
|---|---|
| ID Code: | D - DDA Account Number |
| Identifier: | ●●●00301 |
| Name: | Liberty Asset Management |
| Address: | 3218 E Holt Ave |
| | West Covina CA 91791 |

Beneficiary {4200}

| | |
|---|---|
| ID Code: | D - DDA Account Number |
| Identifier: | ●●●●●8932 |
| Name: | Tsai Luan Ho |
| Address: | 250 Selby Lane |
| | Atherton CA 94027 |
| | Tel: 650-559-8811 |

Originator Financial Institution {5100}

| | |
|---|---|
| ID Code: | F - Fed Routing Number |
| Identifier: | ●●●●4870 |
| Name: | Mega Bank |
| Address: | 245 W Valley Blvd |
| | San Gabriel CA 91776 |

Beneficiary Financial Institution {4100}

| | |
|---|---|
| Name: | Bank of the West |
| Address: | 900 Santa Cruz Ave |
| | Menlo Park CA 94025 |

Originator to Beneficiary {6000}

| | |
|---|---|
| Text: | Commission |
| | 722 Montgomery Ave |
| | San Francisco CA 94111 |

LAM00042398

# M MEGA BANK 美 加 銀 行

〔請用英文填寫〕

## APPLICATION FOR REMITTANCE 滙款申請表

DATE RECEIVED _____
日期

TIME RECEIVED _____
時間

Date of Remittance: 2/11/2011
滙款日期

Amount $ 200,000
滙款金額

Beneficiary's Bank Name: BANK OF THE WEST ABA 121100782
收款人銀行名稱

Bank/Branch Address: 900 SANTA CRUZ AVE MENLO PARK CA 94025
收款人銀行地址

Beneficiary (payee) Name: TSAI LUAN HO
收款人姓名

Beneficiary Account #: ~~_____~~932
收款人賬戶號碼

Beneficiary's Address: 250 SELBY LANE, ATHERTON, CA 94027
收款人聯絡地址

Phone Number: _____
收款人電話

Purpose of Remittance: COMMISSION
滙款目的

Special Instruction: 722 MONTGOMERY AVE, SAN FRANCISCO CA 94111
特別指示

IN REIMBURSEMENT:    ☐ CASH    ☐ CHECK    ☐ CHARGE MY/OUR ACCOUNT
支付方法                    現金          支票          直接扣賬

Account #: ~~_____~~301
賬戶號碼

Amount to be charged $ _____
扣賬金額

BY ORDER OF:
Sender's Name: LIBERTY ASSET MANAGEMENT
滙款人姓名

Phone #: _____
滙款人電話

Sender's Address: 3248 E HOLT AVE    WEST COVINA, CA 90791
滙款人地址

Sender's Signature: X
滙款人簽名

By signing above, the applicant hereby certifies that all information provided in this application is correct, and by doing so, authorizes Mega Bank (MB) to execute this remittance request through its agency, branch office, or other correspondent banks. The applicant also acknowledges that MB will impose on him/her a service charge associated with this transaction in accordance with its Schedule of Fees and Charges, and that application received after the Bank official cut off time will be processed on the next business day.

本人特此證明以上提供之滙款資料正確無誤，並授權美加銀行經由正常途徑將上列款項電匯至特定收款人。本人亦願意依照銀行的費率繳付手續費。如本人在當天匯款截止時間後遞交此申請表，美加銀行有權延至下一個工作日匯出上列款項。

**BANK USE ONLY** 銀行專用    REF. # _____    TEST KEY# _____    WIRE REF. # _____

Available Balance: $ _____    Remittance Charge: $ _____    (If Waived, by: _____ )

(If Approved by Acct. Off at different branch location)  Name _____    OFAC Y ___ N ___

| ORIGINATING BRANCH | TAKEN BY | APPROVED BY | DATE | OVER-LIMIT APPROVED BY | DATE & TIME |
|---|---|---|---|---|---|

Fax to Accounting Department

| | BY | DATE | TIME |
|---|---|---|---|

## WIRE TRANSFER DEPT. USE ONLY

Through Correspondent Bank · _____

Entered By: _____    Verified & Sent By: _____

WHITE - BRANCH COPY    CANARY - ACCOUNTING DEPT COPY    PINK - CUSTOMER COPY    OP-370 (01/08)

LAM00042410

02/22/2011 13:05 FAX  6262829333          MEGA BANK          → MEGA ROWLAND HTS  ☒001/001

---

## FedPayments Manager SM -- Funds

| | | | |
|---|---|---|---|
| Environment: | Prod | ABA: | 122244870 |
| Mode: | Prod | Service Unit: | 12224487 |
| Cycle Date: | 02/22/2011 | System Date/Time: | 02/22/2011 16:02:54 |

---

| | | | |
|---|---|---|---|
| Status: | Completed | Message Type: | Standard |
| Create Time: | 02/22/2011 16:00:34 | Test/Prod: | Prod |
| IMAD: | 20110222 QMGFT003 003332 02221602 | | |
| OMAD: | 20110222 L2B7721C 002285 02221602 | | |

BASIC INFORMATION
Sender ABA (3100):      ████4870 MEGA BK SAN GABRL
Receiver ABA (3400):    ████00782 Bank of the West
Amount (2000):          250,000.00
Type Code (1510):       1000 - Transfer of Funds
Business Function (3600): CTR - Customer Transfer
Reference Number (3320): 02221104
INSTITUTION INFORMATION
Originator (5000)
    ID Code:            D - DDA Account Number
    Identifier:         ████00301
    Name:               Liberty Asset Management
    Address:            3218 E Holt Ave Suite 200
                        West Covina CA
Beneficiary (4200)
    ID Code:            D - DDA Account Number
    Identifier:         ████8932
    Name:               Tsai Luan Ho
    Address:            250 Selby Lane
                        Atherton CA 94027
Originator Financial Institution (5100)
    ID Code:            F - Fed Routing Number
    Identifier:         ████4870
    Name:               Mega Bank
    Address:            245 W Valley Blvd
                        San Gabriel CA 91776
Beneficiary Financial Institution (4100)
    Name:               Bank of the West
    Address:            900 Santa Cruz Ave
                        Menlo Park CA 94025
Originator to Beneficiary (6000)
    Text:               Commission
                        722-728 Montgomery
                        San Francisco

LAM00042399

02/28/2011 11:18 FAX  6262829333          MEGA BANK            → MEGA ROWLAND HTS  ☒002/002

## FedPayments Manager [SM] -- Funds

| | | | |
|---|---|---|---|
| Environment: | Prod | ABA: | 122244870 |
| Mode: | Prod | Service Unit: | 12224487 |
| Cycle Date: | 02/28/2011 | System Date/Time: | 02/28/2011 14:15:53 |

| | | | |
|---|---|---|---|
| Status: | Completed | Message Type: | Standard |
| Create Time: | 02/28/2011 14:11:18 | Test/Prod: | Prod |
| IMAD: | 20110228 QMGFT006 002484 02281415 | | |
| OMAD: | 20110228 L2B7721C 001672 02281415 | | |

BASIC INFORMATION
Sender ABA {3100}:        ████4870 MEGA BK SAN GABRL
Receiver ABA {3400}:      ███0762 Bank of the West
Amount {2000}:            1,280,000.00
Type Code {1510}:         1000 - Transfer of Funds
Business Function {3600}: CTR - Customer Transfer
Reference Number {3320}:  02281103
INSTITUTION INFORMATION
Originator {5000}
    ID Code:              D - DDA Account Number
    Identifier:           ████00194
    Name:                 Vista Escrow Services
    Address:              3218 E Holt Ave Suite 200
                          West Covina CA 91791
Beneficiary {4200}
    ID Code:              D - DDA Account Number
    Identifier:           ████932
    Name:                 Tsai Luan Ho
    Address:              250 Selby Lane
                          Atherton CA 94027
Originator Financial Institution {5100}
    ID Code:              F - Fed Routing Number
    Identifier:           ██████4870
    Name:                 Mega Bank
    Address:              245 W Valley Blvd
                          San Gabriel CA 91776
Beneficiary Financial Institution {4100}
    Name:                 Bank of the West
    Address:              900 Santa Cruz Ave
                          Menlo Park CA 94025
Originator to Beneficiary {6000}
    Text:                 Commission
                          722-728 Montgomery
                          San Francisco

02/28/2011 14:15:53                                              Page 1 of 1

LAM00042400

# M MEGA BANK 美 加 銀 行

〔請用英文填寫〕

## APPLICATION FOR REMITTANCE 匯款申請表

DATE RECEIVED _____
日期

TIME RECEIVED _____
時間

Date of Remittance: 2/28/2011
匯款日期

Amount $ 1,280,000.00
匯款金額

Beneficiary's Bank Name: Bank of the West ABA 121100782
收款人銀行名稱

Bank/Branch Address: 900 Santa Crue Ave., Menlo Park, CA 94025
收款人銀行地址

Beneficiary (payee) Name: Tsai Luan Ho
收款人姓名

Beneficiary Account # ███████████
收款人賬戶號碼

Beneficiary's Address: 250 Selby Lane, Atherton, CA 94027
收款人聯絡地址

Phone Number: _____
收款人電話

Purpose of Remittance: Commission
匯款目的

Special Instruction: 722-728 Montgomeny, San Francisco
特別指示

IN REIMBURSEMENT:      ☐ CASH      ☐ CHECK      ☒ CHARGE MY/OUR ACCOUNT
支付方法                  現金          支票          直接扣賬  ████████████

Account # ████████████
賬戶號碼

Amount to be charged $ 1,280,000.00
扣賬金額

BY ORDER OF:

Sender's Name: Vista Escrow Services
匯款人姓名

Phone # 626-261-4998
匯款人電話

Sender's Address: 3218 E Holt Ave., Suite 200, West Covina, CA 91791
匯款人地址

Sender's Signature: x
匯款人簽名

By signing above, the applicant hereby certifies that all information provided in this application is correct, and by doing so, authorizes Mega Bank (MB) to execute this remittance request through its agency, branch office or other correspondent banks. The applicant also acknowledges that MB will impose on him/her a service charge associated with this transaction in accordance with its Schedule of Fees and Charges, and that application received after the Bank official cut off time will be processed on the next business day.

本人特此證明以上之匯款資料正確無誤，並授權美加銀行經由正常途徑將上列款項電匯至特定收款人。
本人亦願意依照銀行的費率繳付手續費。如本人在當天匯款截止時間後遞交此申請表，美加銀行有權延至下一個工作日匯出上列款項。

BANK USE ONLY 銀行專用    REF. # _____    TEST KEY# _____    WIRE REF. # _____

Available Balance: $ _____    Remittance Charge: $ _____    (If Waived, by: _____ )

(If Approved by Acct. Off at different branch location) Name _____    OFAC Y ____ N ____

| ORIGINATING BRANCH | TAKEN BY | APPROVED BY | DATE | OVER-LIMIT APPROVED BY | DATE & TIME |
|---|---|---|---|---|---|

Fax to Accounting Department

| | BY | DATE | TIME |
|---|---|---|---|

WIRE TRANSFER DEPT. USE ONLY

Through Correspondent Bank · _____

Entered By: _____    Verified & Sent By: _____

WHITE - BRANCH COPY    CANARY - ACCOUNTING DEPT COPY    PINK - CUSTOMER COPY                    OP-370 (01/08)

LAM00000042412

02/23/2011 13:17 FAX 6262828333          MEGA BANK                → MEGA ROWLAND HTS  ☒003/003

# BANK OF THE WEST

## Mega Bank
Customer Id: 117555
User Name: LOILY6
23-Feb-2011 01:14:56 PST
### Wire Detail Report

| | | | |
|---|---|---|---|
| **Msg Type** | BOOK | **Account** | BOW | 846005684 | Mega Bank | USD |
| **Amount** | 180,000.00 | **Value Date** | 23FEB2011 |
| **Beneficiary** | Tsai Luan Ho - ███932 | | |
| | 250 Selby Lane Atherton CA 94027 | | |
| **Payment Details** | Commission 722-728 Montgomery San Francisco | | |
| | Org:Vista Escrow Svc 3218 E Holt Ave Ste 200 West Covina CA 91791 | | |
| **Status** | CONFIRMED | **Sequence #** | 118 |
| **Confirmation Message** | No Error | | |
| **Control #** | WT11022302261515 | **Wire Ref #** | 110223006584 |

| | |
|---|---|
| **Entered on:** | 23FEB2011 |
| **Created on:** | 2011-02-23 at 13:06:35 by LOILY6 |
| **Approved on:** | 2011-02-23 at 13:10:24 by YONGWU |
| **Released on:** | 2011-02-23 at 13:10:24 by YONGWU |
| **Placed in In-Process on:** | 2011-02-23 at 13:10:28 by IISI |
| **Confirmed on:** | 2011-02-23 at 13:14:31 by IISI |
| **Confirmed on:** | 2011-02-23 at 13:14:33 by IISI |

### End of Data

LAM00042411

# EXHIBIT  P

| 2009 | | | | | |
|---|---|---|---|---|---|
| 12/17/2009 | Liberty Asset Management | Tsai Luan Ho | $295,000.00 | Close Escrow | Bank Of the West |
| | | | | | |
| 2010 | | | | | |
| 3/2/2010 | Liberty Asset Management | Tsai Luan Ho | $179,400.00 | Close Escrow Refund | Bank Of The West |
| 4/26/2010 | American Heritage Escrow | Tsai Luan Ho | $130,000.00 | Commission For | Bank Of The West |
| | | | | 1850 Gateway Blvd | |
| | | | | Concord Ca | |
| 7/8/2010 | Liberty Asset Management | Shelby Luxury Properties Inc | $417,500.00 | Commission For | Bank Of The West |
| | | | | 12016 Weshington | |
| | | | | Los Angeles Ca | |
| 10/13/2010 | American Heritage Escrow | Tsai Luan Ho | $50,000.00 | Commission For | Bank Of The West |
| | | | | 1850 Gateway Blvd | |
| | | | | Concord Ca | |
| 10/15/2010 | Liberty Asset Management | Tsai Luan Ho | $100,000.00 | Commission For | Bank Of The West |
| | | | | 5211 Edna St | |
| | | | | Los Angeles Ca | |
| 12/17/2010 | American Heritage Escrow | Shelby Luxury Properties Inc | $300,000.00 | Commission | Bank Of The West |
| | | | | | |
| 2011 | | | | | |
| 2/11/2011 | Liberty Asset Management | Tsai Luan Ho | $300,000.00 | Commission | Bank Of The West |
| | | | | 722 Montgomery Ave | |
| | | | | San Francisco Ca | |
| 2/23/2011 | Vista Escrow | Tsai Luan Ho | $180,000.00 | Commission | Bank Of The West |
| | | | | 722 Montgomery Ave | |
| | | | | San Francisco Ca | |
| 5/4/2011 | Liberty Asset Management | Tsai Luan Ho | $3,000,000.00 | Refund | Bank Of The West |
| | | | | 126 Atherton Ave | |
| | | | | Atherton | |
| 2/28/2011 | Vista Escrow | Tsai Luan Ho | $1,280,000.00 | Commission | Bank Of The West |
| | | | | 722 Montgomery Ave | |
| | | | | San Francisco Ca | |
| 6/16/2011 | Shoreline Escrow Service | Tsai Luan Ho | $100,000.00 | Commission | Bank Of The West |
| | | | | 88 East San Fernando | |

LAM00042386

| | | | | | |
|---|---|---|---|---|---|
| | | | | San Jose Ca | |
| 12/6/2011 | Liberty Asset Management | Tsai Luan Ho | $300,000.00 | Commission | Bank Of The West |
| | | | | 10 United Nations | |
| 12/16/2011 | Liberty Asset Management | Tsai Luan Ho | $100,000.00 | Commission | Bank Of The West |
| | | | | 10 United Nations | |
| | | | | | |
| 2012 | | | | | |
| 9/5/2012 | Liberty Asset Management | Tsai Luan Ho | $300,000.00 | Commission | HSBC |
| | | | | 117 Post St | |
| | | | | San Francisco Ca | |
| 12/3/2012 | Liberty Asset Management | Tsai Luan Ho | $30,000.00 | Property Tax Payment | HSBC |
| | | | | | |
| 2013 | | | | | |
| 1/4/2013 | Liberty Asset Management | Tsai Luan Ho | $40,000.00 | Commission | HSBC |
| | | | | | |
| 1/25/2013 | Liberty Asset Management | Tsai Luan Ho | $200,000.00 | Commission | HSBC |
| | | | | 116 Grary St | |
| | | | | San Francisco Ca | |
| 3/5/2013 | Liberty Asset Management | Tsai Luan Ho | $100,000.00 | Commission | HSBC |
| 7/1/2013 | Liberty Asset Management | Tsai Luan Ho | $100,000.00 | Refund Found | HSBC |
| | | | | 119 Furlong Ln | |
| | | | | Bardbury Ca | |
| | | | | | |
| | | | $7,501,900.00 | | |
| | | | | | |
| | | | | | |

LAM00042387

# EXHIBIT  Q

 **Sincere Escrow**
935 S. San Gabriel Blvd.
San Gabriel, CA 91776
Tel: (626) 286-1880
Fax: (626) 286-2983

### SELLER'S FINAL SETTLEMENT STATEMENT

| | | | |
|---|---|---|---|
| **PROPERTY:** | 220 Post Street<br>San Francisco, CA | **DATE:** | APRIL 18, 2013 |
| **SELLER:** | 220 POST SF, LLC | **CLOSING DATE:**<br>**ESCROW NO.:** | APRIL 18, 2013<br>000027-MC |

| | **DEBITS** | **CREDITS** |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration SOLD to MAJESTIC ASSET MANAGEMENT LLC | | 63,200,000.00 |
| Original Purchase Price 220 Post LLC | 56,635,863.01 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| DIAMOND POINT REAL ESTATE CORP LOAN BROKER FEE | 280,000.00 | |
| REFERRAL FEE JESSICA CHANG | 1,000,000.00 | |
| COMMISSION GREAT VISTA REAL ESTATE CORPORATION | 1,896,000.00 | |
| | | |
| COMMISSION ELSV LLC | 1,355,254.80 | |
| COMMISSION SHELBY HO | 1,016,441.10 | |
| COMMISSION BENNY KO | 1,016,441.09 | |
| | | |
| **TOTAL** | | |
| | $63,200,000.00 | $63,200,000.00 |

### SAVE THIS STATEMENT FOR INCOME TAX PURPOSES

没有报

Benny 况 不对

LAM00056659