

FILED & ENTERED

MAY 25 2022

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Liberty Asset Management Corporation, Debtor. | Case No.:  2:16-bk-13575-ER<br>Adv. No.:  2:16-ap-01374-ER |
| Bradley D. Sharp, Plan Administrator for Liberty Asset Management Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Tsai Luan Ho,<br><br>Defendant. | **ORDER REQUIRING PLAN ADMINISTRATOR AND OVERSIGHT COMMITTEE TO SHOW CAUSE WHY THIS ADVERSARY PROCEEDING SHOULD NOT BE DISMISSED**<br><br>Date:    July 6, 2022<br>Time:    10:00 a.m.<br>Location: Ctrm. 1568<br>    Roybal Federal Building<br>    255 East Temple Street<br>    Los Angeles, CA 90012 |

Good cause appearing therefor, **IT IS HEREBY ORDERED AS FOLLOWS:**

1) On **July 6, 2022 at 10:00 a.m.**, the Plan Administrator and Oversight Committee shall appear and show cause, if any there be, why the Plan Administrator's claims against Tsai Luan Ho ("Ho") should not be dismissed for the reasons set forth in the *Issues for the Plan Administrator and Oversight Committee to Address*, attached hereto as **Exhibit A**.

2) The Plan Administrator and Oversight Committee shall each file written responses to this Order to Show Cause by no later than **June 15, 2022**. Ho's opposition to such responses is due by **June 22, 2022**. Any replies to Ho's opposition are due by **June 29, 2022.**

3) By no later than **May 31, 2022**, the Plan Administrator shall serve this Order to Show Cause upon the Oversight Committee and shall file a Proof of Service so indicating.

4) Parties may appear at the hearing on this Order to Show Cause either in-person or by telephone. The use of face masks in the courtroom is optional. Parties electing to appear by telephone should contact CourtCall at 888-882-6878 no later than one hour before the hearing.

IT IS SO ORDERED.

###

Date: May 25, 2022

Ernest M. Robles
United States Bankruptcy Judge

# Exhibit A—Issues for Plan Administrator and Oversight Committee to Address

On March 21, 2016, Liberty Asset Management Corporation (the "Debtor") filed a voluntary Chapter 11 petition. On June 18, 2018, the Court entered an order confirming the *First Amended Chapter 11 Plan of Liquidation Dated January 31, 2018 Proposed by the Official Unsecured Creditors' Committee for Liberty Asset Management Corporation* [Bankr. Doc. No. 609, Ex. A] (the "Plan"). *See* Bankr. Doc. No. 665 (the "Confirmation Order") and Bankr. Doc. No. 650 (ruling confirming Plan).

## The Plan Administrator's Rights and Obligations Under the Plan

Under the Plan, the Debtor's "Assets shall vest in the Estate and shall remain in existence until all Distributions under the Plan have been made." Plan at § VII.B. The Plan appointed Bradley D. Sharp of Development Specialists, Inc. as the Plan Administrator. *Id.* at § VII.D.1. The Plan Administrator's primary obligation is to "liquidate all of the Assets … for the benefit of Creditors and in order to fund distributions in accordance with the Plan." *Id.* at § VII.A. To fulfill that obligation, the Plan vests the Plan Administrator with "the power to do the following without further order, approval or notice":

1) Protect and enforce the rights to the Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity …
2) Perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code including, without limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, asserting claims, defenses, offsets and privileges …
3) Appear on behalf of and represent the Estate in all proceedings in the Chapter 11 Case including all adversary proceedings (in all events the Plan Administrator shall succeed the Debtor and/or Committee in respect of any such proceedings as of the Effective Date) …
4) In the Plan Administrator's discretion, pursue, collect and liquidate any remaining Assets of the Estate, and provide for the Distributions therefrom in accordance with the provisions of the Plan …

Plan at § VII.D.2 (numbering altered).

The Plan limits the Plan Administrator's liability for discharging his obligations in connection with the Plan:

> The Plan Administrator, on behalf of the Estate, shall have discretion to pursue, not pursue and/or settle any and all Causes of Action and objections to Claims as the Plan Administrator determines is in the best interests of the Estate, and the Plan Administrator shall not have any liability whatsoever for the outcome of that decision, except in the event that there is a Final Order of the Bankruptcy Court determining that any such person committed gross negligence or intentional misconduct.

Plan at § VII.D.2.

The Plan Administrator's decision to pursue any cause of action must be made in "good faith," and must "be based upon the Plan Administrator's review of the merits of the various causes of action as well as the costs required to prosecute such causes of action." Plan at § VIII.

As of December 28, 2021, the Plan Administrator had distributed $13,157,187.85 to holders of Allowed Class 3 General Unsecured Claims.[1] The total amount of Allowed Class 3 General Unsecured Claims is $69,306,740.20.[2] General unsecured creditors have received distributions equal to 18.98% of their allowed claims. The Plan Reserve, which has been set aside to pay Plan Expenses, including the expenses incurred by the Plan Administrator to prosecute causes of action, had a balance of $615,062.00 as of December 27, 2021.[3]

**The Kirk/Gao Judgment**

On December 29, 2017, the Court entered a judgment against Benjamin Kirk and Lucy Gao, and in favor of the Plan Administrator, in the amount of $74,140,695.29 (the "Kirk/Gao Judgment").[4] On February 8, 2019, the District Court reversed the Kirk/Gao Judgment, and remanded the matter to the Bankruptcy Court for further proceedings to determine whether Kirk and Gao were liable to the estate. On April 26, 2019, the Plan Administrator reached a settlement with Kirk, under which Kirk agreed to pay $40,000 in exchange for the release of the Plan Administrator's claims against him.[5] The Plan Administrator explained that this settlement, "while not ideal, is in the best interests of the Liberty estate because it will avoid further litigation and the costs of further litigation under circumstances where a judgment would likely be uncollectible."[6]

On May 2, 2019, the Plan Administrator reached a settlement with Gao, under which Gao agreed to dismiss her appeal of a judgment determining that certain real properties were owned by the estate in exchange for the release of the Plan Administrator's claims against her.[7] The Plan Administrator explained the rationale for the settlement with Gao as follows:

> Gao contends (and the Plan Administrator has no information to the contrary) that she lacks material assets, holds no real property, and is self-employed without regular income. The Plan Administrator believes that the … cost of pursuing the Kirk/Gao Adversary, including additional discovery, trial preparation, and trial, would exceed several hundred thousand dollars, and would easily exceed any presently known or identifiable assets held by Gao.

Bankr. Doc. No. 920 at 4.

---

[1] *See* Eighth Postconfirmation Status Report [Bankr. Doc. No. 954] at § F. All general unsecured claims have been classified in Class 3.

[2] *Id.*

[3] *Id.* at § B.

[4] The Kirk/Gao Judgment was initially entered in favor of the Official Committee of Unsecured Creditors for the Debtor. Under the Plan, the Plan Administrator became the successor-in-interest to the Official Committee of Unsecured Creditors.

[5] Bankr. Doc. No. 919 at 3–4.

[6] *Id.* at 4.

[7] Bankr. Doc. No. 920 at 2–4.

**The Plan Administrator's Claims Against Tsai Luan Ho**

In this action, the Plan Administrator seeks damages against Tsai Luan Ho aka Shelby Ho ("Ho") in excess of $11 million. On May 28, 2018, Ho filed a voluntary Chapter 7 petition (the "Ho Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of California (the "Northern District Bankruptcy Court"). The Northern District Bankruptcy Court found that pursuant to § 727(a)(3), Ho was not entitled to a discharge, because she "has, for years, been involved in large and sophisticated transactions" involving real estate, but failed to maintain adequate financial records of those transactions.[8] The District Court affirmed the Bankruptcy Court's determination that Ho was not entitled to a discharge.

The Plan Administrator filed a Proof of Claim in the Ho Bankruptcy Case, in an amount in excess of $11 million, based upon the allegations asserted in this action. The Chapter 7 Trustee (the "Trustee") in the Ho Bankruptcy Case liquidated assets with a value of $357,557.51. The Plan Administrator received a distribution of $17,756.70 in the Ho Bankruptcy Case based upon its Proof of Claim.

**The Court's Concerns**

The Court acknowledges that the Plan provides the Plan Administrator with broad discretion over which actions to pursue. Nonetheless, the Court questions whether the Plan Administrator's desire to continue to pursue this action takes sufficient account of the high cost of trial, particularly when considering the possibility that any judgment entered in the Plan Administrator's favor could prove uncollectible. Ho has represented to the Court that she owns no real property, does not own a car, has not been gainfully employed since 2016, works primarily as a babysitter for her grandchildren, and lives on her social security payments.[9] The real property assets which Ho did own through the corporate entities Big Max, LLC and Great Vista Real Estate Investment Corporation have already been sold and all proceeds of the sales have been distributed to creditors.

In support of the continued prosecution of this action, the Plan Administrator points to the Northern District Bankruptcy Court's judgment denying Ho's discharge based upon her failure to keep adequate business records, and argues that this judgment establishes that Ho's financial condition is unknown. Pursuant to his statutory obligation, the Trustee in the Ho Bankruptcy Case has already liquidated Ho's non-exempt assets. The Plan Administrator's argument presupposes that the Plan Administrator will be able to uncover additional assets that the Trustee could not locate. While the Court cannot rule out the possibility that the Plan Administrator would be more successful than the Trustee in uncovering hidden assets, there is nothing in the record suggesting that this is likely. The Trustee had both a statutory obligation and a financial incentive to locate Ho's hidden assets, and there is no indication that the Trustee was anything other than diligent in fulfilling his statutory obligations.

Were Ho to acquire significant assets in the future, entry of a judgment against her and in the Plan Administrator's favor could inure to the benefit of general unsecured creditors. But again, while this possibility cannot be ruled out, it seems unlikely. Prior to the commencement of this action, Ho received substantial income and assets through a Profit Sharing Agreement with the

---

[8] Memorandum Decision Re Trustee's Motion for Partial Summary Judgment [Doc. No. 21, Adv. No. 18-ap-03051-DM] at 6–7.
[9] Adv. Doc. No. 172 at ¶ 1.

Debtor.[10] In connection with that Profit Sharing Agreement, Ho used her contacts to bring potential real estate investors to the Debtor.[11] Many investors in the Debtor lost a substantial portion of their investment; as noted above, investors receiving a distribution through the Plan have to date recovered only 18.98% of their claims. In view of her involvement with the Debtor's failed venture, Ho's ability to continue to earn substantial income in the real estate industry is questionable.

In responding to this Order to Show Cause, in addition to addressing the concerns of the Court set forth above, the Plan Administrator and the Oversight Committee shall address the following:

1) What specific assets belonging to Ho does the Plan Administrator anticipate recovering in the event that the trial goes forward and judgment is entered in favor of the Plan Administrator?

2) The Plan Administrator determined that it was not worth pursuing his claims against Gao and Kirk, given the high costs of trial and the likelihood that any judgment obtained by the Plan Administrator would prove uncollectible. Why is it worthwhile for the Plan Administrator to pursue his claims against Ho, in view of the costs of pursuing such claims and the probable uncollectability of any judgment?

3) As of December 27, 2021, the Plan Reserve had a balance of $615,062.00. The costs of a trial against Ho could consume a substantial portion of this reserve, which would otherwise be available for distribution to general unsecured creditors. The Court is concerned that the primary beneficiaries of a trial would be the professionals employed by the Plan Administrator, as opposed to the creditors upon whose behalf the Plan Administrator serves. What reasonable assurances can be made that this would not be the case?

---

[10] Final Joint Pretrial Stipulation [Adv. Doc. No. 89] at ¶¶ 12–108.
[11] *Id.* at ¶ 15.