GAIL S. GREENWOOD (CA SBN 169939)
ERIN GRAY (CA SBN 157658)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:  ggreenwood@pszjlaw.com
         egray@pszjlaw.com

Attorneys for Bradley D. Sharp, Plan Administrator under
the Confirmed First Amended Chapter 11 Plan of
Liquidation Dated January 31, 2018 for Liberty Asset
Management Corporation

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>LIBERTY ASSET MANAGEMENT CORPORATION, a California corporation,<br><br>Debtor. | Case No.: 2:16-bk-13575-ER<br><br>Chapter 11<br><br>Adv. No.: 2:16-ap-01374-ER |
| BRADLEY D. SHARP, Plan Administrator Under the Confirmed First Amended Chapter 11 Plan of Liquidation Dated January 31, 2018 for Liberty Asset Management Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TSAI LUAN HO, an individual,<br><br>Defendant. | **THE PLAN ADMINISTRATOR'S OPPOSITION TO TSAI LUAN HO'S MOTION FOR ATTORNEYS' FEES**<br><br>[No Hearing per Order dated July 6, 2022] |

**Table of Contents**

**I. INTRODUCTION** ................................................................................................................ **1**

**II. FACTUAL BACKGROUND** .............................................................................................. **2**

    **A.**      **The Adversary Proceeding and Scheduled Trial** ................................................ **3**

    **B.**      **Ho's Request to Reopen Discovery to "Share" Documents Was Denied** ........ **4**

    **C.**      **The Stipulated Pretrial Order and Related Pretrial Proceedings** ................... **4**

    **D.**      **Ho's Bankruptcy and Denial of Discharge** ......................................................... **5**

    **E.**      **Ho's Claims Against the Debtor Were Disallowed** ........................................... **5**

    **F.**      **Ho Seeks "At Least" $50,000 of Attorneys' Fees Based on Services Performed From October 2017 Through Present** .............................................. **6**

**III. LEGAL ARGUMENT** ....................................................................................................... **6**

    **A.**      **Ho Is Not Entitled to Recover Attorneys' Fees Under Civil Code Section 1717 Because the Adversary Proceeding Was Not an Action to Enforce a Contract.** ..................................................................................................................... **6**

        **1.**      **The Adversary Proceeding Is Not an Action on a Contract Because the Plan Administrator Did Not Seek to Enforce the Deeds of Trust That Ho Identifies** ................................................................................... **7**

        **2.**      **Absent a Contract Claim, Ho Cannot Recover Attorneys' Fees Under Civil Code Section 1717.** ......................................................................... **9**

    **B.**      **Ho Is Not Entitled to Recover Costs or Fees as a Prevailing Party** .................. **9**

    **C.**      **Ho Cannot Demonstrate That Her Brokerage Services (or Other Alleged Services) Were Reasonably Equivalent Value in Exchange for Transfers** ... **11**

**IV. CONCLUSION** ................................................................................................................ **13**

# Table of Authorities

## CASES

*Alyeska Pipeline Serv. Co. v. Wilderness Society,*
  421 U.S. 240 (1975)........................................................................................................... 6

*Asphalt Professionals, Inc. v. Davis (In re Davis),*
  595 B.R. 818 (Bankr. C.D. Cal. 2019)................................................................................ 8

*Bd. of Trustees v. Quinones (In re Quinones),*
  2015 Bankr. LEXIS 4348 (Bankr. N.D. Cal. Dec. 18, 2015) ............................................. 9

*Bos v. Bd. Of Trustees,*
  818 F. 3d 486 (9th Cir. 2016) ............................................................................................. 9

*Burkhalter Kessler Clement & George LLP v. Hamilton,*
  19 Cal. App. 5th 38 (2018) ............................................................................................... 10

*Dell Merk, Inc. v. Franzia,*
  132 Cal. App. 4th 443 (2005) ........................................................................................... 10

*Dicello v. Jenkins (In re Int'l Loan Network, Inc.),*
  160 B.R. 1 (Bankr. D.D.C. 1993) ..................................................................................... 14

*Donell v. Kowell,*
  533 F. 3d 762 (9th Cir. 2008) ........................................................................................... 13

*Hayes v. Palm Seedlings Partners-A (In re Agric. Research and Tech. Gp., Inc.),*
  916 F. 2d at 535 (9th Cir. 1990) ....................................................................................... 13

*Hoffman v. Markowitz,*
  2018 U.S. App. LEXIS 36243 (9th Cir. Dec. 4, 2018).............................................. 14, 15

*In re Deuel,*
  482 B.R. 323 (Bankr. S.D. Cal. 2012) ............................................................................... 7

*In re Mac-Go Corp.,*
  541 B.R. 706 (Bankr. N.D. Cal. 2015) ....................................................................... 10, 11

*In re Ramirez Rodriguez,*
  209 B.R. 424 (Bankr S.D. Tex. 1997) ............................................................................. 14

*Johnson v. Righetti (In re Johnson),*
  756 F. 2d 738 (9th Cir. 1985) ............................................................................................ 9

*Orlick v. Kozyak (In re Fin Federated Title & Trust, Inc.),*
  309 F.3d 1325 (11th Cir. 2002) ....................................................................................... 14

*Penrod v. AmeriCredit Fin. Servs., Inc. (In re Penrod),*
  802 F.3d 1084 (9th Cir. 2015) ........................................................................................... 8

*Reynolds Metals Co. v. Alperson,*
  25 Cal. 3d 124 (1979) ...................................................................................................... 10

*Santisa v. Goodin,*
  17 Cal. 4th 599 (1998) ....................................................................................................... 7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Warfield v. Byron,*
   436 F3d 551 (5th Cir. 2006) .................................................................................. 13, 14

**STATUTES**

Civ. Code §3439 ................................................................................................................ 13
Civil Code §1717 ...................................................................................................... 7, 9, 12

**RULES**

Bankruptcy Rule 7054 ....................................................................................................... 12
Local Bankruptcy Rule 7054-1 .......................................................................................... 12
Local Bankruptcy Rule 7054-1(b)(4) ................................................................................. 12

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

# I.

# INTRODUCTION

Bradley Sharp, Plan Administrator Under the Confirmed First Amended Chapter 11 Plan of Liquidation Dated January 31, 2018 (the "Plan Administrator"), opposes the *Motion for Attorneys' Fees Against the Administrator* [Docket No. 196] ("Fee Motion") filed by defendant Tsai Luan Ho a/k/a Shelby Ho ("Ho") in connection with the Plan Administrator's request for dismissal of the adversary proceeding. The Plan Administrator is prepared to dismiss this adversary on the grounds that the costs of litigation will likely exceed any assets that may be available from Ho, provided that each party bear its own fees. The proposed dismissal is not a reflection of the substantive merits of the estate's avoidance claims and does not render Ho a prevailing party under any recharacterization of the facts.

Ho's arguments seeking to leverage a voluntary dismissal into a purported basis for payment of "at least $50,000" of her attorneys' fees border on the outrageous. First, there is no statutory basis to recover attorneys' fees because the Plan Administrator did not bring contractual claims that would entitle Ho to attorneys' fees under Cal. Civ. Code section 1717. Second, there is no legal or factual basis for allowing Ho to recover costs as a prevailing party under Federal Rule of Bankruptcy Procedure 7054 and Local Bankruptcy Rule 7054-1 (or comparable state law) because the Plan Administrator seeks voluntary dismissal as a cost-benefit measure and Ho has not prevailed on any matter beyond successfully delaying the trial originally scheduled in May 2018.

Ho's efforts to recast herself as a prevailing party entitled to fees are neither supported by the record nor proof of any infirmity of the Plan Administrator's claims. In fact, Ho's testimony in support of the Fee Motion underscore the extent to which she received extraordinary avoidable transfers from Liberty Asset Management Corp. ("Liberty" or the "Debtor") beginning in 2011 through 2016 (even beyond the transfers at issue for trial), which she continues to defend as loans or "commissions" for her brokerage services. Ho acknowledges that Liberty's investment operations were a Ponzi scheme and that Liberty was insolvent. If the matter proceeded to trial, Ho would bear the burden of proving good faith and reasonably equivalent value. Ho's alleged good faith defense that she was a "mere victim" is belied by (a) the fact that she regularly acted as a "conduit" of assets

1

between Liberty, Kirk, and various investment entities, and (b) her knowledge that investors were not getting paid when she received real properties in lieu of cash. Ho Declaration [Docket No. 197] at ¶¶ 10-11, 24. In addition to lacking good faith, Ho cannot demonstrate that her services in soliciting innocent investors to a Ponzi scheme was fair value in exchange for the transfers. Each of these facts support the Plan Administrator's viable claims against Ho for $11,011,304, which were deemed nondischargeable in Ho's chapter 7 bankruptcy based on her failure to maintain business records.

Ho's submission of over 150 pages of explanatory notes and exhibits cannot conceivably support finding the Plan Administrator liable for her attorneys' fees on the premise that Gail Greenwood personally ignored "exculpatory proof of [Ho's] innocence." *See* Fee Motion at pp. 8, 11, 13; and Ho Declaration at ¶¶15-16, 25-33, 37-38, 42.[1] Counsel for the Plan Administrator sought a trial of the fraudulent transfer claims, including factual disputes regarding Ho's alleged good faith, which Ho consistently resisted. If Ho had "more than sufficient proof" that the Plan Administrator's claims lacked merit and required payment of her fees as she claims (Fee Motion at p. 13), her remedy was to bring a dispositive motion – presumably in or after June 2017 when she investigated the transfers at issue and began assembling notes, or to seek a judgment after trial -- not to seek a "win" five years later by motion after her debts were held nondischargeable.

In sum, Ho's Fee Motion should be denied because it lacks legal merit and Ho is not a prevailing party by any stretch of imagination.

## II.

## FACTUAL BACKGROUND

Considering that the adversary proceeding has been pending for almost six years, the Plan Administrator highlights below certain portions of the record and chronology of facts. These facts, taken as a whole, demonstrate that the Plan Administrator has pursued the litigation in good faith and Ho is not entitled to attorneys' fees.

---

[1] The undersigned is shocked by the personal attacks launched against her as purported support for Ho's attorneys' fees. Counsel for each of the parties have worked together amicably until now. Gail Greenwood is an advocate for her client, subject to oversight by a committee, and shares information as part of the attorney-client relationship. She does not unilaterally make decisions, nor is she the final judge of a party's alleged "proof of innocence".

2

**A. The Adversary Proceeding and Scheduled Trial**

The Plan Administrator succeeded to the Official Committee of Unsecured Creditors ("Committee") as plaintiff in this adversary proceeding. On August 16, 2016, the Committee filed its Complaint [Docket No. 1], alleging ten separate causes of action against Ho and Benny Kirk. The gravamen of the Complaint is for breach of fiduciary duty and avoidance of fraudulent transfers as both intentionally and constructively fraudulent. The Committee did not bring any claims for breach of contract.

The close of all discovery occurred on June 30, 2017 in accordance with the Court's scheduling order. Prior to the close of discovery, Ho was required to respond to written discovery, produce documents, and appear for depositions on May 26, 2017 and June 5, 2017. Ho apparently undertook her "own" belated investigation after the second day of her deposition and began collecting information to respond to the Committee's allegations regarding her receipt of fraudulent transfers, including cash payments designated as "commissions" on Liberty's books. *See, e.g.,* Exhibit P to the Complaint and Ho's narratives at Exhibit 6 to the Ho Declaration. The problem is that her narrative explanation is just that, and neither admissible nor exculpatory. In particular, Ho confirmed receipt of transfers from Liberty, including cash transfers that were erroneously labeled as commissions instead of, as she claims, "loan" repayments. The "loans" in question were allegedly made by Ho between 2011 and 2013 to Kirk individually, and the "repayments" were made by Liberty to Ho in the absence of any written loan documents. Ho Declaration, ¶30 and Exhibit 6. Apart from the evidentiary and foundational issues, Ho and her counsel have failed to demonstrate, and cannot demonstrate, that Liberty received reasonably equivalent value for monies paid to Kirk. The same is true of Ho's other narratives regarding the "complicated and complex" relationship between her, Kirk, and Liberty (Ho Declaration, ¶9), all of which show, at a minimum, a convoluted stream of transfers to Ho in connection with "the Liberty Ponzi scheme" (Ho Declaration, ¶¶ 33 and 26-32).

The parties engaged in three separate mediation sessions in June 2017, July 2017, and February 2018 that were unsuccessful. The matter was set for trial on March 29, 2018.

//

3

**B. Ho's Request to Reopen Discovery to "Share" Documents Was Denied**

On February 21, 2018, Ho moved to reopen discovery and vacate the trial date on the grounds that she recently discovered evidence of forgeries in connection with a Mega Bank account in the name of 88 San Fernando LLC, which she needed to "share" with the Committee. [Docket No. 78; *see also* Ho Declaration, Exhibit 4]. On March 27, 2018, the Court entered an order denying Ho's motion on the grounds, among others, that Ho was aware of the alleged forgeries since June 13, 2017, when her counsel disclosed them to the Committee, and Ho failed to demonstrate good cause to vacate the trial date. [Docket Nos. 83-84].

**C. The Stipulated Pretrial Order and Related Pretrial Proceedings**

On April 16, 2018, the Court entered a *Final Joint Pretrial Stipulation Between the Official Committee of Unsecured Creditors, Tsai Luan Ho, and Benjamin Kirk as Modified by the Court* [Docket No. 89] (the "Stipulated Pretrial Order").[2] The Stipulated Pretrial Order speaks for itself in terms of agreed facts. Of note, Ho admits to receiving the transfers at issue for trial consisting of: the Atherton Property, the San Jose Units, the Cash Transfers, and the Anacapa Cash (each as defined therein). Ho also admits that Liberty's profits disappeared by 2012, Liberty lacked cash to pay Ho a "profit share" by that time so Kirk/Liberty agreed to transfer real property to Ho in lieu of cash, and the properties transferred to Ho were purchased by Liberty with investor funds. Fee Motion at p. 10, lines 12-20.

Ho's defense to the Plan Administrator's fraudulent transfer claims was (and is) that (a) the transfers to Ho were never intended to hinder, delay, or defraud investors, and (b) she did not owe fiduciary duties to the Debtor. Fee Motion at p. 10, line 21- p. 11, line 10. Ho and her counsel misconstrue applicable fraudulent transfer law insofar as a Ponzi scheme, by definition, creates an inference of intentional fraud. *See* Committee's Trial Brief [Docket No. 100] at pp. 10-16 (discussing *Hayes v. Palm Seedlings Partners-A (In re Agricultural Research and Tech. Gp., Inc.),* 916 F. 2d 528, 536 (9th Cir. 1990)).

On May 10, 2018, Ho's counsel sought to substitute out of the case, leaving Ho in pro per.

---

[2] Ho requested judicial notice of the Stipulated Pretrial Order and acknowledges its contents by her subsequently filed *Errata* to the Ho Declaration. [Docket No. 198].

[Docket No. 98]. The substitution was stricken pursuant to Local Bankruptcy Rule 2091-1 and Ho was ordered to prepare trial materials and submit them to chambers. [Docket Nos. 99 and 103]. Ho's proposed trial exhibits consisted of several hundred pages of material that lacked bates numbers or identifiable exhibit designations, much of which appeared to be Ho's handwritten notes and excerpted documents that were the subject of Ho's unsuccessful motion to reopen discovery, referenced above, and are now submitted in support of her Fee Motion. The Plan Administrator moved *in limine* to exclude such documents as irrelevant, incomplete, and barred by Federal Rule of Bankruptcy Procedures 7037(c) [Docket No. 111], and the matter was scheduled for hearing on the first day of trial [Docket Entry 114].

**D.  Ho's Bankruptcy and Denial of Discharge**

On the day before trial, May 28, 2018, Ho filed for chapter 7 bankruptcy in the Northern District of California, case number 18-30581 (DM).[3] On April 9, 2019, the bankruptcy court entered a memorandum of decision and order on summary adjudication determining that pursuant to Bankruptcy Code section 727(a)(3), Ho was not entitled to a discharge because she was involved for years in large and sophisticated real estate transactions and she failed to maintain adequate financial records of those transactions. [Ho Adv. Proc. No. 18-ap-03051, Docket Nos. 21, 23]. Ho unsuccessfully appealed and, on December 11, 2019, the nondischargeability order was affirmed by the district court. [*Id.,* Docket No. 57]. At Ho's request, and over the objection of the Plan Administrator, the adversary proceeding was stayed for the last three years beyond the date when Ho's debts were ordered nondischargeable.

Liberty's estate received a distribution of $17,756 (less than 1 percent).[4]

**E.  Ho's Claims Against the Debtor Were Disallowed**

Ho filed the following proofs of claim against Liberty: Number 33-1 on behalf of Washe LLC ($2,000,000 – money advanced), Number 30-2 on behalf of Great Vista Real Estate

---

[3] Several months earlier, on January 10, 2018, Ho filed petitions for bankruptcy of her wholly-owned entities, Great Vista Real Estate Corporation and Big Max, LLC. Ho's chapter 7 trustee substituted herself as manager of Big Max LLC, moved for conversion of the Big Max case to chapter 7, and for substantive consolidation of the Ho/Big Max cases on the grounds that creditors dealt with them as single economic unit and the affairs of the debtors were inextricably entangled. On September 22, 2018, the bankruptcy court granted substantive consolidation and overruled Ho and Big Max's objections. (Ho Bankr. Docket No. 60).

[4] The Plan Administrator's proof of claim for $11,011,304 identified four transfers, consistent with those described in the Committee's trial brief and the Stipulated Pretrial Order.

Corporation ($650,000 – money advanced/ attorneys' fees), and Number 39-1 on behalf of Ho individually ($11,503,387 – commissions earned). The Committee and/or the Plan Administrator objected to each claim and the Court ordered the claims disallowed. [Main Bankr. Docket Nos. 778-779, 682, and 686].

### F. Ho Seeks "At Least" $50,000 of Attorneys' Fees Based on Services Performed From October 2017 Through Present.

Ho attaches Mr. Hinds' billing invoices to her declaration at Exhibit 8 in support of her Fee Motion seeking at least $50,000 of attorneys' fees. The invoices reflect services for the period of October 5, 2017 through July 7, 2022, totaling $242,898. For reasons set forth below, the Plan Administrator disputes Ho's alleged entitlement to attorneys' fees as a prevailing party under a contract that requires fee shifting. In addition, many of the fee entries are unrelated to the Plan Administrator's lawsuit. For example, Ho was a defendant in one or more state court cases in Pomona, California, and her counsel's invoices include charges for communications with Fred Wong, trial preparation, a joint defense agreement, and attendance at mediation (Ho Declaration, Exhibit 8 throughout and at pp. 40-42, 49-55). Her counsel's invoices also include charges to unsuccessfully oppose objections to her friends' proofs of claims against Liberty (*Id.,* Exhibit 8 at p. 47), and charges, including travel costs, related to the Northern District bankruptcy filings (*Id.,* Exhibit 8 at pp. 1, 24, 42). Assuming there were a contractual agreement for attorneys' fees, which the Plan Administrator disputes, the Fee Motion does not specify which fees are compensable or why the Plan Administrator should pay $50,000.

## III.

## LEGAL ARGUMENT

### A. Ho Is Not Entitled to Recover Attorneys' Fees Under Civil Code Section 1717 Because the Adversary Proceeding Was Not an Action to Enforce a Contract.

Under the American Rule, parties to litigation bear their own attorneys' fees. *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 247 (1975) ("In the United States, the prevailing party litigation is ordinarily not entitled to collect a reasonable attorneys' fee from the loser;" declining arguments for exception to the rule). Ho seeks to recover "at least $50,000" of her

6

attorneys' fees under Cal. Civil Code section 1717, which allows for recovery of attorneys' fees where parties to a contract have specifically agreed to pay such fees in the event of a dispute.

Civil Code section 1717(a) provides in part:

> In any **action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract,** shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Civ. Code §1717(a) (emphasis added). Under section 1717(a), reasonable attorneys' fees pursuant to a contract are fixed by the court as an element of costs. *Id* Ho acknowledges that section 1717 is not applicable to a tort action. Fee Motion at pp. 16-17 (citing *In re Deuel,* 482 B.R. 323, 328 (Bankr. S.D. Cal. 2012) (denying recovery of fees under deed of trust)).

To recover attorneys' fees under section 1717, Ho must show (i) an action to enforce a contract, (ii) the contract must include a fee shifting provision, and (iii) she must be the prevailing party as determined by the Court. Ho fails the first element and should fail the third element.

**1. The Adversary Proceeding Is Not an Action on a Contract Because the Plan Administrator Did Not Seek to Enforce the Deeds of Trust That Ho Identifies.**

Ho's theory that she is entitled to recover her attorneys' fees on a contractual basis fails because the adversary proceeding is not an action "on a contract," and the Plan Administrator did not pursue any claims to "enforce" a contract. *See, e.g., Santisa v. Goodin,* 17 Cal. 4th 599, 615 (1998) (cited by Ho; "Consistent with this language [section 1717(a)], this court has held that section 1717 applies only to actions that contain at least one contract claim.").

Ho argues that two deeds of trust attached as Exhibits G and K to the Complaint rendered the litigation an action to enforce the deeds of trust. Fee Motion at p. 15.[5] The substantive allegations of the Complaint, including the causes of action, clearly refute this argument. The deeds of trust were attached as evidence of the transfer of title from Liberty to entities managed by Ho, at which point Ho caused the real properties to be encumbered by one or more liens. The Plan Administrator

---

[5] Ho did not attach these allegedly critical documents to her Declaration or specifically request judicial notice. The deeds of trust are among Exhiits A-Q, Docket No. 2. The Plan Administrator did not seek enforcement of the deeds of trust any more than he sought to enforce other exhibits, including grant deeds, closing statements, or a third party complaint.

7

did not seek to enforce the deeds of trust, nor did the Plan Administrator pursue any actions on the deeds. Exhibit G is a deed of trust between Northern California Mortgage Fund VII LLC and Washe LLC, dated January 15, 2015, and signed by Ho as manager of Washe LLC. Exhibit K is a deed of trust between Bank SinoPac Los Angeles Branch and 88 San Fernando LLC, dated June 26, 2012, and signed by Ho as a member of 88 San Fernando LLC. Neither the Debtor nor the Plan Administrator in the Debtor's shoes was party to the deeds of trust that contain fee provisions for the benefit of the lenders.

Ho's counsel argues at length that two recent cases "shed light on which disputes fall within the purview of Cal. Civ. Code §1717(a)." Motion at pp. 17-20. None of the cited cases is analogous to the facts of this adversary proceeding because each involved an action, or underlying action, on a contract that was subject to enforcement in bankruptcy. *See Asphalt Professionals, Inc. v. Davis (In re Davis),* 595 B.R. 818 (Bankr. C.D. Cal. 2019) (creditor sued for breach of contract and fraud and lost subsequent 523(a)(2) action; contractual provision was broad enough to encompass bankruptcy litigation); *Penrod v. AmeriCredit Fin. Servs., Inc. (In re Penrod),* 802 F.3d 1084, 1089-90 (9th Cir. 2015) (secured lender pursued contract-based claim against debtor in "hanging paragraph" litigation under Bankr. Code §1325 and lost); *Bos v. Bd. Of Trustees,* 818 F. 3d 486, 489 (9th Cir. 2016) ("[I]f the bankruptcy court did *not* need to determine whether the contract was enforceable, then the dischargeability claim is *not* an action on the contract within the meaning of California Civil Code §1717."); *Johnson v. Righetti (In re Johnson),* 756 F. 2d 738, 740 and n.2 (9th Cir. 1985) (relief from stay claim was not an action on the contract; section 1717 fees reversed by the district court and affirmed on appeal to the Ninth Circuit). The theme of the foregoing cases is that there must be an action on the contract that enables the court to construe the relevant terms of the fee shifting provision. *See also Bd. of Trustees v. Quinones (In re Quinones),* 2015 Bankr. LEXIS 4348, at *34 (Bankr. N.D. Cal. Dec. 18, 2015) (discussing Civil Code section 1717 and requirement of an action on a contract; claims for attorneys' fees based on nondischargeability action under section 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity denied because claims were akin to tort claims and did not seek enforcement of any provisions of the alleged trust agreements.

In this case, the Plan Administrator was not a party to the alleged deeds of trust and did not

8

bring any claims under the deeds, as evidenced by the Complaint, the Stipulated Pretrial Order, and the Committee's Trial Brief. Accordingly, Ho is not entitled to recover her attorneys' fees as a contractual right under Civil Code §1717.

### 2. Absent a Contract Claim, Ho Cannot Recover Attorneys' Fees Under Civil Code Section 1717.

Ho grasps for a section 1717 claim by arguing that non-signatories defendants can be liable for attorneys' fees based on a contractual fee provision. However, as evidenced by the cases Ho cites, the existence of "an action on the contract" is still critical to recovery of fees under section 1717(a). *See Dell Merk, Inc. v. Franzia,* 132 Cal. App. 4th 443, 451 (2005) (lender intervened in construction contract dispute); *Reynolds Metals Co. v. Alperson,* 25 Cal. 3d 124, 129 (1979) (lawsuit against alleged alter egos for breach of promissory notes); *Burkhalter Kessler Clement & George LLP v. Hamilton,* 19 Cal. App. 5th 38, 43 (2018) (same; lawsuit against alleged alter ego).

The Complaint in this action alleged tort claims for breach of fiduciary duty, conversion, and avoidance and recovery of fraudulent transfers, and equitable claims for unjust enrichment and accounting. The fact that Ho signed mortgage documents in favor of certain lenders after receiving title to real properties purchased by Liberty does not entitle Ho to assert contractual fee claims against the Plan Administrator absent evidence that such fee claims were reciprocally available to the Plan Administrator.

### B. Ho Is Not Entitled to Recover Costs or Fees as a Prevailing Party.

Ho argues that she is also entitled to recover her attorneys' fees under Cal. Code of Civ. Proc. ("CCP") sections 1021 and 1032. Fee Motion at pp. 20-23. Ho's argument is circular because in order to recover fees as an item of costs, she must first establish a contractual right to recover such fees based on an action on a contract. *See In re Mac-Go Corp.,* 541 B.R. 706, 715 (Bankr. N.D. Cal. 2015) (cited by Ho, citing CCP §1033.5(a)(10), which permits recovery of fees as an allowable cost when authorized by contract, statute, or law).

The case of *In re Mac-Go Corp* does not support any alleged recovery by Ho primarily because it involved claims that were deemed to be actions based on the bank's loan contracts with the debtor. *Id.* at 715-16. The *Mac-Go* trustee's avoidance claims under Bankruptcy Code sections

9

547, 548(a)(1)(B), and 549(a) were based on transfers under the loan contracts, and the disputed issue of whether the debtor received reasonably equivalent value under its guaranty. *Id.* (bank's defense of preference and fraudulent conveyance claims were premised on enforcement of commercial loan documents). By contrast, the Plan Administrator's avoidance claims are unrelated to the terms of any deeds of trust that Ho may have entered. *See generally* Stipulated Pretrial Order. The fraudulent transfer claims asserted in the Complaint are based on oral contracts and/or the profit sharing agreement entered between Kirk/Liberty and Ho, none of which contains a provision for attorneys' fees.

More significantly, the case of *In re Mac-Go Corp.* does not support any alleged recovery of fees by Ho as a prevailing party because the Court found that there was no prevailing party – in spite of the fact that the bankruptcy court entered a summary adjudication order dismissing avoidance claims worth almost $900,000 in favor of the defendant and granting post-petition claims under section 549 worth approximately $25,000 in favor of the trustee. *Id.* at 711, 714-18 ("The prevailing party determination is to be made only upon final resolution of the contract claims and only be a comparison of the extent to which each party has succeeded and failed to succeed in its contentions.") (finding that while the bank prevailed on the defense of significant claims, judgment for $25,000 was "by no means de minimus").

Bankruptcy Rule 7054 and Local Bankruptcy Rule 7054-1 govern taxation of costs and awards of attorneys' as costs under applicable federal law. Where there is a voluntary dismissal, and upon request of one or more of the parties, the court determines the prevailing party. LBR 7054-1(b)(4). The prevailing party is only entitled to recover its statutory costs, except to the extent that it is entitled to attorneys' fees under section 1717. *See generally* Form 2630 (Bill of Costs) (itemized costs include fees for service of summons, court reporter fees, witness fees). CCP sections 1032, 1033, and 1033.5 establish comparable provisions for the recovery of costs by a prevailing party under California law. Even assuming Ho could be deemed a prevailing party in connection with the proposed voluntary dismissal, she would only be entitled to her statutory costs.

In this case, there has been no resolution of the claims asserted in the Complaint such that the Court cannot find that Ho is a prevailing party. The Plan Administrator is prepared to dismiss the

10

litigation as a cost-benefit consideration. Ho did not partially recover on any claims. Ho's litigation strategy appears to have been to cause delay and expense to the Liberty estate sufficient for her to file a personal bankruptcy (notwithstanding that her debts are nondischargeable). Ho's efforts to offset the estate's avoidance claims by pursuing meritless proofs of claims for alleged commissions and loans were unsuccessful. Likewise, Ho's efforts to reopen discovery, vacate trial, and introduce her personal notes as evidence have been unsuccessful.

### C. Ho Cannot Demonstrate That Her Brokerage Services (or Other Alleged Services) Were Reasonably Equivalent Value in Exchange for Transfers.

Ho repeatedly insists that counsel for the Plan Administrator ignored her "exculpatory proof of innocence." Ho Declaration, *passim*. Apart from the absurdity of the premise as a basis for recovery of attorneys' fees under Civil Code section 1717, Ho misinterprets the nature of the Plan Administrator's avoidance claims. Ho's defense of the claims fails because she cannot demonstrate that her brokerage services, consisting of introducing investors to what she acknowledges was a Ponzi scheme, or loans to Kirk, were reasonably equivalent value in exchange for the transfers.

An unprofitable business that can only satisfy its investors by obtaining new investor funds is deemed to be an intentionally fraudulent enterprise. *In re Agric. Research and Tech. Gp., Inc.*, 916 F. 2d at 535 (9th Cir. 1990) (actual intent to hinder, delay, or defraud may be inferred from the mere existence of a Ponzi scheme); *Donell v. Kowell*, 533 F. 3d 762, 770 (9th Cir. 2008) (same). The intent at issue is that of the debtor/transferor, not that of the transferee. Civ. Code §3439.07(a). To avoid liability, the recipient of a fraudulent transferee must demonstrate receipt of the transfer in good faith *and* for reasonably equivalent value. Civ. Code §3439.08(a). The Plan Administrator disputes Ho's alleged good faith because the defense is measured from an objective standard based on what Ho reasonably should have known from numerous facts, including highly questionable cash transactions in early 2011. *See* Stipulated Pretrial Order, ¶A.67.[6] *In re Agric. Research,* 916 F. 2d at 536 ("[I]f the circumstances would put a reasonable person on inquiry of a debtor's fraudulent

---

[6] By her most recent declaration, Ho admits that in 2011, Liberty "preferred to pay [her] commissions in real property." Ho. Decl., ¶11. She agreed that Liberty would pay her commissions in the form of real estate. *Id.,* ¶24. And at that time, Liberty allegedly owed her more than $4 million for deals that had closed. *Id.* Even if Ho provided valuable services early in the scheme, which the Plan Administrator disputes, her alleged oral agreements for commissions were time-barred and the facts and circumstances preclude a finding of good faith.

11

purpose, and a diligent inquiry would have revealed fraudulent purpose, then the transfer is fraudulent."). Moreover, the Plan Administrator disputes that Ho can demonstrate that she gave reasonably equivalent value for any of the transfers at issue.

The majority of courts hold that referral fees or commissions paid in connection with a Ponzi scheme do not confer "value." *Warfield v. Byron,* 436 F3d 551, 560 (5th Cir. 2006) ("It takes cheek to contend that in exchange for payments he received, the Ponzi scheme benefitted from his efforts to extend the fraud by securing new investments."); *In re Ramirez Rodriguez,* 209 B.R. 424, 434 (Bankr S.D. Tex. 1997) ("As a matter of law, the defendant gave no value to the debtors for the commissions attributable to investments made by others pursuant to the verbal agreement with [the debtor]."); *Dicello v. Jenkins (In re Int'l Loan Network, Inc.),* 160 B.R. 1, 16 (Bankr. D.D.C. 1993) (services conferred no value to the estate and only worsened its condition by increasing claims against the debtor's estate). *Compare Orlick v. Kozyak (In re Fin Federated Title & Trust, Inc.),* 309 F.3d 1325, 1333 (11th Cir. 2002) (no per se rule that services in furtherance of Ponzi scheme were without value; concurrence observes that from the facts in the record, "it is utterly inconceivable that her services were worth [$1,167,037], but how much less …is up to the jury to determine."). The Ninth Circuit, without adopting a per se rule, has followed the reasoning of *Warfield*. *See Hoffman v. Markowitz,* 2018 U.S. App. LEXIS 36243 (9th Cir. Dec. 4, 2018) at *4-5 ("On this set of facts, we conclude that Markowitz's referral fees do not constitute 'reasonably equivalent value' and are thus subject to disgorgement.").

In this case, Ho cannot demonstrate that her brokerage services were worth $11,011,304 or that her loans to Kirk provided value to Liberty. She never performed any marketing or selling services for Liberty. Stipulated Pretrial Order, ¶A.15. She acted as a "conduit" for investor funds for Kirk and Liberty. Ho Declaration, ¶10. Even if Ho was a "victim of the Liberty Ponzi scheme" (*id.,* ¶33), she failed to provide value. Notwithstanding disallowance of Ho's proof of claim, her chapter 7 trustee's acknowledgment that the Plan Administrator's claim objection was well taken [Docket Nos. 682, 686], and notwithstanding that Ho failed to maintain records of the alleged transactions, Ho continues to insist that she is *still* owed more than $11 million for alleged commissions. Ho Declaration, ¶6.

12

Ho appears to misconstrue the Plan Administrator's advocacy on behalf of the estate as a basis for her recovery of attorneys' fees. Ho's Fee Motion is not so much a colorable claim for contractual attorneys' fees as a misguided attempt to cast blame on the Plan Administrator (and his counsel) for rejecting her purported innocence. The Plan Administrator pursued the Complaint for the benefit of creditors, not as a matter of guilt or innocence or greed, and he is prepared to voluntarily dismiss the Complaint for the benefit of creditors under circumstances where Ho appears to lack assets to pay a judgment.

## IV.

## CONCLUSION

Ho has failed to demonstrate any basis for recovery of her attorneys' fees as a matter of contractual agreement pursuant to Civil Code section 1717. Furthermore, in the absence of any dispositive motion and on the record before the Court, Ho has failed to demonstrate that she should be deemed a prevailing party entitled to recover statutory costs. For the foregoing reasons, the Plan Administrator requests that the Court (1) deny the Fee Motion in its entirety, and (2) enter an order of dismissal pursuant to Federal Rule of Bankruptcy Procedure 7041 and Federal Rule of Civil Procedure 41(a)(2), with each party bearing its own attorneys' fees and costs, effective upon expiration of the time for filing an appeal regarding the Fee Motion.

Dated: July 20, 2022                    PACHULSKI STANG ZIEHL & JONES LLP

By: _____/s/ Gail S. Greenwood_____
        Gail S. Greenwood

Attorneys for Plaintiff, Bradley D. Sharp, Plan Administrator under the Confirmed First Amended Chapter 11 Plan of Liquidation Dated January 31, 2018 for Liberty Asset Management Corporation

13

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**One Market Plaza, Spear Tower 40th Floor, Suite 4000 San Francisco, CA 94105-1020.**

A true and correct copy of the foregoing document entitled (*specify*): **THE PLAN ADMINISTRATOR'S OPPOSITION TO TSAI LUAN HO'S MOTION FOR ATTORNEYS' FEES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing documents will be served by the court via NEF and hyperlink to the document. On (*date*) **July 20, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Gail S Greenwood**    ggreenwood@pszjlaw.com, rrosales@pszjlaw.com
- **James Andrew Hinds**    jhinds@hindslawgroup.com, mduran@hindslawgroup.com
- **Jeremy V Richards**    jrichards@pszjlaw.com, bdassa@pszjlaw.com;imorris@pszjlaw.com
- **Paul R Shankman**    PShankman@fortislaw.com, info@fortislaw.com
- **Rachel M Sposato**    rmsposato@mintz.com, mduran@hindslawgroup.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **James S Yan**    jsyan@msn.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **July 20, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

James Andrew Hinds, Jr.
The Hinds Law Group, APC
2390 Crenshaw Blvd., Ste. 240
Torrance, CA 90501

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **July 20, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 20, 2022 | Matt Renck | /s/ Matt Renck |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |