

**FILED & ENTERED**

NOV 14 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re: Liberty Asset Management Corporation, Debtor. | Case No.: 2:16-bk-13575-ER<br>Adv. No.: 2:16-ap-01374-ER |
| Bradley D. Sharp, Plan Administrator for Liberty Asset Management Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Tsai Luan Ho,<br><br>Defendant. | **MEMORANDUM OF DECISION: (1) DENYING DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND (2) DISMISSING ACTION WITHOUT PREJUDICE PURSUANT TO CIVIL RULE 41(A)(2)**<br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

Before the Court is the motion of Tsai Luan Ho ("Ho") for an award of $50,000 in attorneys' fees (the "Fee Motion").[1] For the reasons set forth below, the Fee Motion is **DENIED**. The Court

---

[1] The Court considered the following pleadings in adjudicating the Fee Motion:
1) Motion for Attorneys' Fee Against the Administrator [Adv. Doc. No. 196];
   a) Declaration of Shelby Ho in Support of Motion for Attorneys' Fees Against the Administrator [Adv. Doc. No. 197];
   b) Errata to the Declaration of Shelby Ho in Support of Motion for Attorneys' Fees Against the Administrator [Adv. Doc. No. 198];
   c) Exhibits to Errata to the Declaration of Shelby Ho in Support of Motion for Attorneys' Fees Against the Administrator;
2) The Plan Administrator's Opposition to Tsai Luan Ho's Motion for Attorneys' Fees [Adv. Doc. No. 200]; and
3) Ho's Reply to the Plan Administrator's Opposition to Tsai Luan Ho's Motion for Attorneys' Fees [Adv. Doc. No. 201].

will enter an order dismissing this action without prejudice pursuant to Civil Rule 41(a)(2),[2] with each party bearing its own attorneys' fees and costs.

## I. Background

On March 21, 2016, Liberty Asset Management Corporation (the "Debtor") filed a voluntary Chapter 11 petition. On August 16, 2016, the Official Committee of Unsecured Creditors (the "Committee") for the Debtor's estate commenced the above-captioned action against Ho and Benjamin Kirk ("Kirk"). On April 17, 2018, the Court approved a stipulation dismissing the claims against Kirk with prejudice.[3]

On June 18, 2018, the Court confirmed the *First Amended Chapter 11 Plan of Liquidation Dated January 31, 2018 Proposed by the Official Unsecured Creditors' Committee for Liberty Asset Management Corporation* [Bankr. Doc. No. 609, Ex. A] (the "Plan"). *See* Bankr. Doc. No. 665 (the "Confirmation Order") and Bankr. Doc. No. 650 (ruling confirming Plan). The Plan appointed Bradley D. Sharp of Development Specialists, Inc. as the Plan Administrator responsible for liquidating the Debtor's assets for the benefit of creditors, *see* Plan at § VII.D.1, and vested in the Plan Administrator the right to prosecute the instant action on behalf of creditors, *see* Plan at § VII.D.2. The Plan created an Oversight Committee responsible for consulting with the Plan Administrator on the settlement of causes of action. Plan at § X.C.

In this action, the Plan Administrator seeks to avoid, as actually and constructively fraudulent, transfers made from the Debtor to Ho. The Plan Administrator seeks damages against Ho in excess of $11 million.

The trial of the claims against Ho was initially scheduled to commence on May 29, 2018, but did not go forward because Ho filed a voluntary Chapter 7 petition (the "Ho Bankruptcy Case")[4] in the United States Bankruptcy Court for the Northern District of California (the "Northern District Bankruptcy Court") on May 28, 2018.

The Plan Administrator filed a Proof of Claim in the Ho Bankruptcy Case, in an amount in excess of $11 million, based upon the allegations asserted in this action. The Chapter 7 Trustee (the "Trustee") in the Ho Bankruptcy Case liquidated assets with a value of $357,557.51, and the Plan Administrator received a distribution of $17,756.70 in connection with its Proof of Claim.[5] The Northern District Bankruptcy Court found that pursuant to § 727(a)(3), Ho was not entitled to a discharge, because she "has, for years, been involved in large and sophisticated transactions" involving real estate, but failed to maintain adequate financial records of those transactions.[6] The District Court affirmed the Bankruptcy Court's determination that Ho was not entitled to a discharge.

---

[2] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, Rules 1001-1–9075-1; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.
[3] Adv. Doc. No. 91.
[4] Case No. 18-30581-DM.
[5] Doc. No. 154 at 14, Case No. 18-30581-DM.
[6] Memorandum Decision Re Trustee's Motion for Partial Summary Judgment [Doc. No. 21, Adv. No. 18-ap-03051-DM] at 6–7.

On May 25, 2022, the Court issued an *Order Requiring Plan Administrator and Oversight Committee to Show Cause Why this Adversary Proceeding Should Not be Dismissed* [Adv. Doc. No. 179] (the "OSC"). The OSC did *not* discuss the merits of the Plan Administrator's claims against Ho. Instead, the OSC expressed the concern that the costs of continued litigation would outweigh any potential recovery:

> [T]he Court questions whether the Plan Administrator's desire to continue to pursue this action takes sufficient account of the high cost of trial, particularly when considering the possibility that any judgment entered in the Plan Administrator's favor could prove uncollectible. Ho has represented to the Court that she owns no real property, does not own a car, has not been gainfully employed since 2016, works primarily as a babysitter for her grandchildren, and lives on her social security payments. The real property assets which Ho did own through the corporate entities Big Max, LLC and Great Vista Real Estate Investment Corporation have already been sold and all proceeds of the sales have been distributed to creditors.
>
> In support of the continued prosecution of this action, the Plan Administrator points to the Northern District Bankruptcy Court's judgment denying Ho's discharge based upon her failure to keep adequate business records, and argues that this judgment establishes that Ho's financial condition is unknown. Pursuant to his statutory obligation, the Trustee in the Ho Bankruptcy Case has already liquidated Ho's non-exempt assets. The Plan Administrator's argument presupposes that the Plan Administrator will be able to uncover additional assets that the Trustee could not locate. While the Court cannot rule out the possibility that the Plan Administrator would be more successful than the Trustee in uncovering hidden assets, there is nothing in the record suggesting that this is likely. The Trustee had both a statutory obligation and a financial incentive to locate Ho's hidden assets, and there is no indication that the Trustee was anything other than diligent in fulfilling his statutory obligations.
>
> Were Ho to acquire significant assets in the future, entry of a judgment against her and in the Plan Administrator's favor could inure to the benefit of general unsecured creditors. But again, while this possibility cannot be ruled out, it seems unlikely. Prior to the commencement of this action, Ho received substantial income and assets through a Profit Sharing Agreement with the Debtor. In connection with that Profit Sharing Agreement, Ho used her contacts to bring potential real estate investors to the Debtor. Many investors in the Debtor lost a substantial portion of their investment; as noted above, investors receiving a distribution through the Plan have to date recovered only 18.98% of their claims. In view of her involvement with the Debtor's failed venture, Ho's ability to continue to earn substantial income in the real estate industry is questionable.

OSC at 5–6 (internal footnotes omitted).

In response to the OSC, the Plan Administrator stated that he did "not have information at this time to support that the potential for collection of assets from Ho outweighs the costs of trial."[7] The Plan Administrator, with the approval of the Oversight Committee, requested that the Court dismiss this action without prejudice, with each party bearing their own fees and costs.

---

[7] Adv. Doc. No. 189 at 2.

The Plan Administrator sent Ho a proposed stipulation providing for dismissal of the adversary proceeding with prejudice. Ho refused to execute the stipulation, asserting that the estate should pay Ho's attorney's fees. The Court ordered Ho to file a motion explaining why should would be entitled to attorney's fees in the event the action was dismissed, and provided the Plan Administrator the opportunity to respond thereto.

Ho asserts that she is entitled to attorneys' fees, as the prevailing party in this action, based upon a fee clause in two deeds of trust referenced in the Plan Administrator's Complaint. Ho claims that she is entitled to fees pursuant to both Cal. Civ. Code §1717(a) and Cal. Civ. Proc. Code § 1021. The Plan Administrator contends that Ho is not entitled to attorneys' fees because this action was not an action "on a contract," and therefore the fee clause in the deeds of trust was not triggered.

## II. Findings of Fact and Conclusions of Law
### A. Ho is Not Entitled to Attorneys' Fees Under Cal. Civ. Code § 1717(a)

"No general right to attorney fees exists under the Bankruptcy Code. However, a prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law if state law governs the substantive issues raised in the proceedings." *Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). The applicable provisions of California law governing the award of attorneys' fees are Cal. Civ. Code § 1717(a) and Cal. Code Civ. Proc. § 1021.

Cal. Civ. Code § 1717(a) provides in relevant part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

To obtain fees pursuant to Cal. Civ. Code § 1717(a), three conditions must be met:

> First, the action in which the fees are incurred must be an action "on a contract," a phrase that is liberally construed. Second, the contract must contain a provision stating that attorney's fees incurred to enforce the contract shall be awarded either to one of the parties or to the prevailing party. And third, the party seeking fees must be the party who "prevail[ed] on the contract," meaning (with exceptions not relevant here) "the party who recovered a greater relief in the action on the contract."

*Penrod v. AmeriCredit Fin. Svcs., Inc. (In re Penrod)*, 802 F.3d 1084, 1087–88 (9th Cir. 2015) (internal citations omitted).

Under California law, "an action is 'on a contract' when a party seeks to enforce, or avoid enforcement of, the provisions of the contract." *Penrod*, 802 F.3d at 1087. A party prevails in an action "on a contract" if the party defeats enforcement of one of the contract's terms, even if the party defeats enforcement solely on the basis of federal bankruptcy law. *Id.* at 1088–89. In *Penrod*, a lender succeeded in enforcing its entitlement to payments under an installment sales contract by defeating a provision in a debtor's Chapter 13 plan which would have bifurcated the lender's entitlement to payments into secured and unsecured claims. *Id.* at 1087–88. The *Penrod*

court held that the lender's objection to the Chapter 13 plan was an "action on a contract," because the objection enabled the lender to obtain the full amount of the payments it was owed under the installment contract. *Id.* at 1088–90.

In support of her claim to attorneys' fees, Ho points to two deeds of trust, both of which contain attorneys' fees clauses, that are referenced in the Plan Administrator's Complaint against Ho. One of the deeds of trust, in favor of Bank SinoPac (the "Bank SinoPac DOT"), encumbers real property located at 100 South 2nd Street, San Jose, CA 95113 (the "Second Street Property"), and secures a loan of $6 million that Bank SinoPac made to 88 San Fernando LLC ("88 San Fernando").[8] The attorneys' fees clause in the Bank SinoPAC DOT provides that if Bank SinoPac "institutes any suit or action to enforce any of the terms of this Deed of Trust, [Bank SinoPac] shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal."[9] The Bank SinoPac DOT was executed by Ho in her capacity as a member of 88 San Fernando[10] and was recorded on June 26, 2012.[11]

In 2012, Ho introduced investors to the Debtor who purchased the Second Street Property for $11 million.[12] The Second Street Property is a retail condominium unit located at the base of a high-rise residential building. At the time of the 2012 transfer, the Second Street Property was leased to a Safeway grocery store. In June 2015, the Debtor transferred to Ho two other retail condominium units also located at the base of the residential building (the "San Jose Units") (Assessor's Parcel Numbers 467-64-007 and -009).[13] The Plan Administrator took the position that he was entitled to damages against Ho because the transfer of the San Jose Units was fraudulent.[14] Ho asserted that she was entitled to one of the San Jose Units as a commission for facilitating the sales of the Second Street Property and another adjacent property, and that she received the other San Jose Unit only so that she could assist the Debtor in resolving claims asserted against the Debtor by another creditor, YCJS.

The Court finds that Ho is not entitled to attorneys' fees by virtue of the fee clause in the Bank SinoPac DOT. The Plan Administrators' allegation that the San Jose Units were fraudulently transferred to Ho was not an attempt to enforce or avoid enforcement of the Bank SinoPac DOT. The Bank SinoPac DOT did *not* encumber the San Jose Units[15]; the only connection between the Bank SinoPac DOT and the San Jose Units is Ho's contention that she was entitled to one of the San Jose Units as a commission for facilitating the sale of the Second Street Property that was encumbered by the Bank SinoPac DOT. There is no merit to Ho's contention that the Plan Administrator's fraudulent transfer claim was an attempt "to enforce

---

[8] Adv. Doc. No. 2, Ex. K (Bank SinoPac DOT).
[9] Bank SinoPac DOT at p. 6.
[10] *Id.* at p. 8.
[11] *Id.* at p. 1.
[12] Final Joint Pretrial Stipulation Between the [Plan Administrator], Tsai Luan Ho, and Benjamin Kirk as Modified by the Court [Adv. Doc. No. 89] (the "Pretrial Order") at ¶ 46.
[13] *Id.* at ¶¶ 50–51.
[14] Plan Administrator's Trial Brief [Adv. Doc. No. 100] at pp. 10–21.
[15] As set forth in the Bank SinoPac DOT, the Assessor's Parcel Numbers for the Second Street Property are 467-64-003, 467-64-004, 467,64-005, 467-64-006, and 467-64-010. Adv. Doc. No. 2, Ex. K, at p. 1. As set forth in the Pretrial Order, the Assessor's Parcel Numbers for the San Jose Units are 467-64-007 and 467-64-009. Adv. Doc. No. 89 at ¶ 45.

rights derived from the [Bank SinoPac DOT]."[16] The Bank SinoPac DOT provided Bank SinoPac a security interest in the Second Street Property and various rights in the event that 88 San Fernando defaulted on the funds loaned to it by Bank SinoPac. Even if the Bank SinoPac DOT had encumbered the San Jose Units—which it did not—the Plan Administrator's attempt to recover the value of the San Jose Units pursuant to a fraudulent transfer theory would not have amounted to an attempt to enforce or avoid enforcement of any contractual rights granted to Bank SinoPac. Had the trial gone forward, the Court would have been required to determine (1) whether the Debtor intended to hinder, delay, or defraud its creditors by transferring the San Jose Units to Ho and (2) whether the Debtor received reasonably equivalent value in exchange for the transfer of the San Jose Units to Ho. These issues have nothing to do with the extent of Bank SinoPac's rights in either the Second Street Property or the San Jose Units.

Ho's attempt to take advantage of the attorneys' fees clause in the Bank SinoPac DOT suffers from another fatal flaw—the fact that it is 88 San Fernando, rather than Ho, who is the signatory to the Bank SinoPac DOT. (Ho caused 88 San Fernando to execute the Bank SinoPac DOT in her capacity as a member of 88 San Fernando.) It is true that under *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 128 (Cal. 1979), a non-signatory to a contract containing a fee provision can recover under that provision, if the non-signatory is sued on the contract as though she were a party to it, and provided the opposing party would be entitled to attorneys' fees had the opposing party prevailed. However, *Reynolds* is of no assistance to Ho because the Plan Administrator's claims against Ho derived from Bankruptcy Code, not the Bank SinoPac DOT.

To illustrate the fallacy of Ho's argument, it is helpful to consider a situation in which Ho would be eligible to recover attorneys' fees pursuant to *Reynolds*. Had Bank SinoPac sued both 88 San Fernando and Ho under the Bank SinoPac DOT, and alleged that Ho was liable as the alter ego of 88 San Fernando, Ho could potentially have asserted a claim for attorneys' fees against Bank SinoPac had she prevailed in the action. But what actually occurred in this proceeding bears no resemblance to this hypothetical. Ho was sued by the Plan Administrator, not by Bank SinoPac, and the Plan Administrator would not have been required to either enforce or defeat enforcement of the Bank SinoPac DOT in order to prevail upon his fraudulent transfer claims against Ho.

Ho also relies upon another deed of trust referenced in the Complaint in support of her claim for attorneys' fees. The deed of trust in question is in favor of Northern California Mortgage Fund VII (the "NoCal Mortgage DOT"),[17] encumbers real property located at 26390 Anacapa Drive, Los Altos Hills, CA 94022 (the "Anacapa Property"), and secures a loan in the amount of $2.1 million made by Northern California Mortgage Fund VII LLC ("NoCal Mortgage") to Washe LLC ("Washe"). The attorneys' fees clause in the NoCal Mortgage DOT—which is substantially identical to the fee clause in the Bank SinoPac DOT—provides that if NoCal Mortgage "institutes any suit or action to enforce any of the terms of this Instrument, [NoCal Mortgage] shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal."[18] The NoCal Mortgage DOT was executed by Ho in her capacity as a managing member of Washe[19] and was recorded on January 15, 2015.[20]

---

[16] Adv. Doc. No. 196 at p. 15.
[17] Adv. Doc. No. 2, Ex. G (NoCal Mortgage DOT).
[18] NoCal Mortgage DOT at p. 11.
[19] *Id.* at p. 13.
[20] *Id.* at p. 1.

After the payment of fees and the prior mortgage on the Anacapa Property, Washe received $591,304 cash (the "Anacapa Cash") from the NoCal Mortgage.[21] The Plan Administrator asserted that the encumbrance against the Anacapa Property effectuated by the recordation of the NoCal Mortgage DOT was a fraudulent transfer entitling him to damages against Ho in the amount of the Anacapa Cash.

The fee clause in the NoCal Mortgage DOT does not provide Ho with a right to attorneys' fees. To recover damages against Ho in an amount equal to the Anacapa Cash, the Plan Administrator would not have been required to enforce or defeat the enforcement of any provision of the NoCal Mortgage DOT. Ho's attempt to leverage the fee clause in the NoCal Mortgage DOT into an award of attorneys' fees suffers from the same defects as her attempt to obtain attorneys' fees from the comparable fee clause in the Bank SinoPac DOT. As was the case with the Bank SinoPac DOT, had the trial gone forward, the Court would have been required to determine whether Ho was the recipient of a fraudulent transfer—an issue having nothing to do with the extent of NoCal's rights under the NoCal Mortgage DOT.

**B. Ho is Not Entitled to Attorneys' Fees Under Cal. Civ. Proc. Code § 1021**

Cal. Civ. Proc. Code § 1021 provides that "parties to actions or proceedings are entitled to their costs." As set forth in Cal. Civ. Proc. Code § 1033.5(a)(10), attorneys' fees are allowable to the prevailing party as costs when authorized by "contract, statute, [or] law." Fees may be recoverable under Cal. Civ. Proc. Code § 1021 even if not recoverable under Cal. Civ. Code § 1717(a). *3250 Wilshire Boulevard Bldg. v. W.R. Grace & Co.*, 990 F.2d 487, 489 (9th Cir. 1993); *see also Taburaza v. Zarate (In re Zarate)*, 567 B.R. 176, 182 (Bankr. N.D. Cal. 2017) ("Section 1021 allows the parties to agree that the prevailing party in litigation may recover attorney's fees, whether the litigation sounds in contract or in tort.").

Ho asserts that because the Plan Administrator has agreed to voluntarily dismiss the action in response to the OSC, she is entitled to attorneys' fees as the prevailing party pursuant to Cal. Civ. Proc. Code § 1021. Ho's theory is that the Plan Administrator's fraudulent transfer claims arise from the Bank SinoPac DOT and NoCal Mortgage DOT (collectively, the "Deeds of Trust"), and that Ho is consequently entitled to a fee award based upon the fee clauses contained within those Deeds of Trust. In support of this contention, Ho relies upon *Asphalt Professionals, Inc. v. David (In re Davis)*, 595 B.R. 818, 822 (Bankr. C.D. Cal. 2019), *aff'd,* No. 1:10-AP-01354-VK, 2019 WL 2931668 (B.A.P. 9th Cir. July 3, 2019), *aff'd,* 809 F. App'x 415 (9th Cir. 2020).

*Davis* is of no assistance to Ho. In *Davis*, the creditor filed a dischargeability complaint against the debtor, based upon an alleged breach of a subcontracting agreement. *Id.* at 824–25. After the Bankruptcy Court entered judgment in favor of the debtor on the creditor's dischargeability complaint, the debtor sought attorneys' fees pursuant to a fee clause contained in the subcontracting agreement. *Id.* at 826. The *Davis* court found that the debtor was not entitled to attorneys' fees under Cal. Civ. Code § 1717 because the creditor's dischargeability complaint was not an action on a contract. *Id.* at 827–32. However, the court did award the debtor fees under Cal. Civ. Proc. Code § 1032. *Id.* at 832–36. It reasoned that the crux of the dischargeability complaint was the creditor's assertion that the debtor had made material misrepresentations to induce the creditor into entering into the subcontracting agreement. *Id.* Consequently, the court

---

[21] Pretrial Order at ¶ 62.

held that the dischargeability complaint arose from the subcontracting agreement, and therefore fell within the scope of the subcontracting agreement's fee clause. *Id.*

Unlike in *Davis*, the Plan Administrator's fraudulent transfer claims against Ho did not arise from the Deeds of Trust. The Plan Administrator was not a party to the Deeds of Trust and did not accede to any rights granted under the Deeds of Trust in pursuing the fraudulent transfer claims. Rather than arising from the Deeds of Trust, the Plan Administrator's fraudulent transfer claims arise from a Profit Sharing Agreement entered into between the Debtor and Ho's company Great Vista on October 17, 2009.[22] The Plan Administrator's theory of the case was that the Debtor had not received reasonably equivalent value for the transfers made to Ho or to entities controlled by Ho under the Profit Sharing Agreement. Notably, the Profit Sharing Agreement does *not* contain an attorneys' fees clause. The Plan Administrator relied upon the Deeds of Trust only to establish the manner in which title to the various properties at issue was transferred from the Debtor to entities controlled by Ho. In sum, the fraudulent transfer claims are unrelated to the terms of the Deeds of Trust. Ho cannot avail herself of the attorneys' fees clauses in the Deeds of Trust, which were intended for the benefit of the lenders, simply because the Deeds of Trust were included among the many exhibits that the Plan Administrator would have introduced had the case proceeded to trial.

### C. The Strength of the Plan Administrator's Case Against Ho Has No Relevance to the Question of Whether Ho is Entitled to Attorneys' Fees

The Court notes that in papers filed in connection with the Fee Motion, both the Plan Administrator and Ho devote substantial space to arguments regarding whether Ho would have been found liable on the Plan Administrator's claims had the action been tried. It is important for the Court to emphasize that such arguments are not relevant to either the OSC or the Fee Motion. In the OSC, the Court made no findings as to the likelihood that the Plan Administrator would prevail should the action proceed to trial. Issuance of the OSC was not based upon any doubts that the Court had concerning the merits of the Plan Administrator's claims. Instead, the OSC was issued solely based upon the Court's view (1) that any recovery obtained by the Plan Administrator against Ho would likely prove largely uncollectible, and (2) that to the extent any judgment would be collectible, the additional attorneys' fees associated with trial would likely outweigh the amount collected.

The Court's concerns with respect to the collectability of any recovery do not mean that the Plan Administrator's decision to prosecute this action against Ho amounted to a misuse of estate resources. Ironically, the issues regarding collectability are largely the result of prior favorable results obtained by the Plan Administrator in connection with his claims against Ho. On March 27, 2018, the Court denied Ho's motion to reopen discovery, based upon a finding that Ho had not pursued discovery with the required diligence, notwithstanding the fact that she had been advised by sophisticated counsel.[23] Shortly before trial had been scheduled to commence, the Court issued a tentative ruling, indicating that it intended to grant the Plan Administrator's motion *in limine* to prevent Ho from introducing into evidence exhibits which she had failed to produce during discovery. To prevent the trial from going forward, Ho filed the Ho Bankruptcy

---

[22] Pretrial Order at ¶¶ 12–22.
[23] Adv. Doc. No. 83 at 6 (ruling setting forth reasons for the denial of Ho's motion to reopen discovery).

Case in the Northern District Bankruptcy Court on the day before the trial had been scheduled to begin.

The claim filed by the Plan Administrator in the Ho Bankruptcy Case was based upon the allegations asserted in this action and sought a recovery in excess of $11 million, the same amount that the Plan Administrator sought to recover in this action. That claim was allowed in its entirety; however, because the dividend to creditors in the Ho Bankruptcy Case was only $357,557.51, the Plan Administrator received only $17,756.60 on account of his claim. The dividend in the Ho Bankruptcy Case was funded in large part by the liquidation of assets which, according to the Plan Administrator's allegations in this case, were fraudulently transferred to Ho. Specifically, $357,000 of the dividend was funded from the proceeds of the liquidation of the San Jose Units. In sum, the Plan Administrator's prosecution of this action precipitated the filing of the Ho Bankruptcy Case, and by prosecuting the same claims as are alleged in this case in the Ho Bankruptcy Case, the Plan Administrator obtained a recovery in the Ho Bankruptcy Case funded by the liquidation of a portion of the assets that are the subject of the avoidance claims in this case.

The Plan Administrator's successful recovery in the Ho Bankruptcy Case is one reason why the Court was concerned that should this action proceed to trial, any judgment that the Plan Administrator obtained would either be offset by the costs of the trial or prove largely uncollectible. The filing of the Ho Bankruptcy Case resulted in the liquidation of all of Ho's non-exempt assets, thereby reducing the corpus of assets available to satisfy any judgment that the Plan Administrator might obtain in this action. This sequence of events refutes Ho's contention that the Plan Administrator abused his discretion by continuing to prosecute this action against Ho.

## III. Conclusion

Based upon the foregoing, the Fee Motion is **DENIED**. The Court will enter an order (1) denying the Fee Motion and (2) dismissing this action without prejudice pursuant to Civil Rule 41(a)(2).

###

Date: November 14, 2022

Ernest M. Robles
United States Bankruptcy Judge